IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
–Northern Division–

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC.,

*Plaintiff*

–v–

TRI-STATE ZOOLOGICAL PARK OF
WESTERN MARYLAND, INC., *et al.*,

*Defendants.*

Case No. 8:20-cv-01225

**MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL
PROCEDURE 12(b)(1) and 12(b)(6)**

Now Come the Defendants and file this Motion to Dismiss the Plaintiffs'

Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and state

as follows:

**Table of Contents**

Table of Authorities……………………………………………………………………….2

I.      Introduction………………………………………………………………...……4

II.     Legal Discussion on Standing and Failure to State a Claim……………....……..6

III.    The Plaintiffs fail to state a claim upon which relief may be granted……….……9

        A.      In order to constitute a public nuisance, the defendants
                use of their property must intrude upon public property
                or a property right common to the public…………………………………..9

    B.      To state a claim under public nuisance laws in Maryland, the amount of individual feeling, emotional distress, or voluntary expenditure of time and money by Plaintiffs does not place one in a specially aggrieved class…………………………15

    C.      The Plaintiff Ms. Collins does not plead any cognizable damages under the law of Maryland that would entitle her to injunctive relief……………………………………………………………..16

    D.      Plaintiff PETA has no damages other than those voluntarily assumed by its own expenditures, and voluntary expenditures, without the need to protect a valid property interest arising from a valid property interest, cannot justify injunctive relief from an alleged nuisance…………………………………………………...……17

IV.    In this instance, failure to state a claim also results in a lack of standing……..…18

V.    Conclusion…………………………………………………………………………..19

## Table of Authorities

### Cases

*120 West Fayette St., LLLP v. Mayor of Baltimore*,
407 Md. 253, 964 A.2d 662 (2009)………………………………...……………………7

*Adams v. Commissioners of Trappe*, 204 Md. 165, 102 A.2d 830 (1954)…………….10, 13

*Adams v. Manown*, 328 Md. 463, 480, 615 A.2d 611, 619 (1992)…………………………7

*Burley v. City of Annapolis*, 182 Md. 307, 34 A.2d 603 (1943)……………....…………10

*Cassel v. City of Baltimore*, 195 Md. 348, 73 A.2d 486 (1950)……………...……………12

*Clark v. Todd*, 192 Md. 487, 492, 64 A.2d 547 (1949)…………………………………….11

*Committee for Responsible Development on 25th Street v. Baltimore*, 137 Md.App. 60, 767 A.2d 906 (1999)…………………………..……………12

*Davis v. Passman*, 442 U.S. 228 (1979)……………………...…………………7

*Day & Zimmermann, Inc., v. Chalonner*, 423 U.S. 3 (1975)…………..………….…...…19

*Dobbins v. Washington Suburban Sanitary Comm'n*,
338 Md. 341, 658 A.2d 675, (1995)……………………………………..…...……………17

*DuBay v. Crane*, 240 Md. 180, 213 A.2d 487 (1965)……………………………………12

*Exxon Mobil Corp. v. Albright*, 433 Md. 303, 71 A.3d. 30 (2013)………………………16

*Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979)………………………..…7

*Kendall v. Howard Cnty.*, 431 Md. 590, 593, 66 A.3d 684, 685 (2013)……………...….7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555(1992)…………………………….….…6, 18

*Marcus v. Montgomery County*, 235 Md. at 535, 201 A.2d 777 (1964)…………....…...12

*News American v. State*, 294 Md. 30, 40, 447 A.2d 1264, 1269 (1982)……………....…….8

*Ray v. Mayor and City Council of Baltimore*, 430 Md. 74, A.3d. 545 (2013)……..…11-13

*Reyes v. Prince George's Cnty.*, 281 Md. 279, 380 A.2d 12 (1977)……………......………8

*Rhodes v. E.I. DuPont Nemours & Co.*, 636 F.3d. 88 (4th Cir. 2011)………...…………...18

*Rosenblatt v. Exxon Company, USA*, 335 Md. 58, 642 A.2d. 180, (1994)………......…14-15

*Shiebeck v. Smith*, 180 Md. 412, 24 A.2d 795 (1942)…………………………………...16

*State Center LLC v. Lexington Charles Ltd Partnership*,
438 Md. 451, 92 A.3d 400 (2014)………………………..………………………….6

