## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### –Northern Division–

CONSTANCE COLLINS, *et al.*,

*Plaintiffs,*

–v–

TRI-STATE ZOOLOGICAL PARK OF
WESTERN MARYLAND, INC., *et al.*,

*Defendants.*

Case No. 1:20-cv-01225

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Adam Abelson
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
(410) 332–0444; (410) 659–0436 (fax)
aabelson@zuckerman.com


Marcos E. Hasbun
ZUCKERMAN SPAEDER LLP
101 East Kennedy Boulevard, Suite 1200
Tampa, Florida 33602–5838
(813) 221–1010; (813) 223–7961 (fax)
mhasbun@zuckerman.com
*Admitted Pro Hac Vice*

Caitlin Hawks
Zeynep Graves
James Erselius
PETA Foundation
2154 West Sunset Boulevard
Los Angeles, CA 90026
(323) 210-2263; (213) 484-1648 (fax)
caitlinh@petaf.org
zeynepg@petaf.org
jamese@petaf.org
*Admitted Pro Hac Vice*

*Counsel for Constance Collins and
People for the Ethical Treatment of Animals, Inc.*

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................... 1

II.   ARGUMENT .......................................................................... 2

  A.    The Complaint states a claim for public nuisance under Maryland law.
        ..................................................................................... 3

      1.    Plaintiffs have alleged that Defendants' conduct interferes with
            a right common to the general public. ......................................... 4

      2.    Plaintiffs have alleged that Defendants' conduct is
            unreasonable. ............................................................................. 8

      3.    Public nuisance is not a "property offense." ................................ 8

      4.    Public nuisance does not require a physical emanation. ........... 11

  B.    Plaintiffs have pled special injuries and therefore have standing to
        bring a public nuisance action. .......................................................... 13

      1.    Plaintiff PETA has alleged a special injury based on its economic
            interests and charitable mission. .................................................. 14

      2.    Plaintiff Connie Collins has alleged a special injury based on her
            aesthetic, recreational, educational, and personal interests. .... 17

      3.    Standing does not require "a protected property interest." ....... 19

      4.    Standing does not require proximity to the nuisance. .............. 21

  C.    Plaintiffs have pled Article III standing. ........................................... 23

      1.    Plaintiff PETA has alleged an injury-in-fact under Havens. .... 25

      2.    Plaintiff Connie Collins has alleged an injury-in-fact based on
            her aesthetic injury. ................................................................... 28

      3.    Plaintiffs' injuries are caused by Defendants' actions and are
            redressable ................................................................................ 29

III.  CONCLUSION ...................................................................... 30

# TABLE OF AUTHORITIES

## Federal Cases

*Action NC v. Strach,*
    216 F. Supp. 3d 597 (M.D.N.C. 2016) .................................................................... 26

*Animal Legal Def. Fund v. Lucas,*
    2019 WL 5068531 (W.D. Pa. Oct. 9, 2019) ............................................................ 19

*Animal Legal Def. Fund v. Olympic Game Farm, Inc.,*
    387 F. Supp. 3d 1202 (W.D. Wash. 2019) .............................................................. 18

*Animal Legal Def. Fund, Inc. v. Glickman,*
    154 F.3d 426 (D.C. Cir. 1998) ................................................................................ 29

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................................. 2

*Bostic v. Schaefer,*
    760 F.3d 352 (4th Cir. 2014) .................................................................................. 24

*Casa De Md., Inc. v. Trump,*
    414 F. Supp. 3d 760 (D. Md. 2019) ....................................................................... 26

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,*
    204 F.3d 149 (4th Cir. 2000) .................................................................................. 24

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) .......................................................................................... 24, 28

*Havens Realty Corp v. Coleman,*
    455 U.S. 363 (1982) .......................................................................................... 25, 26

*Hill v. Coggins,*
    867 F.3d 499 (4th Cir. 2017) ............................................................................ 28, 29

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.,*
    457 F. Supp. 2d 298 (S.D.N.Y. 2006) ............................................................ 5, 8, 11

*Kerns v. United States,*
    585 F.3d 187 (4th Cir. 2009) .................................................................................... 3

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) .......................................................................... 24

*Mayor & City Council of Balt. v. Monsanto Co.,*
   2020 WL 1529014 (D. Md. Mar. 31, 2020) ........................................ 13, 16

*Miller v. Augusta Mut. Ins. Co.,*
   157 F. App'x 632 (4th Cir. 2005).......................................................... 23

*People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.,*
   424 F. Supp. 3d 404 (D. Md. 2019) ................................................. 27, 28

*Sierra Club v. U.S. Dep't of the Interior,*
   899 F.3d 260 (4th Cir. 2018) ............................................................... 30

*Spokeo, Inc. v. Robins,*
   36 S. Ct. 1540 (2016) ......................................................................... 23

*White Tail Park, Inc. v. Stroube,*
   413 F.3d 451 (4th Cir. 2005) ............................................................... 25

*White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,*
   913 F.2d 165 (4th Cir. 1990) ............................................................... 23

**State Cases**

*Adams v. Commissioners of Trappe,*
   102 A.2d 830 (Md. 1954) ......................................................... 4, 5, 10, 11

*Agbebaku v. Sigma Aldrich, Inc.,*
   2003 WL 24258219 (Md. Cir. Ct. June 24, 2003).............................. 8, 21

*Anne Arundel Cty. v. Bell,*
   13 A.3d 649 (Md. 2015) ...................................................................... 22

*Attorney Gen. ex rel. Mich. Bd. of Optometry v. Peterson,*
   164 N.W.2d 43, 53 (Mich. 1969)........................................................... 7

*Balt. Gas & Elec. Co. v. Dep't of Health & Mental Hygiene,*
   395 A.2d 1174 (Md. 1979) .................................................................. 10

*Broadway v. Am. Soc'y for the Prevention of Cruelty to Animals,*
   15 Abb.Pr.N.S. 51 (N.Y. 1873) ............................................................. 7

iii

*Commonwealth v. Turner*,
   14 N.E. 130 (Mass. 1887)) ........................................................................ 7

*Doe v. Commander, Wheaton Police Dep't*,
   329 A.2d 35 (Md. 1974) ........................................................................... 19

*Evans v. State*,
   914 A.2d 25 (Md. 2006) ........................................................................... 14

*Exxon Mobil Corp. v. Albright*,
   71 A.3d 30 (Md. 2013) ............................................................................ 18

*Hoffman v. United Iron & Metal Co.*,
   671 A.2d 55 (Md. Ct. Spec. App. 1996) ................................................... 13

*Knox v. Mass. Soc'y for the Prevention of Cruelty to Animals, Inc.*,
   425 N.E.2d 393 (Mass. App. Ct. 1981) .......................................... 1, 6, 12

*Md. Ass'n of Health Maint. Orgs. v. Health Servs. Cost Review Comm'n*,
   741 A.2d 483 (Md. 1999) ......................................................................... 14