*Superior Outdoor Signs, Inc. v. Eller Media Co.*,
150 Md.App. 479, 822 A.2d 478, (2003)……………………………………………8

*Tadjer v. Montgomery County*, 300 Md. 539, 479 A.2d 1321 (1984)……...…………..9

*Trainor v. Hernandez*, 431 U.S. 434 (1977)……………..……………………………..7

*Wilkinson v. Atkinson*, 242 Md. 231, 218 A.2d 503 (1966)……………………………...12

*White v. Major Realty*, 251 Md. 63, 246 A.2d 249 (1968)………………………………12

Treatises

Restatement 2d of Torts, 821(b)……………………………………………………9, 15

### I.   Introduction

The instant Complaint by Plaintiffs raises only one cause of action, that of public nuisance. The plaintiffs neither have standing nor can they properly state a claim under a public nuisance theory, for the following reasons:

1. Both public and private nuisance are property offenses under the substantive laws of the State of Maryland. Not only is it required that the defendants be using defendants' property such as to constitute a nuisance, but no nuisance can exist unless the activities intrude upon a protected *property* right of the plaintiff, whether public or private. In other words, nuisance claims do not arise from personal affront or injury, but from damage to a legally cognizable right to the use and enjoyment of property in which the plaintiff has an interest. No damage to any cognizable property interest of either plaintiff has been alleged.

2. The power to seek an injunction against public nuisances in Maryland is generally reserved to governmental agencies. In order for an individual or private entity to state a claim for public nuisance in Maryland, rather than private nuisance, one must show an injury to a protected property interest, either owned by the plaintiff or a right of public use benefitting the plaintiff, and must have some special or particularized damage

as a result of the alleged nuisance. No allegation of such property interest or ownership has been made by either plaintiff, nor has there been any tenable allegation of special damage to any legally protected property interest of either plaintiff as a result of the alleged activities of the defendants.

3. The individual Plaintiff Ms. Collins alleges only emotional distress and voluntary activities taken against the Defendants as the basis for her damages. The law in Maryland does not allow emotional distress damages for nuisance. Generally, damages for emotional distress in Maryland are barred in the absence of physical injury or a fear or fright caused by impending physical injury, unless a tort is clearly intentional rather than the result of negligence. While Ms. Collins' concern or aesthetic interest in the animals may form a basis for standing in an Endangered Species Act case, it does not form the basis for standing in a public nuisance case.

4. The organizational Plaintiff People for the Ethical Treatment of Animals, Inc. (hereinafter PETA), has alleged no injury in this case other than an ideological one based upon voluntary expenditures. Whatever the ultimate disposition of the earlier case between PETA and the Defendants herein (Case No. 17-2148-PX) may be on appeal (Case No. 20-1010), a claim for standing under a "Citizen Suit" provision of a Federal statute does not give one standing to bring a claim under a theory of public nuisance in the State of Maryland.

Lest there be any confusion as to the sometimes ambiguous use of "standing", and the different uses of the term in Federal courts and in the state courts of Maryland, the defendants provide, *infra*, as preamble, a separate section treating that topic.

### II. Legal Discussion: Is this a question of standing, or a question of failure to state a claim, or both?

Rather than reinvent the wheel, the defendants submit that the Maryland Court of Appeals has described quite well the ambiguities and difficulties involved in separating out the matter "standing" as used historically by most courts from the use of the term in relation to Article III of the United States Constitution, and the relationship of such doctrines to an ordinary "failure to state a claim," in *State Center LLC v. Lexington Charles Ltd Partnership*, 438 Md. 451, 92 A.3d 400, at 499, 428 (2014).

> Under current [Supreme Court] doctrine, federal courts determine whether a plaintiff has standing by asking whether the plaintiff has suffered an injury in fact that is fairly traceable to the defendant's conduct and that is likely to be redressed by a decision in the plaintiff's favor." *Bellia, supra*, at 779 n. 5 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)). Under this doctrine, the concepts of jurisdiction, standing, cause of action, and remedy were treated separately. In order for the federal courts to reach a claim properly, the complaint must meet the requirements for each of these doctrines as a prerequisite to judicial review of the claim. The Supreme Court of the United States explained the basic concept of each doctrine (in terms of the federal judicial system) as follows:
>
> [J]urisdiction is a question of whether a federal court has the power, under the Constitution or laws of the United States, to hear a case; standing is a question of whether a plaintiff is sufficiently adversary to a defendant to create an Art. III case or controversy, or at least to overcome prudential limitations on federal-court jurisdiction; cause of action is a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately

invoke the power of the court; and relief is a question of the various remedies a federal court may make available. *Davis v. Passman*, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979) (internal citations omitted). That a plaintiff may satisfy one of these requisites does not mean necessarily that he can meet the other requirements. For example, the Supreme Court explained, "[a] plaintiff may have a cause of action even though he be entitled to no relief at all, as, for example, when a plaintiff sues for declaratory or injunctive relief although his case does not fulfill the 'preconditions' for such equitable remedies." Id. (citing *Trainor v. Hernandez*, 431 U.S. 434, 440–43, 97 S.Ct. 1911, 1916–17, 52 L.Ed.2d 486 (1977)). In *Davis v. Passman*, the Supreme Court concluded that the petitioner had standing to bring the suit because, "[i]f the allegations of her complaint are taken to be true, she has shown that she 'personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.' " Id. (quoting *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979)). Despite concluding that the petitioner had standing, the Supreme Court emphasized that "[w]hether petitioner has asserted a cause of action, however, depends not on the quality or extent of her injury, but on whether the ***class of litigants of which petitioner is a member may use the courts to enforce the right at issue***. The focus must therefore be on the nature of the right petitioner asserts." Id. (Emphasis added).

This approach, which analyzes standing and cause of action as separate concepts, has not been embraced by all courts and has been criticized by many scholars. The alternative approach, sometimes referred to as "cause of action" standing, simply asks whether governing law confers on the plaintiff a right to bring the claim to the courts. *Bellia, supra*, at 779. Part of the rationale is that standing and cause of action are so interrelated that it is difficult to analyze one without the other creeping into the analysis.

Apparently, the appellate courts in Maryland have adopted the "cause-of-action" approach, which groups the traditionally distinct concepts of standing and cause of action into a single analytical construct, labeled as "standing," to determine whether "the plaintiff [has] show[n] that he or she 'is entitled to invoke the judicial process in a particular instance.' " *Kendall v. Howard Cnty.*, 431 Md. 590, 593, 66 A.3d 684, 685 (2013) (quoting *Adams v. Manown*, 328 Md. 463, 480, 615 A.2d 611, 619 (1992)); see also *120 West Fayette St.,*

>   *LLLP v. Mayor of Baltimore*, 407 Md. 253, 270, 964 A.2d 662, 671–72 (2009) ("As to standing, the question is 'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' ") (quoting *News American v. State*, 294 Md. 30, 40, 447 A.2d 1264, 1269 (1982)); *Adams*, 328 Md. at 480, 615 A.2d at 619 ("One requirement of justiciability is that the plaintiff have standing in the sense that the person is entitled to invoke the judicial process in a particular instance.") (citing *Reyes v. Prince George's Cnty.*, 281 Md. 279, 288, 380 A.2d 12, 17 (1977)); *Superior Outdoor Signs, Inc. v. Eller Media Co.*, 150 Md.App. 479, 501, 822 A.2d 478, 491 (2003) ("For an affected interest to furnish a basis for aggrieved person standing, the interest must be legally protected. Thus, just as an impact on a person's property interest affords a basis for standing, an impact on a person's interest arising out of contract, protected from tortious invasion, or founded on a statute that confers a privilege likewise provides a basis for standing.").

In the instant case, it is anticipated that the Plaintiff PETA has added the Plaintiff Ms. Collins in order to attempt to show "Article III" standing because as an individual, Ms. Collins is claiming to be aggrieved by the treatment of the animals and to have an emotional stake in the wellbeing of the animals involved.[1]

However, as treated further below, that is only the beginning of an analysis of standing pursuant to Article III. In order to have standing pursuant to Article III, the mere statement of a grievance, no matter how heartfelt or sincere, does not mean that a "legally protected" interest of the plaintiff has been invaded in such a manner as to comport with

---

[1] It may be that Ms. Collins' complaint would have given her standing to bring suit under the Endangered Species Act, were this such a complaint, but that does not mean that she has standing or is entitled to relief under any other cause of action, without first showing entitlement to such relief as a matter of law, by meeting each and every element of that cause of action.

Article III standing requirements. Before such a showing may be made, a "legally protected" interest of the plaintiff must be stated and a wrongful invasion of that legally protected interest must be demonstrated.