*Pa. Soc. for Prevention of Cruelty to Animals v. Bravo Enterprises, Inc.*,
   237 A.2d 324 (Pa. 1968) ........................................................................... 6

*Ray v. Mayor & City Council of Balt.*,
   59 A.3d 545, 557 (Md. 2013) ...................................................... 20, 22, 23

*Raynor v. Md. Dep't of Health & Mental Hygiene*,
   676 A.2d 978 (Md. Ct. Spec. App. 1996) ............................................ 9, 12

*Rosenblatt v. Exxon Co., U.S.A.*,
   642 A.2d 180 (Md. 1994) ......................................................................... 12

*Savage v. City Place Ltd. P'ship*,
   2004 WL 3045404 (Md. Cir. Ct. Dec. 20, 2004) ..................................... 14

*Smith v. Shiebeck*,
   24 A.2d 795 (Md. 1942) ........................................................................... 20

*State Ctr., LLC v. Lexington Charles Ltd. P'ship*,
   92 A.3d 400 (Md. 2014) ........................................................................... 21

*State ex rel. Att'y Gen. v. Canty*,
   105 S.W. 1078 (Mo. 1907) ......................................................................... 7

*State v. Porter,*
   116 S.E. 915 (N.C. 1893) ................................................................. 7

*Tadjer v. Montgomery County,*
   479 A.2d 1321 (Md. 1984) ............................................ 3, 4, 5, 6, 8, 9, 11

*United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.,*
   137 A.3d 355 (Md. Ct. Spec. App. 2016) ........................................ 13, 20

*Waters v. People,*
   46 P. 112 (Colo. 1896) ................................................................. 7

*Whitaker v. Prince George's County,*
   514 A.2d 4 (Md. 1986) ......................................................... 5, 10, 11

## Statutes

7 U.S.C. §§ 2131–2160 ................................................................. 1

Md. Code, Crim. Law § 10-604 ................................................... 1, 7

## Rules

Fed. R. Civ. P. 12(b)(1) ................................................................. 3

Fed. R. Civ. P. 12(b)(6) ................................................................. 2

## Other

Restatement (Second) of Torts § 821B ........................................ 3, 8

Restatement (Second) of Torts § 821C ........................................... 13

## I.     INTRODUCTION

Defendants operate a public nuisance in the form of a roadside zoo called Tri-State Zoological Park of Western Maryland ("Tri-State"), where visitors witness the mistreatment, suffering, abuse, pain, and neglect inflicted on the approximately 110 animals confined there. As alleged in the Complaint, that mistreatment includes failing to provide the animals with proper food and sufficient water, depriving them of adequate shelter, and denying appropriate veterinary care—all of which inexorably cause the animals unnecessary and completely avoidable pain and suffering.

The federal Animal Welfare Act ("AWA"), 7 U.S.C. §§ 2131–2160, and Maryland's animal abuse and neglect statute, Md. Code, Crim. Law § 10-604, provide legal protection to captive animals by mandating that they receive basic and humane sustenance and care. Defendants' "care" of the animals at Tri-State certainly violates both statutes, but this lawsuit does not seek to enforce either statute. Instead, it seeks to redress the public nuisance Defendants cause by virtue of offending the moral precepts embodied by those statutes: the need to provide humane care to animals who, being captive, are neither able to fend for nor provide for themselves.

Like other animal protection laws "designed to prevent cruelty and neglect to animals," the AWA and Maryland's animal abuse and neglect statute are "directed against acts which may be thought to have a tendency to dull humanitarian feelings and to corrupt the morals of those who observe or have knowledge of the acts." *See Knox v. Mass. Soc'y for the Prevention of Cruelty to Animals, Inc.*, 425 N.E.2d 393, 396 (Mass. App. Ct. 1981) (citation omitted). Defendants' chronic and ongoing

1

violations of these statutes necessarily offend basic public morals, constituting a public nuisance under Maryland law that can and should be redressed by this Court.

In seeking dismissal, Defendants argue that the Complaint does not state a public nuisance claim on which relief can be granted under Maryland law because Defendants' conduct does not intrude upon the property rights of Plaintiffs, and because Plaintiffs purportedly have neither standing nor an alleged special injury. Defendants are wrong on all accounts.

As argued below, Maryland public nuisance law is not limited to remedying property harms. It protects other rights, such as public morals. Further, public nuisance standing for private plaintiffs requires only a special injury, which Plaintiffs have sufficiently alleged, and does not require satisfaction of the other illusory tests devised by Defendants, such as the alleged precondition that a plaintiff challenging a public nuisance live in close proximity to the nuisance. Plaintiffs' alleged special injuries also meet the requirements of Article III. For these reasons and those set forth below, Defendants' Motion to Dismiss should be denied.

## II.   ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In evaluating the sufficiency of plaintiffs' claims, a court must "accept as true the factual allegations of the challenged complaint" and

"view those allegations in the light most favorable to the plaintiff[s]." *Lambeth v. Bd. of Commissioners of Davidson Cty., NC*, 407 F.3d 266, 268 (4th Cir. 2005).

Similarly, under Rule 12(b)(1), "[w]hen a defendant makes a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal citations omitted). "In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

## A. The Complaint states a claim for public nuisance under Maryland law.

Maryland courts define public nuisance broadly, in accordance with the Second Restatement of Torts, as "an unreasonable interference with a right common to the general public." *See Tadjer v. Montgomery County*, 479 A.2d 1321, 1327 (Md. 1984) (quoting Restatement (Second) of Torts § 821B(1) (1979)). Contrary to Defendants' contention, Maryland public nuisance law does not apply only to property injuries; it applies to various public rights, including public morals. *See id.* (public morals are a public right); Restatement (Second) of Torts § 821B cmt. b (common law public nuisance includes interference with public morals); Restatement (Second) of Torts § 821B cmt. h ("Unlike a private nuisance, a public nuisance does not necessarily involve interference with use and enjoyment of land.").

Further, a public nuisance is not determined solely by how it affects nearby neighbors, but by how it affects *anyone* who comes into contact with it. *See Adams v.*

3

*Commissioners of Trappe*, 102 A.2d 830, 834 (Md. 1954) ("The public nuisance is an injury to the public at large *or to all persons who come in contact with it*.") (emphasis added). Plaintiffs have alleged facts sufficient to state a claim that Defendants' conduct unreasonably interferes with a public right—the publicly accepted moral imperative, embodied by animal cruelty and neglect statutes, to provide humane care to captive animals. *See* Complaint ("Compl."), ECF No. 1., ¶¶ 4–5.

### 1. Plaintiffs have alleged that Defendants' conduct interferes with a right common to the general public.

The Complaint alleges numerous facts demonstrating that Defendants "interfere[] with a right common to the general public." *See Tadjer*, 479 A.2d at 1327. Specifically, Defendants engage in the chronic mistreatment and neglect of animals— for example, by denying animals "timely veterinary care, daily care by staff experienced in animal care and husbandry, sufficient environmental enrichment, proper food, potable water, shelter from the elements, and, in some cases, appropriate social groups"—in a manner that violates the AWA and Maryland's animal abuse and neglect statute. Compl. ¶ 17. The same conduct necessarily offends and interferes with public morals relating to minimum acceptable care humans *must* provide to captive animals. *Id*. ¶¶ 18–22.