### III. The Plaintiffs fail to state a claim upon which relief may be granted

#### A. In order to constitute a public nuisance, the defendants use of their property must intrude upon public property or a property right common to the public

The fundamental flaw in Plaintiffs' claim lies in the fact that a nuisance, whether public or private, is based upon the use of real property and what emanates from such use, and the invasion of a protected nearby property interest by such emanations. It flows not from a personal tort against an individual but is a tort against the property rights of another, whether those rights be public or private. It is designed to prevent damage to public property in which the community at large holds an interest, not to alleviate the mental angst of a individual plaintiff 250 miles away, or the fulfill the ideological goals of an organizational plaintiff 300 miles away.

The Court of Appeals in *Tadjer v. Montgomery County*, 300 Md. 539, 551–53, 479 A.2d 1321 (1984), described the matter of public nuisance as follows, referencing Restatement 2d of Torts, 821(b):

> The Restatement explains in comment g:
>
> "Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons. There must be some interference with a public right. A public right is one common to all members of the general public. It is collective in nature and not like the individual right

that everyone has not to be assaulted or defamed or defrauded or negligently injured. Thus the pollution of a stream that merely deprives fifty or a hundred lower riparian owners of the use of the water for purposes connected with their land does not for that reason alone become a public nuisance. If, however, the pollution prevents the use of a public bathing beach or kills the fish in a navigable stream and so deprives all members of the community of the right to fish, it becomes a public nuisance." Id. at 92.

*Burley v. City of Annapolis*, 182 Md. 307, 34 A.2d 603 (1943), concerned the propriety of the revocation of billiard table licenses by a municipal corporation. In the process of that opinion Judge Ogle Marbury said for the Court:

"Public nuisances, that is to say, those nuisances which have a common effect and produce a common damage, are usually placed in three classifications: First, those which are nuisances per se or by statute; second, those which prejudice public health or comfort such as slaughterhouses, livery stables, etc.; third, those which in their nature are not nuisances, but may become so by reason of their locality, surroundings, or the manner in which they may be maintained. Dillon on Municipal Corporations, 5th Ed., paragraph 690, Vol. II, pages 1044-1045." 182 Md. at 312, 34 A.2d at 605.

See also the discussion in *Adams v. Commissioners of Trappe*, 204 Md. 165, 169-72, 102 A.2d 830, 834-35 (1954).

The subsequent discussion in *Adams v. Commissioners of Trappe*, *Id*. at 834, makes clear that the power of the courts of equity to enjoin public nuisances is rooted in the prevention of the impairment or destruction of rights in ***surrounding property***, such as by undue or unseemly noise, pollution, odors, vibrations, foot or vehicular traffic, or an unlawful encroachment upon a public right of way.

It is a basic principle that courts of equity have jurisdiction over issues of property and the maintenance of civil rights, and do not interpose their aid in matters merely criminal which do not

> affect any rights of property. That principle, however, does not preclude injunctive relief against the commission of criminal acts which, ***unless enjoined, would operate to cause an irreparable injury to property or rights of a pecuniary nature***. As we stated in *Clark v. Todd*, 192 Md. 487, 492, 64 A.2d 547, if criminal offenses are primarily and essentially an injury to property, preventive relief may be granted by the court of equity within the same limits as where the element of criminality is entirely absent. In such a case, the court does not intervene to prevent the commission of the crime, although that may incidentally result, but to protect individual property from destruction.

The Plaintiffs herein do not allege any interest in any property, public or private, remotely close to the premises of the Defendants, or an injury to a pecuniary interest other than the voluntary financial expenditures by PETA. Plaintiff Collins alleges that she is a resident and citizen of New Jersey, in the town of Marlton, and Plaintiff People for the Ethical Treatment of Animals, Inc., alleges that it is a resident and citizen of Virginia, in the city of Norfolk. The court may take judicial notice that Ms. Collins is about 250 miles drive from the Defendants' facility, and the Plaintiff PETA is almost 300 miles distant. The two Plaintiffs cannot reasonably be construed to be any part of any "community at large" with the Defendants in terms of the effect that the Defendants' use of their property may have upon the Plaintiffs, and the Plaintiffs certainly have alleged no property or pecuniary interest within that community at large.