Public morals are one of the fundamental public rights protected under Maryland law. *See Tadjer*, 479 A.2d at 1327 (explaining that public nuisances include conduct that interferes with "the public health, . . . the public safety, . . . public morals, . . . the public peace, . . . the public comfort, . . . [and] public convenience"). Further,

conduct that unreasonably interferes with public morals constitutes an enjoinable public nuisance. *See Whitaker v. Prince George's County*, 514 A.2d 4, 10 (Md. 1986) ("[T]he operation of a bawdyhouse constitutes a public nuisance whereby equity jurisdiction would lie to afford a more complete remedy than is obtainable by law."). The mistreatment of animals falls squarely within this category of public rights. *See Tadjer*, 479 A.2d at 1327 (examples of interference with public morals include bullfights).

Here, that public right is embodied by the AWA and Maryland's animal abuse and neglect statute, and Defendants' violations of those statutes also create a redressable public nuisance under Maryland law. *See* Compl. ¶¶ 18–20. Indeed, "Maryland has long recognized that conduct may constitute a per se public nuisance where the conduct is proscribed by statute." *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 457 F. Supp. 2d 298, 308 (S.D.N.Y. 2006) (citing *Adams*, 102 A.2d at 835). The Complaint's allegations that Defendants' treatment of Tri-State's animals often violates the AWA and Maryland's animal abuse and neglect statute are thus sufficient to plead that Defendants' operation of Tri-State constitutes a public nuisance. *See id.* at 309 (holding that plaintiffs properly pled nuisance by alleging that contamination is "proscribed by state and federal law"); *Adams*, 102 A.2d at 836 ("It has been held that to engage in any form of business in [defiance] of laws regulating or prohibiting the business constitutes a nuisance *per se*, and a person so engaging therein may be enjoined from so doing by any one suffering a special injury thereby.") (citations omitted); *see also Tadjer*, 479 A.2d at 1328 (public

5

nuisance plaintiffs failed to state a claim where they made "no assertion of any violation of law").

While Maryland courts have not yet had the opportunity to address the intersection between animal protection laws and public morals, other courts have held squarely that violations of animal protection laws necessarily interfere with, and erode, public morals:

> A legislative proscription, such as that found in the cruelty to animals statute, is declarative of the public policy and is tantamount to calling the proscribed matter prejudicial to the interests of the public. Injury to the public is the essence of a public nuisance. Therefore, [the defendant's] activities are properly enjoinable as being contrary to law and prejudicial to the interests of the public.

*Pa. Soc. for Prevention of Cruelty to Animals v. Bravo Enterprises, Inc.*, 237 A.2d 324, 348 (Pa. 1968) (internal citation omitted); *see also Knox*, 425 N.E.2d at 395–96 (Massachusetts' animal protection laws are "directed against acts which may be thought to have a tendency to dull humanitarian feelings and to corrupt the morals of those who observe or have knowledge of those acts."). Indeed, many courts have described how these laws are specifically aimed at preventing the erosion of public morals because, among other things, they seek to prevent animal abuse and neglect from becoming normalized or socially acceptable.[1] Violations of these laws thus harm

---

[1]     *See, e.g., Commonwealth v. Turner*, 14 N.E. 130, 131–32 (Mass. 1887) ("The [cruelty to animals] statute does not define an offense against the rights of property in animals, nor against the rights of the animals that are in a sense protected by it. The offense is against the public morals, which the commission of cruel and barbarous acts tends to corrupt."); *Broadway v. Am. Soc'y for the Prevention of Cruelty to*

the public. *See Attorney Gen. ex rel. Mich. Bd. of Optometry v. Peterson*, 164 N.W.2d 43, 53 (Mich. 1969) ("Harm to the public is presumed to flow from the violation of a valid statute enacted to preserve public health, safety and welfare.").

Like Pennsylvania, Massachusetts and other states, Maryland proscribes cruelty to, and neglect of, captive animals, including by failing to provide them with: "(i) nutritious food in sufficient quantity; (ii) necessary veterinary care; (iii) proper drink; (iv) proper air; (v) proper space; (vi) proper shelter; or (vii) proper protection from the weather." Md. Code, Crim. Law § 10-604. The Complaint's allegations that Defendants violate Maryland state law and the AWA are therefore also sufficient to plead that Defendants interfere with the rights of the public. *See* Compl. ¶¶ 18–20.

---

*Animals,* 15 Abb.Pr.N.S. 51, 77 (N.Y. 1873) ("[The anti-cruelty statute] truly has its origin in the intent to save a just standard of humane feeling from being debased by pernicious effects of bad example—the human heart from being hardened by public and frequent exhibitions of cruelty to dumb creatures, committed to the care and which were created for the beneficial use of man."); *Waters v. People,* 46 P. 112, 113 (Colo. 1896) ("[The anti-cruelty statutes'] aim is not only to protect these animals, but to conserve public morals, both of which are undoubtedly proper subjects of legislation."); *State v. Porter*, 16 S.E. 915, 916 (N.C. 1893) ("Man's desire for amusement and sport is no justification for the infliction of suffering or death upon any of the creatures protected by the statute now under consideration. It was enacted to protect the public morals, which the commission of cruel and barbarous acts tends to corrupt."); *State ex rel. Att'y Gen. v. Canty*, 105 S.W. 1078, 1085 (Mo. 1907) (holding that bullfighting is "[a]n act displayed before a public audience which is debasing in its character, debauching in its influence on public morals, and brutalizing in its effect on the spectators is a public nuisance, which a court of equity has jurisdiction to enjoin.").

### 2. Plaintiffs have alleged that Defendants' conduct is unreasonable.

Plaintiffs' allegations that Defendants' conduct is unlawful also are sufficient to plead that Defendants' interference with a public right is unreasonable. Indeed, "conduct may constitute a per se public nuisance where the conduct is proscribed by statute." *In re MTBE Prod. Liab. Litig.*, 457 F. Supp. 2d at 308. Likewise, the Second Restatement of Torts states that violations of law may sustain a holding that interference with a public right is unreasonable. *See Tadjer*, 479 A.2d at 1327–28 ("Circumstances that may sustain a holding that an interference with a public right is unreasonable include . . . whether the conduct is proscribed by a statute, ordinance or administrative regulation.") (quoting Restatement (Second) of Torts § 821B(2)(b)); *see also Agbebaku v. Sigma Aldrich, Inc.*, No. 24-C-02-004175, 2003 WL 24258219, at *13 (Md. Cir. Ct. June 24, 2003) ("[C]onduct that is prohibited by statute, ordinance, or administrative regulation . . . support[s] a finding of public nuisance."). Accordingly, the Complaint adequately pleads that Defendants' conduct is unreasonable.