By way of analogy in a zoning context, these examples of what can be considered "nearby" or close enough to give rise to standing for special aggrievement under a public nuisance theory, from *Ray v. Mayor and City Council of Baltimore*, 430 Md. 74, 59 A.3d. 545, at 91-92, 555, are illustrative:

> In *Cassel v. City of Baltimore*, 195 Md. 348, 353, 73 A.2d 486 (1950), "less than 100 feet from the property in dispute" was considered appropriately nearby. In *Marcus v. Montgomery County*, 235 Md. at 538, 201 A.2d 777, there were three would-be protestants. One who lived a block away from the proposed project was deemed to be prima facie aggrieved. The two who were, respectively, 3/4 of a mile away and 1/4 of a mile away were not prima facie aggrieved and their challenges were dismissed. The property owners who were not sufficiently nearby in *DuBay v. Crane*, 240 Md. at 183–84, 213 A.2d 487, were 1) 1,500 feet away (the appellants in the present case are between 2,112 feet and 3,326 feet away) and 2) 0.4 miles away (precisely the same as the best figure for the two appellants here). In *Wilkinson v. Atkinson*, 242 Md. at 233, 218 A.2d 503, the landowner who was beyond the pale of nearness was 750 feet away (between one-third and one-fourth of the remoteness of Ray and Coyne in this case). In *White v. Major Realty*, 251 Md. at 64, 246 A.2d 249, a distance of ½ a mile was too far for prima facie aggrievement. In *Committee for Responsible Development on 25th Street v. Baltimore*, 137 Md.App. at 86, 767 A.2d 906, five blocks (compared to seven blocks for each appellant in this case) was considered too far to enjoy "nearby" status:
>
> Armstrong does not live so close to the Property that he is 'per se' aggrieved. Armstrong lives two blocks west and three blocks north of the Property, and he cannot see it or hear activity taking place on it from his house. 203 Md. App. 15, 36 A.3d. 521

The *Ray* court, at 92-93, 555, went on to note, for those lacking proximity:

> Protestants, who reside far away from the rezoned site and cannot establish special aggrievement through proximity, can only look to the ***theoretically recognized, but never before found in fact, third category of standing that requires a showing that the reclassification produces a harm directly and specifically impacting their property***. See *Bryniarski*, 247 Md. at 145, 230 A.2d at 295. Petitioners seek to do this in three ways: (1) by showing that they will suffer harm from a change in the character of the neighborhood as a result of the PUD; (2) by arguing that they will be directly and specifically impacted

> by the increased traffic, and (3) by alleging direct and specific harm from the PUD's visibility. (Emphasis added).

The *Ray* court went on to reject all of the claimed harms not arising from proximity as too remote or speculative to show harm to the property interests of the petitioners. If those claims are too remote, then the claims of ideological offense or mental anguish made by the Plaintiffs in the case at bar are hopelessly untenable.

There is further no allegation by the Plaintiffs that any public right is being impaired by any activities carried on by the Defendants at what is purely a private business enterprise, where no member of the public has an absolute right to enter onto the premises. A nuisance does not arise from the entry of an offended party onto the property alleged to conduct the nuisance—it arises from the effects of those activities on the surrounding properties or surrounding neighborhood. While nuisance laws have been used to shut down gambling houses or similar establishments, *Adams v. Commissioners of Trappe*, *Id.,* makes clear that this is because of the incidental harm to the property rights of others who own or use other private or public properties surrounding the offending property, and not due to any concern with what is done upon the actual premises, so long as no elements of nuisance emanate out from the property itself to affect any of the surrounding area. An offended party cannot drive to the defendant's property from out of town (much less out of state), voluntarily enter upon it, and then claim standing to close it down as a nuisance. Neither is there any reason to think there is a public right to have a zoo 250 miles away from one's home with which one happens to be pleased.

In other words, a gasoline station may be a public nuisance in some communities because it emits odors offensive to passersby or because of the volume of vehicular traffic. A barroom may be a nuisance because of noisy patrons leaving at last call or because of the volume of music emanating therefrom. A gambling house may be a nuisance because it is a source of financially desperate or criminal foot traffic in a neighborhood. But in all cases, the concern is not with the private business of the establishment, nor even with whether any illegal activity might be alleged to be occurring thereupon, but with any deleterious effect upon the property rights of the surrounding community, or the "community at large" as stated in *Rosenblatt v. Exxon Company, USA*, 335 Md. 58, 642 A.2d. 180, at 79, 180 (1994).