### 3. Public nuisance is not a "property offense."

A public nuisance claim does not, as Defendants suggest, require an injury to a property interest. *See* Restatement (Second) of Torts § 821B cmt. h ("Unlike a private nuisance, a public nuisance does not necessarily involve interference with use and enjoyment of land."); *see also infra* § II(B)(3) (standing to bring a public nuisance action similarly does not require an interest in property). Rather, Maryland sets forth a broad framework of public rights under public nuisance law. *See supra* § II(A)(1).

8

Defendants' contention that public nuisance law is narrowly circumscribed and applies only to "the invasion of a protected nearby property interest" is simply wrong. *See* Motion to Dismiss ("Mot."), ECF No. 14, at 4, 9–11. Although *private* nuisance is limited to land or other property rights, the Complaint does not assert a private nuisance claim. It asserts a *public* nuisance claim, which encompasses various public rights including public morals. *See Tadjer*, 479 A.2d at 1327 (describing protected public rights).

Indeed, Maryland courts have enjoined a public nuisance when no property interest was at stake. In *Raynor v. Md. Dep't of Health & Mental Hygiene*, a ferret had bitten a child at a slumber party hosted by another child's parents. 676 A.2d 978, 980–81 (Md. Ct. Spec. App. 1996). After a Maryland court issued an injunction requiring the ferret owners to submit the ferret for destruction and testing of rabies, the owners brought a counterclaim for inverse condemnation and conversion. *Id.* at 982. In affirming dismissal, the court in *Raynor* held that no taking occurred because "a biting ferret is a public nuisance that poses a threat to human health." *Id.* at 992. Just as the public nuisance in *Raynor* endangered a public right completely separate from any injury to property—there, public health—Plaintiffs allege that Defendants' conduct endangers a public right—here, public morals—and constitutes a public nuisance.

Defendants miscite *Adams v. Commissioners of Town of Trappe* for the proposition that "the power of the courts of equity to enjoin public nuisances is rooted in the prevention of the impairment or destruction of rights in surrounding property."

9

*See* Mot. at 10. *Adams* was referring to courts of equity refusing to enjoin conduct that is *merely* criminal, which does not apply here. *See* 102 A.2d at 834–35 ("[C]ourts of equity . . . do not interpose their aid in matters *merely criminal* which do not affect any rights of property.") (emphasis added); *see also Whitaker*, 514 A.2d at 9 ("[W]here the acts complained of constitute a breach of the criminal law, courts of equity will not *for that reason alone* take jurisdiction to enjoin the further continuance or prevention of threatened illegal acts.") (emphasis added). The *Adams* court only referenced a property right because that was the right at issue in the case: a public easement to use a sidewalk and street. *See Adams*, 102 A.2d at 83. *Adams* is inapposite, because Plaintiffs do not seek to enjoin Defendants' conduct only because it violates the law, but because it also substantially interferes with a public right.

It is a well-established rule that courts will enjoin the violation of a criminal statute if the criminal activity also constitutes a public nuisance. *See Whitaker*, 514 A.2d at 9 ("Where . . . the enforcement of the criminal law is merely incidental to the general relief sought and the acts complained against constitute a nuisance or a danger to the public health and public welfare and a more complete remedy is afforded by injunction than by criminal prosecution, a court of equity may, on the request of a duly constituted authority, grant the relief sought by the injunction."); *see also Balt. Gas & Elec. Co. v. Dep't of Health & Mental Hygiene*, 395 A.2d 1174, 1181 (Md. 1979) ("For generations, without regard to statute, our equity courts have been open to actions to enjoin public nuisances.").

10

In short, a public nuisance does not need to "intrude upon public property or a property right common to the public" to be actionable. *See* Mot. at 9. The Complaint states a claim for public nuisance because Defendants have unreasonably interfered with "a right common to the general public." *See Tadjer*, 479 A.2d at 1327.

### 4.     *Public nuisance does not require a physical emanation.*

A public nuisance is "an injury to the public at large or *to all persons who come in contact with it*." *Adams*, 102 A.2d at 834 (emphasis added); *see also In re MTBE Prod. Liab. Litig.*, 457 F. Supp. 2d at 310 (applying Maryland law) ("A public nuisance need not affect the entire community 'so long as the nuisance will interfere with *those who come in contact with it in the exercise of a public right* or it otherwise affects the interests of the community at large.'") (emphasis added) (citing Restatement (Second) of Torts § 821B cmt. g). Accordingly, it is irrelevant whether Defendants' activities "emanate beyond the boundaries of the zoo property." Mot. at 14. The relevant inquiry is how Defendants' conduct affects those who come into contact with the nuisance.

In fact, many public nuisances do not "physically emanate from the property." *Cf.* Mot. at 14–15. For example, "the keeping, operation and maintenance of a bawdyhouse constitutes such a public nuisance whereby equity jurisdiction would lie to grant appropriate relief." *Whitaker*, 514 A.2d at 9. In *Whitaker*, the mere existence of the "bawdyhouse" impacted public morals apart from any emanating odor, noise, or pollution onto other property. *See id.* Similarly, in *Raynor*, a biting ferret was deemed a public nuisance despite being confined to a private residence "since birth." 676 A.2d at 983. The court held that, while the ferret owners were "entitled to have

11

a pet ferret," they were not "entitled to keep a ferret that represents a possible health risk." *Id.* at 991.[2]

Similarly, while Maryland law permits Defendants to confine animals, it does not permit Defendants to abuse or neglect them; nor does it permit them to profit from that abuse or neglect by having members of the public witness that mistreatment. *See Knox*, 425 N.E.2d at 395–96 (animal cruelty and neglect statutes are "directed against acts which may be thought to have a tendency to dull humanitarian feelings and to corrupt the morals of those who observe or have knowledge of those acts.").

Defendants cite a passing reference to public nuisances affecting the "community at large" in *Rosenblatt v. Exxon* in apparent support of their argument that a public nuisance can only exist if it has an impact beyond the property on which the nuisance resides. *See* Mot. at 14 (citing *Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 190 (Md. 1994)). *Rosenblatt* involved a private nuisance and did not analyze the scope of a public nuisance or its physical location. *See Rosenblatt*, 642 A.2d at 190 n.8. Accordingly, Defendants are wrong that a public nuisance must physically emanate beyond its property into the "community at large."

---

[2]     Moreover, while the ferret in *Raynor* had limited contact with the public, if any, Defendants actually invite the public to come to their property and buy tickets to view the animals confined there. *See* Compl. ¶ 98.