The Plaintiffs herein do not allege that any activities of the Defendants actually emanate beyond the boundaries of the zoo property into the "community at large" in such a way as to intrude upon the public or private property rights of others[2], and yet they also appear to urge in this case that the "public" or "community" for purposes of their complaint is a nationwide public, or at least one that encompasses the entire mid-Atlantic region from New Jersey to western Maryland to tidewater Virginia. The appellate Courts of Maryland have never contemplated that standing in a private or public nuisance action could extend so far, even if the claimed damages in this case were cognizable, which they are not. Public nuisance doctrine is to protect the rights of a "community at large" from offending uses of properties in the local area. The definition of "community at large"

---

[2] This single facet alone should be fatal to Plaintiffs' claims.

goes no further than a nuisance might actually physically emanate from the property and affect the surrounding area, and is not meant to be a creative exercise for out of state plaintiffs straining to find a cause of action with which to harass a sworn enemy.

> **B. To state a claim under public nuisance laws in Maryland, the amount of individual feeling, emotional distress, or voluntary expenditure of time and money by Plaintiffs does not place one in a specially aggrieved class**

There are two types of nuisance action in Maryland: private and public. The Plaintiffs herein have attempted to plead only under a theory of public nuisance, though there would be no viable claim under either cause of action.

Generally, a public nuisance is a criminal offense that is prosecuted by government entities, not by private persons. *Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 79 n. 8, 642 A.2d 180 (1994). The Restatement 2nd of Torts, 821(b), defines a public nuisance as "an unreasonable interference with a right common to the general public." As treated above, that "right common to the general public" is a right to enjoy the use of *public* properties, facilities, or amenities, and not a general right to have the world comply with what one desires in all respects. An acceptance of the Plaintiffs' theory of nuisance in this case is to broaden the doctrine to comport with the statement that "if someone somewhere is doing something wrong on their own property, and a plaintiff is disturbed by it, it is a public nuisance." Under the same theory, the Defendants in this case could likely sue PETA in Virginia for creating a public nuisance by its operation of an animal shelter that has been found in violation of the laws of the Commonwealth of Virginia, for operating a public nuisance.

The Courts in Maryland have been very guarded in expanding any claim for special damages beyond those property owners immediately affected by the challenged activity. There appears to be no record of any case in Maryland where a plaintiff outside of the immediate area of emanation of an alleged nuisance has prevailed in enforcing a public nuisance claim. "It is also well settled that when a private individual seeks an injunction to remove a public nuisance, he must show that he is the ***owner of property injured by the nuisance*** and also that he would suffer some special damage different from the experienced in common with the other citizens." *Shiebeck v. Smith*, 180 Md. 412, at 421, citing to *Mayor, etc., of Georgetown v. Alexandria Canal Co.*, 12 Pet. 91, 99, 9 L.Ed. 1012, 1016; *Baltimore & Ohio R. R. Co. v. Gilmor*, 125 Md. 610, 617, 94 A. 200; 25 Am.Jur., Highways, § 325. (Emphasis added).

### C. The Plaintiff Ms. Collins does not plead any cognizable damages under the law of Maryland that would entitle her to injunctive relief

Plaintiff Ms. Collins alleges, in summary, that she has experienced emotional distress from what she saw at the Zoo, and that she has voluntarily expended substantial effort to address the upset that this caused her. Taking these allegations as true *arguendo*, they still fail to state a claim.

In the State of Maryland, unless there is a physical injury or legitimate fear of physical injury, an action for damage to property interests cannot generally sustain a claim for emotional distress damages. *Exxon Mobil Corp. v. Albright*, 433 Md. 303, 71

A.3d. 30 (2013), see also *Dobbins v. Washington Suburban Sanitary Comm'n*, 338 Md. 341, 351, 658 A.2d 675, 679-80 (1995).

To allow Plaintiff Collins to assert her mental distress as a grounds for injunction, where the mental distress does not even arise from any legally protected interest under nuisance law, would be bizarre. Ms. Collins by her own allegations does not intend to return to the Zoo unless the conditions she saw are altered so as to no longer cause her mental distress. She is fully in control of any further harm she believes she might experience, and therefore cannot show any need of an injunction, nor can she state how an injunction would protect some property right she might have related to the manner in which the Zoo is operated. Ms. Collins was also presumably completely in control of whether she took voluntary action in response to her emotional reaction to the Zoo, and any voluntarily assumed activities she may have undertaken in response to that emotional reaction, also cannot form the basis of injunctive relief, barring some showing that she has some protected property interest in a Zoo and its surrounding area 250 miles away from her home.