12

**B.     Plaintiffs have pled special injuries and therefore have standing to bring a public nuisance action.**

Section 821C of the Restatement (Second) of Torts addresses an individual's "standing" to bring a public nuisance action, and states that anyone who has "suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of interference" may bring such an action. Restatement (Second) of Torts § 821C(1). Maryland courts analyze public nuisance standing by reference to the Restatement's special injury requirement.[3] This requirement is specific to public nuisance actions, and is doctrinally distinct from Article III standing, discussed below. *See infra* § II(C). The Complaint plainly alleges that both Plaintiffs have suffered cognizable injuries, resulting from Defendants' unreasonable interference with public rights, that are distinct from those of "the general public." Thus, each has standing to pursue a public

---

[3]     *See United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 137 A.3d 355, 372 (Md. Ct. Spec. App. 2016), *aff'd*, 162 A.3d 909 (2017) ("Section 821C of the Restatement (Second) of Torts addresses the standing requirements for a claim of public nuisance."); *Ray v. Mayor & City Council of Baltimore*, 59 A.3d 545, 557 (Md. 2013) (citing section 821C); *see also Mayor & City Council of Baltimore v. Monsanto Co.*, No. CV RDB-19-0483, 2020 WL 1529014, at *9 (D. Md. Mar. 31, 2020) (allegations that plaintiff "suffered harm of a kind different from that suffered by members of the general public . . . suffice to allege standing to bring a public nuisance claim"). Earlier Maryland cases applied the same substantive rule, sometimes referring to this same type of "standing" as requiring "special and particular damage." *See Hoffman v. United Iron & Metal Co.*, 671 A.2d 55, 64 n.9 (Md. Ct. Spec. App. 1996) (citing *Baltimore & O. R.R. Co. v. Gilmor*, 94 A. 200, 202–03 (Md. 1915)).

13

nuisance cause of action against Defendants.[4] Defendants' unlawful conduct has caused Plaintiff PETA to suffer an injury to its economic interests and its charitable mission, Compl. ¶¶ 112, 131, and caused Plaintiff Connie Collins an injury to her aesthetic, recreational, educational, and personal interests, *id.* ¶ 130.

### 1.   Plaintiff PETA has alleged a special injury based on its economic interests and charitable mission.

PETA has alleged an economic injury, via impairment of its programs, different in kind and degree than the general injury to public morality.[5] PETA is a nonprofit organization "dedicated to protecting animals, including animals used in entertainment, from abuse, neglect, and cruelty." Compl. ¶ 10, 111. To end the abuse and neglect of animals, PETA pursues many programs, including public education. *Id.* ¶ 113.

---

[4]   If either plaintiff has standing in this case, Maryland courts will assume that both plaintiffs have standing. *See, e.g., Md. Ass'n of Health Maint. Orgs. v. Health Servs. Cost Review Comm'n*, 741 A.2d 483, 487 (Md. 1999) ("Where there exists a party having standing to bring an action or take an appeal, we shall not ordinarily inquire as to whether another party on the same side also has standing."); *Savage v. City Place Ltd. P'ship*, No. 240306, 2004 WL 3045404, at *4 (Md. Cir. Ct. Dec. 20, 2004) ("Under Maryland law, as long as a Plaintiff has standing to assert a claim, courts will assume that an organization on the same side as the Plaintiff also has standing to bring the claim.").

[5]   The nuisance standing requirement for organizations is the same as for individuals. *See Evans v. State*, 914 A.2d 25, 68 (Md. 2006) ("We have long held to the view that . . . an individual or an organization has no standing in court unless he has also suffered some kind of special damage from such wrong differing in character and kind from that suffered by the general public.") (internal citations and quotation marks omitted).

Defendants "directly frustrate PETA's mission to eliminate the abuse and neglect of animals" by "mistreating and neglecting captive animals," and thereby "increasing the number of animals subject to abuse and neglect in entertainment." *Id.* ¶ 112. To identify and counteract Tri-State's unlawful treatment of animals, PETA has been required to divert substantial monetary and staff resources away from programs at the core of its mission, including campaigns against other roadside zoos and traveling animal shows with egregious records of animal neglect and abuse, and from funding animal rescues. *Id.* ¶¶ 116–19. PETA's programs, including "public education, cruelty investigation, research, animal rescue, legislation, special events, celebrity involvement, and protest campaigns," "have been perceptibly impaired by Defendants' actions." *Id.* ¶ 113.

PETA's diversion of resources includes drafting and submitting formal complaints to government agencies; drafting multiple posts for the PETA.org blog; reviewing and responding to complaints from the public about Tri-State; compiling and publishing information on PETA's website about Tri-State's history of animal-welfare abuses; distributing press releases on Tri-State's AWA violations; filing and litigating a lawsuit over Tri-State's AWA license renewal and Tri-State's Endangered Species Act violations; and sending an attorney to meet with Defendant Candy, to attempt to negotiate for the release of the animals from Tri-State to reputable facilities. *Id.* ¶ 116. Relatedly, PETA's injury also includes significant staff and volunteer time devoted to monitoring and compiling accurate information about Tri-State to share with the public and its members in order to counteract the public

15

impression that Defendants' practices are lawful and consistent with animal welfare. *Id.* ¶¶ 117, 120.

PETA's expenditures set it apart from the general public and constitute a cognizable special injury. *Id.* ¶¶ 122, 131. The Restatement is clear that "[p]ecuniary loss to the plaintiff resulting from the public nuisance is normally a different kind of harm from that suffered by the general public." Restatement (Second) of Torts § 821C cmt. h. Maryland law accords with the Restatement. *See, e.g., Mayor & City Council of Balt. v. Monsanto Co.*, No. CV RDB-19-0483, 2020 WL 1529014, at *9 (D. Md. Mar. 31, 2020) (holding that allegations that plaintiff "incurred costs as a result of implementing impervious surface restoration efforts . . . suffice to allege standing to bring a public nuisance claim at this stage").

Defendants concede that an offense affecting "rights of a pecuniary nature" may be enjoined, Mot. at 11 (quoting *Adams*, 102 A.2d at 835), and that Plaintiff PETA has alleged a pecuniary right, *see id.* ("Plaintiffs herein do not allege . . . an injury to a pecuniary interest other than the voluntary financial expenditures by PETA"). Without support, Defendants argue only that PETA's "financial expenditures" do not qualify as a pecuniary injury, because they are "voluntary" and "ideological." *Id.* at 4, 11. No Maryland case supports Defendants' position, and federal courts have held the opposite. *See infra* § II(C)(1)(a) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Regardless, the Complaint alleges that Defendants' conduct has perceptibly impaired PETA's mission and caused it pecuniary harm. PETA's injury is cognizable under Maryland law.

16

### 2. Plaintiff Connie Collins has alleged a special injury based on her aesthetic, recreational, educational, and personal interests.