> **D.      Plaintiff PETA has no damages other than those voluntarily assumed by its own expenditures, and voluntary expenditures, without the need to protect a valid property interest arising from a valid property interest, cannot justify injunctive relief from an alleged nuisance**

PETA asserts its voluntary expenditures as a basis for standing. Regardless of the outcome of the appeal of the prior case between the parties as to organizational standing (Case No. 17-2148-PX in this Court, Case No. 20-1010 in the Fourth Circuit Court of

Appeals), this does not suffice. Unless PETA can show it needs injunctive relief in order to protect its legally protected property interests from a nuisance created by the Defendants, PETA cannot qualify for such an injunction under the common nuisance law of Maryland.

In short, the Maryland common law of nuisance and the Endangered Species Act are not the same. The Endangered Species Act has a very broad "citizen suit" provision restrained only by Article III of the United States Constitution. To the contrary, the nuisance laws of Maryland require that as part and parcel of both stating a claim and showing standing, that a plaintiff must demonstrate that it has a legally protected property interest in the "community at large" that is being violated or endangered by the activities of a defendant upon its own property.

### IV. In this instance, failure to state a claim results also in a lack of standing

No matter what formulation of standing is applied, the Plaintiffs cannot demonstrate that they have "legally protected" interests that are being violated such as to generate an case or controversy under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1998). Because both of the Plaintiffs fail to state a claim, in that they fail to show that they have a legally protected interest under Maryland nuisance law, then it naturally follows that they also lack standing under Article III and under the Maryland substantive laws of standing. Furthermore, even if the Maryland law were more restrictive in terms of establishing standing, the failure to state a claim alone would mandate dismissal of this action.

## V. Conclusion

The instant complaint is nothing more than an additional and intentional vexation of the Defendants by the Plaintiff PETA. PETA is in a posture where even if it loses this litigation, it forces a pyrrhic victory upon the Defendants by making them incur further legal expense and by further generating publicity for its causes. The legal theory advanced is not justified by any established law in Maryland and no reasonable argument has been made for an expansion or modification to the laws of Maryland as they apply to nuisance.

This Court should not expand the substantive law of Maryland on behalf of the Maryland Court of Appeals. "[A] federal court in the exercise of its diversity jurisdiction should act conservatively when asked to predict how a state court would proceed on a novel issue of state law." *Rhodes v. E.I. DuPont Nemours & Co.*, 636 F.3d. 88 at 97-98 (4th Cir. 2011), citing to *Day & Zimmermann*, 423 U.S. at 4, 96 S.Ct. 167. (1975).

To accept the Plaintiffs' view of public nuisance in this case would do violence to every Maryland precedent as to the limitations of this cause of action. If this Court has any notion whatsoever that the Maryland Court of Appeals might embrace this novel use of public nuisance law as advanced by the Plaintiffs, then the question should be certified to the Court of Appeals of Maryland, along with a request for a determination of whether the theory advanced is frivolous or meritless. Defendants submit that this action by Plaintiffs is frivolous, meritless, and brought to harass and vex the Defendants rather than for any legitimate purpose under the law.

WHEREFORE, the Defendants pray:

That the Plaintiffs' Complaint be dismissed with prejudice.

                              Respectfully Submitted,

                              ____s/Nevin L. Young_____
                              Nevin L. Young
                              Fed Bar. ID No. 28604
                              170 West Street
                              Annapolis Maryland 21401
                              410-353-9210
                              nyoung@burlingtonyounglaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of May, 2020, I served the foregoing upon the counsel and/or parties set forth below via the ECF filing system:

Adam Abelson, Esquire
Zuckerman Spaeder, LLP
100 East Pratt Street, 24th Floor
Baltimore MD 21202

Marcos Hasbun, Esquire
101 East Kennedy Blvd.
Tampa Florida 33602

James Ersellius, Esquire
Zeynep Graves, Esquire
Caitlin Hawks, Esquire
PETA Legal Foundation
2154 West Sunset Blvd.
Los Angeles, California 90026

                              ____s/Nevin L. Young_____
                              Nevin L. Young