Plaintiff Connie Collins has alleged an injury to her aesthetic, recreational, educational, and personal interests different in kind and degree than the injury to public morality. Ms. Collins "derives personal, recreational, educational, and aesthetic benefits from being in the presence of animals and observing animals in a humane setting." Compl. ¶ 9. She visited Tri-State in 2018 and "observed and developed aesthetic and emotional connections to many of the animals." *See id*. ¶¶ 6, 9. She "personally witnessed the deplorable conditions," including seeing animals in tiny enclosures, having no potable water despite the heat, and living in enclosures contaminated with filth and feces, *id*. ¶ 103; a capuchin monkey named Dodger confined alone and scratching, pulling, and picking at his stomach, *id*. ¶ 73; a miniature horse or pony who appeared lethargic and malnourished, *id*. ¶ 81; and a solitary wolf pacing repetitively for five minutes, *id*. ¶ 70. Due to having witnessed the inhumane setting and condition of the animals, she "experienced particularly severe distress and anguish as a result of her visit . . . and observation of animals." *Id*. ¶¶ 103–04. The conditions were so distressing they "made her sick." *Id*. ¶ 105.

After leaving the facility, Ms. Collins devoted significant effort to try to improve the animals' situation, including contacting Allegany Animal Control, news media, and other government and non-governmental agencies, including the USDA and PETA, to report what she observed *Id*. ¶ 106. Because she appreciates and is attached to the animals' welfare, she would like to see the animals living in a humane

17

setting, *id*. ¶ 109, an interest Defendants have deprived her of and thereby injured her, *id*. ¶ 108. Ms. Collins' injury would be redressed by a favorable ruling. *Id*. ¶ 110 (explaining that Ms. Collins "would return to visit the animals" if the condition for the animals at Tri-State were humane or they were transferred to an appropriate facility).

Ms. Collins' injury to her aesthetic, recreational, educational, and personal interests differs both in degree and in kind from the general moral injury suffered by the public because she has witnessed first-hand the deplorable conditions at Tri-State and experienced a severe physical and emotional reaction. *See id*. ¶ 105. Ms. Collins' injury is also different in kind, because it is not a general moral harm but specific, personal, and emotional. *See id*. ¶¶ 107, 130.

Defendants assert that "aesthetic interest . . . does not form the basis for standing in a public nuisance claim." Mot. at 5. But Defendants' cited case offers no support for this claim. *Exxon Mobil v. Albright* involved "recovery of damages for emotional distress," not, as here, standing to obtain injunctive relief based on an aesthetic injury. *See Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 58, *on reconsideration in part,* 71 A.3d 150 (Md. 2013).

While aesthetic injuries have not arisen in Maryland public nuisance cases, courts in other jurisdictions have found injury to one's aesthetic interest in viewing animals adequate to plead a public nuisance special injury. *See, e.g.*, *Animal Legal Def. Fund v. Olympic Game Farm, Inc.*, 387 F. Supp. 3d 1202, 1206 (W.D. Wash. 2019) ("[M]embers have been 'specially injured' by Defendants' nuisance because, as animal

18

lovers and advocates, they visited the [zoo] for recreational purposes based on the mistaken belief that [the zoo] was caring for exotic animals, when in fact [the zoo] is mistreating and abusing those animals, which left ALDF's members emotionally upset and unable to return to [the zoo] for recreational enjoyment."); *Animal Legal Def. Fund v. Lucas*, No. CV 19-40, 2019 WL 5068531, at *4 (W.D. Pa. Oct. 9, 2019) ("ALDF alleges that its members who visited the Farmers' Inn suffered an aesthetic injury, i.e., their enjoyment in viewing the animals was diminished, because of allegedly inadequate conditions of captivity. These allegations sufficiently establish that those members were "'directly" affected apart from their "special interest in th[e] subject."'") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Moreover, absence of precedent obviously does not imply absence of standing. *See Doe v. Commander, Wheaton Police Dep't*, 329 A.2d 35, 42 (Md. 1974) ("[T]he mere absence of precedent [is] no bar to the exercise of the jurisdiction of a court of equity 'for equity principles are broad and comprehensive and their application is not to be denied merely because of a new subject.'") (citation omitted).

> ### 3.     *Standing does not require "a protected property interest."*

Defendants argue that standing in a public nuisance action requires "a protected property interest," Mot. at 4, and that Plaintiffs must therefore show "some protected property interest in a Zoo and its surrounding area," Mot. at 17. This argument misapprehends Maryland law.

First, to bring a public nuisance claim under Maryland law, a plaintiff need only establish special injury per the Restatement test discussed above—nothing

19

more. *See supra* § II(B); *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 137 A.3d 355, 372 (Md. Ct. Spec. App. 2016), *aff'd*, 162 A.3d 909 (Md. 2017) ("Section 821C of the Restatement (Second) of Torts addresses the standing requirements for a claim of public nuisance."); *Ray v. Mayor & City Council of Balt.*, 59 A.3d 545, 557 (Md. 2013) (citing section 821C).

Second, Maryland has only required a *property* interest in claims alleging a *property* injury. For example, Defendants cite *Smith v. Shiebeck* for the proposition that an injured plaintiff must be the "owner of property injured by the nuisance." Mot. at 16 (quoting *Smith v. Shiebeck*, 24 A.2d 795, 801 (Md. 1942)). But the *Smith* plaintiff's asserted basis for standing was interference with the use and enjoyment of land, specifically of a public road giving access to property. *Smith*, 24 A.2d at 801. In the context of property injured by a nuisance, this requirement makes sense: a plaintiff must be "the owner of property injured by the nuisance" in order to be specially injured. *Id.* at 421.[6] Here, interference with the use and enjoyment of property is not at issue; any rule requiring property ownership has no application. In *Agbebaku v. Sigma Aldrich*, for example, the court analyzed standing to assert a public nuisance claim based on administration of vaccines causing minor children to

---

[6]     Moreover, *Smith* actually held that property ownership was *not* required for standing in that case, instead tailoring the special injury requirement to the facts at issue there. *See Smith v. Shiebeck*, 24 A.2d 795, 801 (Md. 1942) ("However, where the complainant alleges that others have obstructed a public way and unlawfully deprived him of his easement therein, the bill is sufficient if it alleges that the 'only reasonable and convenient access' which he has to his property is through the obstructed way.") (citations omitted).

suffer an increased risk of developmental harm and autism. 2003 WL 24258219, at

*1. The court never addressed whether plaintiffs required a property interest to bring

this claim. *Id*. Instead, the court simply analyzed whether the plaintiffs' injury was

distinct from that of the public. *Id*. at *13–14; *see also id*. at *13 ("The individual must

suffer 'some special or particular damage, different not merely in degree, but different

in kind from that experienced in common with other citizens.") (citing *Hoffman v.*

*United Iron & Metal Co.*, 671 A.2d 55, 64 n.9 (Md. Ct. Spec. App. 1996)); *State Ctr.,*

*LLC v. Lexington Charles Ltd. P'ship*, 92 A.3d 400, 445 (Md. 2014) (The special injury

requirement is "flexible in the sense that it is based on a fact-intensive, case-by-case

analysis."). In short, Maryland law does not require a property interest to allege a

special injury.

Both Ms. Collins and PETA have alleged injuries different in degree and in

kind to support standing at the pleading stage in support of a public nuisance claim.

*See* Compl. ¶¶ 107, 120.

### 4.    *Standing does not require proximity to the nuisance.*

Defendants' argument that Plaintiffs are not "close enough to give rise to

standing," Mot. at 11, confuses the special injury standard under public nuisance law

with the standard under zoning law. A public nuisance is determined by how it affects

*all* people who come into contact with it, not only those who live nearby. *See supra*

§ II(A)(4). Defendants' roadside zoo is open to the public approximately seven months

of the year. Compl. ¶ 98. Defendants' operation affects a broad community, including

visitors from out of state, like Ms. Collins, who buy tickets to view the animals.

Moreover, Defendants not only mistreat animals but present Tri-State to the public as "a refuge for abandoned and unwanted animals, thus creating the incorrect public impression that Defendants are providing an essential rescue service." *Id*. ¶¶ 1, 115. Defendants' conduct and false misrepresentations thus also affect PETA, by forcing it to expend resources to address and counteract Defendants' conduct and claims. *Id*. ¶¶ 111–23.

Defendants' reliance on two cases, both captioned *Ray v. Mayor and City Council of Baltimore*, to support their so-called "nearby" test is misplaced. *See* Mot. at 11–13 (quoting *Ray v. Mayor & City Council of Baltimore*, 36 A.3d 521, 533 (Md. Ct. Spec. App. 2012), *aff'd*, 59 A.3d 545 (Md. 2013), and *Ray*, 59 A.3d 545, 556).[7] As Defendants acknowledge, *Ray* addresses the special aggrievement standard in a "zoning context," not the public nuisance special injury standard. *See* Mot. at 11. *Ray* stated that proximity is one factor used to determine whether a plaintiff is "specially aggrieved" and has standing to challenge a rezoning action. *See Ray*, 59 A.3d at 550 ("[W]here standing to challenge a rezoning action [is] at issue, . . . proximity is the most important factor to be considered."); *see also Anne Arundel Cty. v. Bell*, 13 A.3d 639, 650 (Md. 2015) (*Ray* "analyzed property owner standing"). This test does not apply here for the simple fact that Plaintiffs are not challenging a zoning

---

[7]     Defendants erroneously cite both of these cases as *Ray v. Mayor & City Council of Baltimore*, 59 A.3d 545 (Md. 2013). The quotation beginning on page 12 of Defendants' brief is from the following: *Ray v. Mayor & City Council of Baltimore*, 36 A.3d 521, 533 (Md. Ct. Spec. App. 2012), *aff'd*, 59 A.3d 545 (Md. 2013).

reclassification and are not relying on property owner standing. In this context, proximity is irrelevant.

Moreover, even if *Ray* were relevant here, it would not support dismissal. *Ray* held that proximity is *not* a necessary condition for standing. Rather, a far-removed plaintiff may still demonstrate standing as long as his rights are specially and adversely affected. *See Ray*, 59 A.3d at 549 ("[A] person whose property is far removed from the subject property ordinarily will not be considered a person aggrieved . . . [unless] he meets the burden of alleging and proving . . . that his personal or property rights are specially and adversely affected.") (citation omitted). That is precisely the injury Plaintiffs have alleged here. *See* Compl. ¶¶ 107, 120.

In sum, Plaintiffs' allegations squarely establish public nuisance standing.

### C.   Plaintiffs have pled Article III standing.

In addition to having sufficiently alleged the special injuries needed to assert a Maryland public nuisance claim, PETA and Ms. Collins have also adequately pled Article III standing—"a doctrine rooted in the traditional understanding of a case or controversy," *Spokeo, Inc. v. Robins*, 36 S. Ct. 1540, 1547 (2016)—to bring this action in federal court.

"[W]hether a plaintiff in federal court has standing to maintain an action is a question of federal, not state law." *Miller v. Augusta Mut. Ins. Co.*, 157 F. App'x 632, 636 (4th Cir. 2005); *see also White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 167 (4th Cir. 1990) ("Federal standards guide the inquiry as to the propriety of declaratory relief in federal courts, even when the case is under the court's diversity

23

jurisdiction."). Defendants' sole argument against this Court's subject-matter jurisdiction is that Plaintiffs lack Article III standing, "[b]ecause both of the Plaintiffs fail to state a claim, in that they fail to show that they have a legally protected interest under Maryland nuisance law." *See* Mot. at 18. Besides being wrong, this argument misses this important point.

A plaintiff can establish Article III standing whenever it suffers a judicially-recognized "injury in fact," "fairly traceable" to the defendant's conduct, that is "likely" to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). To plausibly allege an injury-in-fact, a plaintiff must show that there was "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted). The injury-in-fact requirement is not an onerous one: "an identifiable trifle will suffice." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 156 (4th Cir. 2000) (citation omitted).

While the plaintiff bears the burden of alleging facts that plausibly establish Article III standing, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561. Where there are multiple plaintiffs in a case, "the presence of one party with standing is sufficient to satisfy Article Ill's case-or-controversy requirement." *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) (quoting *Rumsfeld v. Forum for Acad. & Inst'l Rights, Inc.,* 547 U.S. 47, 52 n.2 (2006)).

24

### 1.   *Plaintiff PETA has alleged an injury-in-fact under Havens.*

As an organizational plaintiff, PETA has standing to sue on its own behalf when it "seeks redress for an injury suffered by the organization itself." *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005). In determining whether an organization has standing to sue in its own right, a court "conduct[s] the same inquiry as in the case of an individual." *Havens*, 455 U.S. at 378. Where an organization's mission requires it to engage in particular activities and its "ability" to further that mission is "perceptibly impaired" by a defendant's violations of law, the organization itself has suffered an "injury in fact" for Article III purposes. *Id.* at 379.

PETA has Article III standing to bring this action because it alleges a redressable frustration of its mission and a diversion of its limited resources away from other programs as a result of Defendants' cruel and unlawful treatment of animals and interference with public morals. PETA suffers a further cognizable injury as a result of the public misimpressions related to Defendants' public mistreatment of animals and its false portrayal of itself as a sanctuary providing good care to unwanted animals.

> a. *Defendants' mistreatment and neglect of captive animals causes PETA to suffer mission impairment and ongoing resource diversion.*

As firmly established under *Havens*, an organizational plaintiff has standing to sue on its own behalf if the defendant's unlawful conduct causes injury to the organization by frustrating its mission, thus requiring the organization to divert resources in response. In *Havens*, the defendant's racial steering frustrated the

organizational plaintiff's ability to provide counseling and other referral services related to equal housing access, and forced it to "devote significant resources to identify and counteract" the defendant's illegal practices. 455 U.S. at 379. The Supreme Court held there was "no question" these injuries gave rise to Article III standing because they represented a "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—[that was] far more than simply a setback to the organization's abstract social interests." *Id*.

PETA's allegations that it has been required to divert its resources, *see supra* § II(B)(1), fall squarely within the rule of *Havens* and its progeny. The mission impairment suffered by PETA is directly analogous to the cognizable injuries suffered by organization plaintiffs in numerous cases in this circuit. *See, e.g.*, *Casa De Md., Inc. v. Trump*, 414 F. Supp. 3d 760, 772 (D. Md. 2019), *appeal docketed*, Case No. 19-2222 (4th Cir., Nov. 4, 2020) (finding that organizational plaintiffs had suffered a cognizable injury, having "had to spend significant resources to counteract the effect of the defendants' actions, which they viewed as inimical to their organizations' missions"); *Action NC v. Strach*, 216 F. Supp. 3d 597, 617–18 (M.D.N.C. 2016) (finding organizational plaintiff had suffered a cognizable injury when it diverted time and resources in accordance with its mission and as a direct result of defendants' unlawful activity). In a related case also concerning Defendants' mistreatment of animals, this Court found that the frustration of PETA's mission "through its protracted involvement in attempting to prevent the abuse" of animals at Tri-State was a

cognizable injury for the purposes of Article III. *People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.,* 424 F. Supp. 3d 404, 429 (D. Md. 2019), *appeal docketed*, Case No. 20-1010 (4th Cir., Jan. 7, 2020) ("*PETA*").[8]

PETA's mission to eliminate the abuse and neglect of animals used for entertainment is directly frustrated by Defendants' mistreatment and neglect of the approximately 110 animals in their custody. Compl. ¶ 112. As a result, PETA is required to divert resources away from its own programs in order to address Defendants' unlawful mistreatment of animals. *Id.* ¶ 118. Thus, PETA's allegations suffice to plead an injury-in-fact.

> b. *Defendants' false public statements injure PETA by creating public misimpressions about conditions at Tri-State.*

Defendants further impair PETA's mission and programs by creating an incorrect public impression that Tri-State is a refuge for abandoned and unwanted animals, and that its treatment of animals is humane and lawful. Compl. ¶¶ 114–15. To counteract the public impression that Defendants' practices are humane and lawful, and to compile accurate information about Tri-State to share with the public, PETA has been forced to divert additional resources away from its programs to counteract the resulting harm. *Id.* ¶ 116–17. As this Court previously found in a

---

[8]     Although PETA's injuries as to endangered and threatened animals were redressed by the related Endangered Species Act ("ESA") lawsuit, *PETA,* 424 F. Supp. 3d 404, PETA continues to suffer a cognizable injury with respect to Defendants' treatment of the non-ESA-protected animals who remain in their care.

related case, such injury is cognizable for the purposes of Article III. *See PETA*, 424 F. Supp. 3d at 429–30 (finding PETA had suffered an injury-in-fact because it had to expend resources to counteract the public misperception caused by Defendants' false portrayal of itself as a sanctuary providing essential rescue services to endangered and threatened animals) (citing *Organic Consumers Assoc. v. Sanderson Farms, Inc.*, 284 F. Supp. 3d 1005, 1011 (N.D. Cal. 2018)).

For these two independent reasons, PETA has pled a cognizable injury-in-fact.

### 2. Plaintiff Connie Collins has alleged an injury-in-fact based on her aesthetic injury.

It is well established that injury to an aesthetic interest in the observation of animals is sufficient for the purposes of Article III standing. As the Supreme Court made clear, "[t]he desire to . . . observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." *Lujan*, 504 U.S. at 562–63; *see also Friends of the Earth, Inc., Inc.,* 528 U.S. at 183–84 (effect on "recreational, aesthetic, and economic interests" is cognizable injury for purposes of standing); *Hill v. Coggins*, 867 F.3d 499, 505 (4th Cir. 2017) ("Courts frequently treat an aesthetic interest in the observation of animals as a legally protected interest."). Courts have also recognized that "people have a cognizable interest in 'view[ing] animals free from . . . 'inhumane treatment.'" *Animal Legal Def. Fund, Inc. v. Glickman*, 154 F.3d 426, 433 (D.C. Cir. 1998) (citation omitted). "The key requirement . . . is that the plaintiff have suffered his [aesthetic] injury in a personal and

individual way—for instance, by seeing with his own eyes the particular animals whose condition caused him aesthetic injury." *Id.*

Here, the Complaint alleges a cognizable legal interest, because Defendants' mistreatment of the animals at Tri-State injured Ms. Collins' aesthetic interest. *See supra* § II(B)(2). Ms. Collins' injury is similar to aesthetic injury allegations in other civil suits against private, roadside zoos that constituted an "injury-in-fact." For example, in *Hill v. Coggins*, the Fourth Circuit held that zoo visitors had satisfied the "injury-in-fact" requirement by alleging that they were "precluded from observing . . . bears living in [humane] conditions because the bears are currently being mistreated" and that they were "willing and able to go back and visit the bears if the conditions that the bears live in are improved." 867 F.3d at 506. So too here: Ms. Collins' visited Tri-State, suffered aesthetic injuries from observing the animals confined in inhumane conditions, and had a desire to return to visit the animals but for the challenged conditions. Compl. ¶¶ 102–10. Thus, Ms. Collins has alleged an injury-in-fact under Article III.

### 3. *Plaintiffs' injuries are caused by Defendants' actions and are redressable*

If Plaintiffs prevail in this action, "Defendants will no longer be able to maintain the animals at issue in conditions that are unlawful and inconsistent with animal welfare." Compl. ¶ 121. As a result, PETA would no longer have to divert resources to counteract Defendants' unlawful acts or the public misimpressions created thereby. *Id.* And Ms. Collins could return to visit the animals in a sanctuary or other place where they were no longer mistreated and lived in a humane setting.

*Id.* ¶ 110, 130. Accordingly, Plaintiffs' injuries would be redressed by a decision in their favor. *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018) (to establish redressability, a plaintiff need only show that it "personally would benefit in a tangible way from the court's intervention.") (quoting *Friends of the Earth, Inc.*, 204 F.3d at 162).

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied.

Date    June 1, 2020            Respectfully submitted,
        Baltimore, Maryland

                                */s/ Adam Abelson*
                                Adam Abelson (#29532)
                                ZUCKERMAN SPAEDER LLP
                                100 East Pratt Street, Suite 2440
                                Baltimore, Maryland 21202
                                (410) 332–0444; (410) 659–0436 (fax)
                                aabelson@zuckerman.com

                                Marcos E. Hasbun (Pro Hac Vice)
                                ZUCKERMAN SPAEDER LLP
                                101 East Kennedy Boulevard, Suite 1200
                                Tampa, Florida 33602–5838
                                (813) 221–1010; (813) 223–7961 (fax)
                                mhasbun@zuckerman.com

                                Caitlin Hawks (Pro Hac Vice)
                                Zeynep Graves (Pro Hac Vice)
                                James Erselius (Pro Hac Vice)
                                PETA Foundation
                                2154 West Sunset Boulevard
                                Los Angeles, CA 90026
                                (323) 210-2263; (213) 484-1648 (fax)
                                caitlinh@petaf.org
                                zeynepg@petaf.org
                                jamese@petaf.org

*Counsel for Plaintiffs Constance Collins
and People for the Ethical Treatment of
Animals, Inc.*

31