1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND
2                        SOUTHERN DIVISION

3   CONSTANCE COLLINS and PEOPLE   )
    FOR THE ETHICAL TREATMENT OF   )
4   ANIMALS, INC.,                 )
                                   )
5            Plaintiffs,           )
                                   ) Case Number: 8:20-cv-1225-PX
6            vs.                   )
                                   )
7   TRI-STATE ZOOLOGICAL PARK OF   )
    WESTERN MARYLAND, INC,         )
8   ANIMAL PARK, CARE & RESCUE,    )
    INC., ROBERT L. CANDY,         )
9                                  )
             Defendants.           )
10
            TRANSCRIPT OF PROCEEDINGS - MOTIONS HEARING
11              BEFORE THE HONORABLE PAULA XINIS
                 UNITED STATES DISTRICT JUDGE
12           THURSDAY, NOVEMBER 12, 2020; 10:30 A.M.
                      GREENBELT, MARYLAND
13
                      A P P E A R A N C E S
14
    FOR THE PLAINTIFFS:
15
        ZUCKERMAN SPAEDER LLP
16            BY:  ADAM ABELSON, ESQUIRE
              100 EAST PRATT STREET, SUITE 2440
17            BALTIMORE, MARYLAND 21202
              (410) 949-1148
18
              BY:  MARCOS E. HASBUN, ESQUIRE
19            101 E. KENNEDY BLVD, SUITE 1200
              TAMPA, FLORIDA 33602
20            (813) 221-1010

21       ***Proceedings Recorded by Mechanical Stenography***
          Transcript Produced By Computer-Aided Transcription
22   _____

23            MARLENE MARTIN-KERR, RPR, RMR, CRR, FCRR
                 FEDERAL OFFICIAL COURT REPORTER
24              6500 CHERRYWOOD LANE, STE 200
                 GREENBELT, MARYLAND 20770
25                     (301)344-3499

1                    A P P E A R A N C E S
                           (continued)
2

3  FOR THE DEFENDANTS:

4        PETA FOUNDATION
                BY:  CAITLIN K. HAWKS, ESQUIRE
5                    JAMES ANDREW ERSELIUS, ESQUIRE
                     ZEYNEP J. GRAVES, ESQUIRE
6               2154 WEST SUNSET BLVD
                LOS ANGELES, CALIFORNIA 90026
7               (206) 858-8518
                (661) 644-5398
8               (323) 210-2263

9
   ALSO PRESENT:  Constance Collins, Plaintiff
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2       (Call to Order of the Court.)

3          THE COURTROOM DEPUTY:  The United States District

4 Court for the District of Maryland is now in session, the

5 Honorable Paula Xinis presiding.

6       The matter now pending before the Court is civil action

7 number PX-20-1225, Constance Collins, et al., versus the

8 Tri-State Zoological Park of Western Maryland, Incorporated.

9 The matter comes before this Court for a motions hearing.

10      Counsel, please identify yourselves for the record.

11         MR. ABELSON:  Good morning, Your Honor.  I'm Adam

12 Abelson of Zuckerman Spaeder on behalf of Plaintiffs, People

13 for the Ethical Treatment of Animals, and Connie Collins.

14 Ms. Collins is on the line as well.  Joining me on behalf of

15 Plaintiffs is my partner Marcos Hasbun and, from the PETA

16 Foundation, Caitlin Hawks, Zeynep Graves, and James Erselius.

17 And Ms. Graves will be handling the argument on behalf of

18 Plaintiffs.

19         THE COURT:  Go ahead, Mr. Young.

20         MR. YOUNG:  Good morning, Your Honor.  Nevin Young on

21 behalf of the defendants.

22         THE COURT:  Okay.

23      And I see that Ms. Kerr is with us as our court reporter.

24 If you can just give me one second.

25         THE COURT REPORTER:  Good morning, Judge.

1          THE COURT:  Good morning.

2      (Brief pause.)

3          THE COURT:  Okay.  And if anyone else is joining us

4  through the public access line, I don't know if there is

5  anyone, but you are more than welcomed.  This is a court

6  proceeding just as if we were in physical court, and so the

7  same rules apply, which are you're absolutely welcome to be

8  here but there should be no interruptions.  As a matter of

9  fact, if you're not speaking, and this is both lawyers and

10  anybody else who I might call on, please put your devices on

11  mute so that we just minimize interruptions.

12      And there are absolutely no independent recordings of this

13  proceeding.  There is only one official court transcript and

14  that's the one taken by Ms. Kerr.  So, Ms. Kerr, you are

15  permitted to interrupt at any point to tell us that you need us

16  to either stop talking over one another or slow down or

17  whatever the case may be.

18          THE COURT REPORTER:  Thank you.

19          THE COURT:  Thank you.

20      And so with that, I wanted to chat with you all about the

21  pending motion to dismiss, and my thought was to just give you

22  my tentative concerns and then you can respond.  And I'll turn

23  to you, Mr. Young, first and then to Ms. -- attorneys for

24  Ms. Collins and PETA.

25      So what was -- in some ways this is an interesting

1  complaint, and what was noteworthy to me is it seems as if you

2  agree on one point which is that Maryland courts really haven't

3  reached this.  There is a particular part in both of your

4  pleadings where you acknowledge that this is not -- this is a

5  common law public nuisance claim that is not often brought, and

6  while Maryland is governed by the Restatement, that there isn't

7  a whole lot of law on this.

8      And, Mr. Young, while I don't necessarily agree that a

9  public nuisance has to be adjoining property owners, that's not

10  what the Restatement says, that there is at least some,

11  perhaps, room for this claim, I am very concerned about being

12  the first federal court to decide the reach of what is a common

13  law creature where criminal prosecution would be transformed

14  into a civil tort and not involving an attorney general or the

15  county or, you know, a prosecutorial arm, if you will.

16      A number of the cases that PETA cited, not all of them but

17  some of them, do extend this public nuisance action in that

18  context, but I'd kind of be riding on a clean slate in Maryland

19  and I'm not wholly comfortable yet.

20      So one of the things I'm considering doing is asking you

21  all to brief certification to the Maryland Court of Appeals and

22  let the Maryland Court of Appeals, since we have a well-drafted

23  complaint, it's not notice pleading, there's lots of facts in

24  it both on standing and on the elements of the actual

25  underlying nuisance claim, and because I'm guided even on the

1    question of standing, as you point out, Mr. Young, on the

2    nature of the substantive cause of action, I need to understand

3    the nature of the substantive cause of action to know whether

4    Article III standing exists.  I'm not convinced I can pull that

5    trigger.

6          Let me hear from you, Mr. Young, on your views on that and

7    then I'll turn to PETA.

8               MR. YOUNG:  Sure.  Thank you, Your Honor.

9          I know the Court has read the pleadings, and I'm not going

10   to rehash all of that because I want to save time for questions

11   from the Court.  But just in summary, I think the two most

12   important cases so far are the Pennsylvania case that PETA

13   raised, the *Bravo Enterprises* case and also the *Commissioners*

14   *of Trappe*, *Adams* vs. *Commissioners of Trappe*.  I don't think --

15   and there are a lot of other cases raised that are, perhaps,

16   relevant and persuasive, such as the Baltimore City zoning

17   cases, but they are not directly on point in that they were

18   raised in a zoning context.

19              THE COURT:  Right.

20              MR. YOUNG:  And so, you know, I would raise those as

21   persuasive.

22         But really what I think the thrust of the defendants'

23   argument is is that the Court of Appeals of Maryland has never

24   gone so far as to allow a public nuisance action for someone

25   outside of the general community at-large, and this seeks to

1   expand a community at-large to an extent that would really, I

2   mean, given air travel and all of these other things, would

3   almost make that distinction meaningless in Maryland.

4        And, you know, the Pennsylvania courts rejected, even for

5   the SPCA, which they had a statutory authority to seize animals

6   that were subject to abuse, rejected the notion that the

7   plaintiff had suffered a particularized injury under public

8   nuisance laws.

9        And so not seeing any cases that are persuasive from any

10   other state where this sort of public nuisance action was

11   allowed to go forward -- and I can't speak for the Court of

12   Appeals, obviously, as to whether --

13             THE COURT:  Well, I don't know necessarily about that

14   because, you know, for example, there was -- I know there was

15   the bullfighting case where, again, the county or at least the

16   state, the Attorney General was able to bring the action.  And

17   there were others.  There has certainly been, you know, the

18   body house case in Maryland, but, again, that was the county

19   bringing it.

20        So there is some -- you know, the struggle that I'm having

21   is I can't even say, if I did a collective canvass of the 50

22   states, this question points in one direction or another.

23   Like, I can't even divine what Maryland might do.  You're

24   right.  There are definitely cases that could point in one

25   direction, but, you know, we have a Uniform Certification of

1  Questions of Law Act which seems to address this very problem,

2  right, when there is just no guidance from the court of limited

3  jurisdiction on how Maryland would roll.

4      Let me ask it differently.  What's your hesitation with

5  having -- it would go right to the Maryland Court of Appeals.

6  This isn't --

7          MR. YOUNG:  I think if the Court is uncertain or

8  doesn't know how the Maryland Court of Appeals might go on

9  this, then that would be the proper course of action.  I don't

10  know exactly -- I've never handled a case, in all sincerity,

11  that involved a certification of a question.  I would suggest,

12  if that's the proper course, that perhaps the pleadings today

13  could be submitted, and the Court of Appeals could be asked to

14  review it.

15          THE COURT:  Yeah, and we wouldn't -- so you know,

16  Mr. Young, this is, frankly -- in some ways it's not -- you

17  know, it's not fair to either party, but I am always interested

18  in what you think of an issue that hasn't been briefed.  I am

19  going to give you both an opportunity, unless I'm persuaded

20  otherwise at the end of this hearing, to brief the question of

21  certification.  So you'll have the statute.

22      We might talk today a little bit more about framing it

23  because that's a big part of it is how do I frame this

24  question.  If I decide to certify, how do I frame the question

25  for the Court of Appeals?  And I really do think it can be said

1  quite simply in one question, which is:  Does a cause of action

2  lie for public nuisance under this complaint?  Because I still

3  have to decide standing, but it would be helpful to know

4  whether the Maryland court would recognize this tort.

5       You all may want to also brief whether there is -- the

6  Court should decide in the first instance whether it would find

7  standing based on these two plaintiffs in the Maryland courts.

8  While I'm not bound by it, it certainly is, I think,

9  instructive.

10      So this is the long way of saying I'm not deciding this

11 today whether I'm going to certify.  I'll give you an

12 opportunity.  And it won't have to be, you know, a tome but

13 give you an opportunity to address the Uniform Certification of

14 Questions of Law Act and give me your views on it in writing.

15      MR. YOUNG:  Thank you, Your Honor.

16      I guess I would just add to that that this is a case that

17 could have been brought in the Maryland state courts if the

18 plaintiffs had decided to do so.  The defendants would, of

19 course, have the option to remove if they thought damage was in

20 excess of $75,000.

21      And so I think it is a question, ultimately, for the Court

22 of Appeals.  And there are some very complex interactions

23 between cause of action and standing, as our brief -- our

24 motion points out, that it's not quite the same as Article III

25 standing.  It's -- there is sort of an intertwining that can

1    become very confusing, but I think it should be up -- if the

2    Court is inclined to go forward, I think it should be up to the

3    Court of Appeals as to whether there is a cause of action here.

4    And if there is no cause of action, I would say then there is

5    both no cause of action and no standing, but standing or not --

6              THE COURT:  Right.

7              MR. YOUNG:  -- then cause of action would end the

8    case.

9         And so I'm still not sure whether this is a (b)(1) or

10   (b)(6) motion, but the question is really moot if it ends up

11   that there is no cause of action.  That's all --

12             THE COURT:  And it is -- I agree with you.  It's a

13   bit mushier.  You know, looking at my colleague Judge

14   Hollander's case in *Higdon*, I think she, you know, hit the nail

15   on the head in terms of when it is a state cause of action

16   which defines -- the asserted right defines the injury to the

17   plaintiff that the plaintiff is trying to seek remedy in

18   federal court.  I have to first define that injury, know what

19   that injury is before I can then go to the three prongs of

20   article -- standing or even address standing prudentially.

21        So you're right.  It may be in this case more than in a

22   case brought under a federal statute.  It's important to

23   recognize how intertwined they are.  They are to me.  This

24   would be a very tough call.

25        So I'm heartened to hear that you're, you know -- you'll

1     brief it.  We'll see what you find, but there isn't, as I see

2     it, a controlling appellate decision, constitutional provision,

3     or statute in Maryland that would decide this issue, nor do the

4     states really point in that direction.

5          Mr. Young, anything else you want me to know either on

6     this question of certification or in response now that this has

7     been fully briefed and we're all together, knowing where my

8     head is at least right now?

9               MR. YOUNG:  No, Your Honor, other than I would urge

10    that certification would be the proper course in this case.

11              THE COURT:  Okay.  All right, great.  Thank you,

12    Mr. Young.

13         Okay.  Who am I going to hear from for Ms. Collins and

14    PETA?

15              MS. GRAVES:  Zeynep Graves, Your Honor.

16              THE COURT:  Okay.  Hi, Ms. Graves.

17              MS. GRAVES:  Hi.  Thank you.

18         And Plaintiffs don't have a issue with seeking

19    certification and clarification from the Maryland Court of

20    Appeals on, you know, the legal questions at issue here, but

21    Plaintiffs don't think that certification is necessary because

22    we do think that Maryland nuisance law, in the way that it

23    follows the Restatement, is clear.  And, you know, it does rest

24    with the sound discretion of this Court whether, you know, this

25    Court would like to certify the question, but we really

1    think --

2         THE COURT:  Yes, it is important to me, Ms. Graves,

3    as to how you think, even though there is not maybe factually

4    on point case law, I could read it without certifying it.

5    Certainly, you know, the Maryland Court of Appeals is busy, and

6    so I'm trying to be very mindful of when, obviously, we send

7    it.  I know you've cited at least two federal cases which

8    wrestled with this issue in other districts and did not seem to

9    certify but that could just be because there isn't a mechanism,

10   it didn't come up, or there isn't a mechanism like what we have

11   in Maryland or there was more authority guiding the judge.

12        If you were to make a strong case for the Maryland

13   precedent that you think decides this question, what would it

14   be?

15        MS. GRAVES:  Well, we do think that, you know,

16   really here the issue is a question of fact, not a question of

17   law, specifically whether Defendants' conduct constitutes a

18   public nuisance and whether PETA and Ms. Collins suffered

19   special injury.

20        In Maryland, the law, as we said, you know, follows the

21   Restatement, and the definition of public nuisance in the

22   Restatement broadly defines public nuisance as an unreasonable

23   interference with a right common to the general public.  And

24   circumstances that may establish unreasonable interference with

25   a public right include conduct that is proscribed by statute or

1 administrative regulation to the things that Plaintiffs have

2 alleged that underlie the public nuisance claim here.

3        In Maryland, you know, in *Adams v. Commissioners of*

4 *Trappe*, that case said that in Maryland, operating a business

5 in a manner that violates the law that regulates that business

6 constitutes a nuisance, per se.  And that's precisely what

7 Plaintiffs are alleging here.

8            THE COURT:  The facts in *Adams* was about a gasoline

9 pump.  Right?  Am I getting that case right?  Yeah.  It's not

10 really factually -- so this is why I struggle with why the

11 facts matter here.  They matter in every case, but the upshot

12 of this tort is really to transform and give to the plaintiff

13 power to transfer a criminal statute into a civil cause of

14 action.  That's the prong of the Restatement that you're

15 relying on.  There's three, if I understand it.  You're going

16 with a violation of law.  You've cited the Maryland Animal

17 Welfare criminal offense as well as the Animal Welfare Act.

18 And at least with respect to the Maryland criminal offense, you

19 are going down that road of transforming it into a private

20 cause of action.

21        So to me, that isn't -- that's a policy decision, and the

22 cases you cite to me are a decision where a court exercises

23 equitable jurisdiction to step into the realm of -- where the

24 criminal law doesn't fill the gap and fill the gap.  And those

25 are my words.  I see that as pretty aggressive on the part of a

1    federal court of limited jurisdiction.

2        So with that view in mind, what other Maryland cases --

3    because I don't see *Adams* as really sticking the landing on

4    that.  Would you, for example, suggest it would be the -- you

5    know, *Whitaker* to me is closer because it involved a house of

6    ill repute that, you know, violated a criminal statute, but the

7    problem I'm having there is, again, it was -- I think it was

8    the county that brought it and not a private individual and a

9    private organization.

10           MS. GRAVES:  That's correct, Your Honor.  That case,

11   the *Whitaker* case was brought by the county.

12       And I appreciate the struggle with, you know, there are --

13   there is a lack of case law in Maryland where the facts

14   strictly align with, you know, the case here, but I think the

15   cases that do exist still make clear that -- you know, examples

16   of public nuisance that not only violate the law but also

17   interfere with public morals may still be brought in Maryland,

18   and *Whitaker* is an example of that.

19       The Restatement and also I believe it's *Tadjer* describes

20   the categories of various public rights that also interfere

21   with rights common to the general public, including the public

22   health, public safety, peace, comfort, convenience, and public

23   morals.  And then from there we get these examples of the

24   public nuisances that interfere with public morals, and this

25   includes the house of prostitution, the body house in the

1  *Whitaker* case.  We have illegal liquor establishments, gaming

2  houses, indecent exhibitions, and bullfights.  And that comes

3  from the Restatement in Comment (a), this list of examples.

4      And in the public moral cases, we also -- so Maryland's

5  animal protection law, we -- that we've relied on as kind of

6  the predicate act, and there are other cases in other

7  jurisdictions, like you said, that have found at least at the

8  motion to dismiss stage those cases haven't proceeded beyond

9  that at this point, but they are still ongoing.  They're in the

10 discovery stage.

11     Courts have found, including the Western District of

12 Washington, that, indeed, violations of animal cruelty statutes

13 and other animal welfare laws can form a predicate act to a

14 public nuisance action.

15     But Maryland's animal protection law, which is found in

16 Title 10 of the Criminal Law -- and that Title 10 is titled

17 Crimes Against Public Health, Conduct, and Sensibilities.  And

18 in addition to crimes against animals, Title 10 includes crimes

19 against marriage, adultery, bigamy, hate crimes, crimes against

20 public health and safety, including alcohol and gaming.  And I

21 think there are a couple of other crimes as well, disturbing

22 the peace, disorderly conduct, and crimes relating to human

23 remains.

24     And I think what's interesting about that is that several

25 of the specific crimes in Title 10 overlap with the

1   Restatement's examples of public nuisance that interfere with

2   public morals, including, for example, the illegal liquor

3   establishments, gaming houses, and bullfights.  And that's from

4   the Restatement, again, Section 821B, Comment (a).

5       So with animal -- Maryland's animal protection law, we

6   think that the statute clearly demonstrates clear public policy

7   of animal protection, and we have cited several cases that make

8   clear that animal protection laws are actually aimed at

9   conserving public morals.

10          THE COURT:  Can I then ask it a different way, which

11  is -- because maybe the struggle that I'm having is more about

12  -- assuming what you're saying is true, that the Restatement

13  covers this kind of offense to public morals in the same way.

14  Like, so it would be easy to extend the offense conduct, if you

15  will, the running a zoo that's run this way, as alleged, is no

16  different than having a bullfight or running a body house.

17  Same offense to public morals.  Say I assume that.  Maybe the

18  real expansion here is who is suing.

19      And so maybe that's the question that's driving the need

20  to have Maryland look at this first because even the cases

21  you've cited, it's remarkable to me -- well, one, as Mr. Young

22  points out, there are a couple of them that, you know, an

23  animal welfare organization doesn't have standing.  There was

24  another where the factual predicate of the case really isn't on

25  point with you.  So I can't say, well, there would be standing

1    in this case.

2         And none of the cases that we're talking about involve, I

3    believe, an individual private citizen other than the two

4    federal cases, which we'll talk about in a minute, but this

5    common law.  Right?  None of them in Maryland certainly I don't

6    think involve a private citizen bringing a cause of action to

7    enforce in equity this injunctive relief.

8         So maybe it's because I'm struggling with, boy, I'm not

9    only endorsing application of this public nuisance to this

10   particular act, if you will, but I'm also endorsing private

11   organizations and individuals being in that zone of interest.

12   And isn't that for Maryland to decide first?

13             MS. GRAVES:  Thank you, Your Honor.  I think that --

14   I'll address first -- there were a couple of things there I

15   want to address.

16             THE COURT:  Yes.

17             MS. GRAVES:  So first the *Bravo Enterprises* case.  So

18   the Pennsylvania *Society for Prevention of Cruelty to Animals*

19   *v. Bravo*, the bullfighting case, where the SPCA didn't have

20   standing.  So there the SPCA was going to a court of equity

21   trying to enforce their cruelty statute, and the court held

22   that the SPCA lacked standing to enjoin the unlawful bullfight

23   act issue.  But although the SPCA had statutory authority to

24   directly enforce the law, they chose to go through the courts

25   of equity.

1      THE COURT:  Right.

2      MS. GRAVES:  And there was no special injury that

3   they had alleged there.  So the court said, you know, if you

4   were just, essentially -- and I'm paraphrasing here -- an

5   officer off the street, you know, you didn't suffer any kind of

6   special injury.

7      But unlike the SPCA in that case, that just, you know,

8   were trying to essentially enforce the statute in a way that

9   they didn't suffer special harm, PETA and Ms. Collins, we

10   allege that -- you know, have both alleged a special injury

11   different in kind than the general injury to the public of

12   public morals.

13      And also, you know, *Adams v. Commissioner.*  I think the

14   law is very clear that public nuisance is an injury to the

15   public or to all persons who come into contact with it.  So we

16   take an example of Disney World.  You know, if someone goes to

17   the facility, to Disney World, travels from another state, and

18   they suffer harm in a myriad of different ways -- and I know

19   there are the cases with the alligator -- issues with the

20   alligators.  Just because they come from another state or that

21   they don't live, you know, next to the nuisance or whatever the

22   issue is, that doesn't mean that they haven't suffered --

23   necessarily, you know, haven't suffered injury just because of

24   their lack of, say, proximity to the facility.

25      So I think on the special injury front, Maryland common

1  law doesn't require much.  It's just that you have to suffer a

2  kind of -- sorry -- an injury different in kind than the

3  general public.

4      THE COURT:  But doesn't -- I mean, *Bravo* -- but *Bravo*

5  is problematic because even though -- assuming what you're

6  saying is true, that you've alleged more of a special injury

7  than they did in *Bravo*, the court, in deciding there wasn't

8  standing, actually said, you know -- part of its rationale was,

9  quote, it's long been established in Pennsylvania that the

10  injunction of such a public nuisance must be sought by the

11  proper public authorities.

12      And so the inference there is it's, at least in

13  Pennsylvania, a civil remedy that can only be brought by a

14  public authority.  That's what they say.  So if you are

15  bringing this action in Pennsylvania, maybe that would

16  foreclose you, but we don't know -- I don't have anything in

17  Maryland right now -- or maybe I'll ask it this way.  What do I

18  have in Maryland that says, "You know what, there is reason to

19  believe this state would expand it to address your cause of

20  action, private individuals and organizations"?

21      MS. GRAVES:  So I'll first address -- I think the law

22  in Pennsylvania -- so that *ALDF v. Lucas* case, that was also

23  brought in Pennsylvania, the Western District of Pennsylvania,

24  and there the court -- you know, the motion to dismiss of the

25  roadside zoo, Farmers Inn, was denied.  And in that case,

1  Animal Legal Defense Fund, a national nonprofit, brought an

2  action on behalf of its members alleging inadequate conditions

3  of the captivity of numerous animals at that facility, Farmers

4  Inn, and they sought injunctive relief.

5          THE COURT:  And I've got that case up right now.  And

6  I'm with you.  The problem I have there, though, was there

7  wasn't a whole lot of analysis.  You know, it was -- and maybe

8  it's because I don't have the first opinion.  I only have the

9  second.  I saw that it was like previously dismissed and then

10 re-pled.  And it was enough because it appears as if now there

11 was, as pleaded, aesthetic injury that seemed to be the

12 difference.  I don't have the first opinion.  So maybe there

13 there is more of an analysis.

14         MS. GRAVES:  And we can certainly -- I don't believe

15 that was a reported decision, but we can certainly take a look

16 at that and see if there was more of an analysis.

17     And, you're right, Your Honor.  There wasn't much there,

18 but the court did agree with ALDF that, you know, the aesthetic

19 harm was enough for a private individual, the members in that

20 case, to have suffered this special harm necessary --

21         THE COURT:  Right.

22         MS. GRAVES:  -- to bring the public nuisance action.

23         THE COURT:  And I guess my point is maybe it's in the

24 first opinion.  I just haven't hunted it down yet.  Wondering

25 if you knew.  Maybe the reason why the judge got there is

1   because the first time around it was clear that in Pennsylvania

2   there was enough of a sufficiently established common law to

3   make clear that this could extend to a private -- to a

4   plaintiff who pleads an aesthetic injury.

5        You know, there seems to be -- one, it's Pennsylvania law.

6   And what I have is an old chestnut common law Pennsylvania case

7   which suggests not.  And then I've got a new federal court

8   second time around in 2019 saying it does, and I don't know

9   what's in the middle, but it's decidedly Pennsylvania law,

10   which is why I keep coming back to, I don't have much in

11   Maryland.

12        And this is what maybe you all can educate me on is what

13   counsels against certification.  There's enough of this core in

14   other states where I can infer what Maryland would do.  There

15   isn't a state split, for example.  Every state to decide this

16   has pointed in one direction, that this is a cause of action

17   that a private party could bring.

18        Does that make sense to you, Ms. Graves, what I'm asking?

19   Or am I just like -- all of this stuff is knocking around in my

20   head.  So I want to make sure I'm actually speaking, like,

21   English.

22        MS. GRAVES:  No, that absolutely makes sense.  And

23   Plaintiffs aren't aware of any sort of split, but, you know,

24   this is kind of a novel aspect of public nuisance law, just

25   like the body of, you know, opioid litigation and other kind of

1    environmental claims that are being brought through the public

2    nuisance theory.

3        And I think there is a recent case out of this court,

4    *State v. Exxon Mobil Corp,* and Plaintiffs did not cite this or

5    I don't think plaintiffs cited this.

6             THE COURT:  I think you did.  I'm familiar with it.

7             MS. GRAVES:  Okay.

8             THE COURT:  It's through the Maryland -- it's

9    Maryland Court of Appeals.

10            MS. GRAVES:  This is actually District of Maryland.

11            THE COURT:  I'm not thinking of the right one.  Okay.

12            MS. GRAVES:  And in this case, the -- in this case

13   the state -- it was brought by the State of Maryland, but the

14   State of Maryland brought an action against manufacturers,

15   marketers, and distributors of gasoline, asserting claims for

16   public nuisance, among others, and seeking to redress the

17   alleged contamination of the state's water by this menthyl

18   tertiary butyl ether, the MTBE.

19            THE COURT:  Yeah, I'm familiar with the MTBE

20   litigation.

21            MS. GRAVES:  So in that case, you know, the court

22   recognized that this was a novel claim, but they still went

23   forward beyond the motion to dismiss stage and declined to

24   dismiss the state's public nuisance claim to the extent that it

25   was premised on this novel claim that defendant's manufacture,

1    marketing, and supply of the MTBE gasoline constituted a public

2    nuisance.

3         So even in that case I think that's a good example of the

4    federal court willing to see that there is an area in the body

5    of public nuisance law in Maryland that allows these types of

6    factually novel but not necessarily legally novel to go forward

7    in federal court without certification.

8              THE COURT:  And, again, maybe this is where in the

9    end of the day you'll convince me I don't need to certify.

10   Looking -- this was -- I have looked at this case.  This is

11   Judge Scheindlin's case out of -- she's applying Maryland law

12   for sure, but it's out of the Southern District of New York.

13   And, again, my concern -- right?  Am I right about that?

14   Southern District of New York?

15             MS. GRAVES:  This is actually 406 F.Supp 3d --

16             THE COURT:  Okay.  Then I don't have the right one.

17   Okay.

18             MS. GRAVES:  -- 420.  So we did not cite this case.

19   And this was out of, yeah, the District of Maryland in 2019.

20             THE COURT:  All right.  Well, that will be helpful

21   for me to look at because the one I was concerned about, the

22   MTBE case, one, is, you know, again, because I think it's fair

23   to say it is less novel to bring nuisance claims about

24   adjoining property interest and about offensive, noxious

25   toxins.  Whether it be noise or pollution or, you know, ground

1  water contamination, there is far -- you know, there is a

2  richer tradition in every state of that being an appropriate

3  cause of action.

4      I have not looked at this case that you're talking about

5  now to see how a colleague of mine dealt with it and what they

6  may have pulled from.  Because my concern with the one in New

7  York is there really wasn't any treatment of certification, and

8  I didn't even know if it came up or if it was known because

9  certification is a Maryland statute.  So I just had no way of

10 knowing whether it was even on the judge's radar.

11         MS. GRAVES:  And this -- in this case, they didn't

12 discuss certification, but, you know, the Court did make clear

13 that they -- you know, it was within the sound discretion of

14 the judge whether or not to -- yeah, essentially, you know,

15 they declined to dismiss the case, and they explained that the

16 role of the federal court, when considering an issue of state

17 law, was to interpret the law as it believes the state's

18 highest Court of Appeals would rule.

19         THE COURT:  They can.  Right?

20         MS. GRAVES:  They can.

21         THE COURT:  I mean, that's always this sort of

22 intersection between federal courts going out there when it

23 believes it can because there is enough precedent on point in

24 the state to do so.  And that's the sort of struggle.

25      So I don't -- I'm sure this is going to be a very helpful

1  case.  I just pulled it up.  It's Judge Hollander's handy work.

2  She's fantastic, you know, in terms of diving deep.  So I will

3  certainly take a look at how she dealt with this issue.

4      You bring up another interesting point, Ms. Graves, and

5  I'll just ask you this, as well as Mr. Young.  If I am inclined

6  to certify, there is a lot of facts, as pleaded.  Sometimes

7  certification, though, is delayed until some discovery can

8  occur so that to the extent it still is a sort of open

9  question, the Court of Appeals has the best record that they

10  could have to decide it.

11      I think it's fair to say that the struggle, the primary

12  struggle I'm having is a standing question and, as pleaded, for

13  example, you know, standing as to organizations has become a

14  bit more difficult or a bit more dicey in the Fourth Circuit.

15  Standing as to an individual aesthetic harm I think is

16  largely -- I don't think there has been a whole lot of

17  treatment of that in this circuit or in the court.

18      What's your thought on targeted discovery on standing?

19          MS. GRAVES:  Your Honor, just to clarify, are you

20  talking about the special injury required to bring the nuisance

21  action --

22          THE COURT:  Yes.

23          MS. GRAVES:  -- or Article III standing?

24          THE COURT:  Kind of both because they both --

25          MS. GRAVES:  Both?

1          THE COURT:  Yeah.  So if I get it right, you know,

2    the standing analysis is different in Maryland, and I don't

3    follow Maryland.  I follow Article III.  But it's still a

4    relevant question because was this -- is this cause of action

5    designed to reach these individuals claiming this kind of harm?

6          It's kind of a close corollary to "Did this plaintiff

7    allege an injury that is sufficiently concrete, particularized,

8    and imminent?"  And it's pled as this, you know -- and this is

9    my word.  It's pled as like a generic aesthetic harm.  "I went

10   to the zoo.  I was very, very upset and I'm harmed by that, by

11   what I saw, and I will suffer that harm until things are made

12   right at the zoo."  That's one level of factual development on

13   the question.

14         I would imagine there would be another level if there was

15   some discovery taken, same with the organization and with

16   standing and zone of interest, if you will.  Like, is this

17   injury sufficiently concrete, particularized given the cause of

18   action that you're alleging?

19         It's just a thought.  Again, I haven't -- you know, I'm

20   asking for your sort of off-the-cuff -- in order to prompt,

21   like, what you might want to address in the supplemental

22   briefing that I think I am going to ask for.

23         MS. GRAVES:  And Plaintiffs are open to discovery on

24   standing if that helps the -- you know, if this Court is

25   inclined to certify this question and that would help the Court

1   of Appeals.

2       But I think that, like, aesthetic injury, for example, in

3   the Fourth Circuit, there is the *Hill v. Coggins* decision from

4   this circuit.

5               THE COURT:  Okay.

6               MS. GRAVES:  That's 867 F.3d 499 out of the Fourth

7   Circuit (2017).  And in that case, they upheld the district

8   court's finding that a plaintiff who claimed that there the

9   Cherokee Bear Zoo was depriving them of a right to personally

10  observe the bears live in a setting compatible with the

11  Endangered Species Act.  That's an Endangered Species Act case.

12  But there's no bears living in essentially a concrete pit, and

13  the Fourth Circuit upheld the district court's finding that

14  they had suffered an injury in fact and that the injury was

15  fairly traceable to the zoo which maintained its bears in the

16  setting that Plaintiffs complained of and that Plaintiffs'

17  injuries could be redressed by an injunction directing the zoo

18  to maintain the bears in a humane setting that didn't violate

19  federal law.

20              THE COURT:  And was that an Endangered Species Act

21  case or an Animal Welfare Act case?  Was it a federal statute?

22              MS. GRAVES:  Yes, that was a federal statute, the

23  Endangered Species Act.

24              THE COURT:  Okay.  But it does stand for the

25  proposition that, when we're talking about standing, the Court

1    has recognized an aesthetic injury of this kind?

2              MS. GRAVES:  That's correct.  In the Article III

3    context, that's correct.

4              THE COURT:  -- cause of action but same theory.

5              MS. GRAVES:  Correct.

6         And there is support from the Supreme Court as well in the

7    *Lujan v. Defenders of Wildlife* case and also *Animal Legal*

8    *Defense Fund v. Glickman* from 1998, again, finding that a

9    plaintiff's aesthetic injury to challenge the USDA's primate

10   regulations in that case and noting that the court's precedent

11   specifically recognized that people have an interest in viewing

12   animals free from inhumane treatment, which is, you know, very

13   parallel to the allegations of Ms. Collins' injury here.

14             THE COURT:  Okay.  All right.  That's helpful.

15        Okay.  Ms. Graves, anything else you wish for me to know

16   or address?

17             MS. GRAVES:  I think that's it at this time unless

18   the Court has any other questions.

19             THE COURT:  I don't think so.  Thank you.

20             MS. GRAVES:  Thank you.

21             THE COURT:  Okay.  Mr. Young.

22             MR. YOUNG:  Yes, Your Honor.

23             THE COURT:  I'm inclined to say that our next step is

24   to have you all brief certification.  I am interested in your

25   thoughts on whether it's enough, as averred in the complaint,

1    to go to the Court of Appeals or whether, in the defendants'

2    view, there would be any interest in -- I know it's kind of a

3    wonky question, but any interest in targeted discovery so that

4    the Court of Appeals, if I do certify, the Court of Appeals has

5    the best record it can to decide the issues?

6              MR. YOUNG:  Well, having listened to the argument by

7    Ms. Graves, I would point out, I mean, we discussed *Hill vs.*

8    *Coggins* at the trial on a separate Endangered Species Act case

9    quite a bit, but it wasn't a public nuisance case.

10             THE COURT:  Right.

11             MR. YOUNG:  It was simply an Article III standing

12   question.  And so, you know, that doesn't resolve or really I

13   think have much impact on whether there is a public nuisance

14   claim in this case.

15        That being said, we're certainly willing to accept, you

16   know, as you always do on a motion to dismiss, to accept all of

17   what's averred in the complaint as true.

18        And, you know, what's happened in Pennsylvania with the

19   federal and state decisions seeming to be in conflict is

20   exactly what I think we should desire to avoid here.  That is,

21   we don't want a situation that runs afoul of Erie v. Tompkins

22   where the federal courts are adopting their laws and yet the

23   state courts of Maryland have -- I would say the Court of

24   Appeals has absolute authority as, you know, the last word on

25   public health, safety, and welfare, which public nuisance falls

1    under.

2         And so even if we went forward just on the motion to

3    dismiss without discovery, I mean, my fear is that we get into

4    discovery and we don't know how much is enough and, you know,

5    what.

6         But I think based on the averments in the complaint, the

7    Court of Appeals should be able to say, without further ado, is

8    this enough to state a claim in Maryland even if we assume

9    arguendo that everything stated in the complaint is true.  And

10   that would save both parties a lot of time and money.  Either

11   way, if they come back yes or no, then they would be the last

12   word on what the public nuisance law is in Maryland, and that's

13   all I would say about that.

14         THE COURT:  And I think one thing you all can think

15   about and help me out is, is it -- is that the only question

16   that needs to go to the court or is there another question

17   which is:  And even if a claim could be stated, these are not

18   the parties authorized to bring it.

19         So what we see in some other courts is a public nuisance

20   claim of this kind has been traditionally customarily brought

21   by the state or the county.  Can we extend the zone of

22   interest, if you will -- and this is, again, my word.  I'm

23   asking for you all to think about this and tell me, you know,

24   whether there is a second question that has to go to the court.

25         But do we expand the zone of interest or the authorized

1    parties to bring this claim?  Is it a cognizable claim for

2    private individuals to bring or private -- or a private

3    organization?  That may be a question that's more easily

4    answered by me, but they are very intertwined in my view.  It's

5    the hesitancy that I'm having in that respect.

6         Could you all hold on for one second?  Thank you.  Hold

7    on.  I'll be right back.

8         (Brief pause.)

9         THE COURT:  Hello.  Sorry about that.  I'm sorry I

10   interrupted you all.  Virtual court has its pitfalls.

11        All right.  I think, Mr. Young, I was in the middle of

12   talking with you and sort of thinking through this issue of --

13   I'm leaning in your direction that I don't think -- the

14   complaint, as drafted, is pretty robust, and I think if we

15   could get guidance from the court, as drafted, it would move

16   the ball far down the field as to what I would do next.

17        Is there anything else, though, Mr. Young, that you want

18   to address or let me know before we talk about next steps?

19        MR. YOUNG:  I don't think so, Your Honor, other than

20   our emphasis on, you know, public nuisance law in Maryland

21   being the sole province of the Court of Appeals in Maryland or

22   the general assembly, although they haven't really addressed

23   that question.

24        THE COURT:  Right.  Right.  Right.  I mean, you're

25   right.  Unlike the last time we all saw one another, which it

1  was a prosecution driven by a federal statute, this one isn't.

2  And so I'm, you know, hesitant to invade that territory without

3  some pretty good, you know, firm soil under my feet.

4       So let's do this.  Because I'm the one raising it, and

5  while you both sort of acknowledged in your pleadings that

6  Maryland hasn't spoken directly on this, what I'm considering

7  doing is setting a time like two weeks from today for pleadings

8  on the propriety of certification and, if so, what question or

9  questions, as framed, would you request I certify to the court.

10  Because as we -- when we started this question, how we frame

11  the question is just as important as to whether we send the

12  question at all.  And, of course, the Court of Appeals can

13  reframe it any way they want, but I'd like your input on

14  propriety of certification and, if certification is granted,

15  what question or questions should be forwarded.

16       We do that in two weeks and then you respond to each other

17  a week later so that I'm not making one of you go first.  You

18  both go and then you both respond.  Does that, one, as a

19  concept, make sense to you?  And, two, is the timing workable

20  from each of your respective sides?

21          MR. YOUNG:  Your Honor, Nevin Young.  That sounds

22  fine to me.  I still would suggest that either as an attachment

23  or an addendum to any pleadings, that the Court of Appeals be

24  presented with the entire case as it's been briefed so far so

25  that there isn't any ambiguity in the question.  I mean, it's

 1   very hard to encapsulate all of these arguments into a brief

 2   question presented.  You know, that's --

 3              THE COURT:  Oh, yeah, sure.  Just so you know,

 4   Mr. Young, the process, as I understand it, I've only had to do

 5   this one other time, is if I grant certification, the entire

 6   record goes.  So whatever has been filed goes to the Court of

 7   Appeals.

 8              MR. YOUNG:  That sounds fine to the defendants, Your

 9   Honor.

10              THE COURT:  Okay.

11       And, Ms. Graves, any concerns about how I'm going to do it

12   or when we're going to do it?

13              MS. GRAVES:  No.  Timing and substance is fine with

14   Plaintiffs.

15              THE COURT:  All right.  Then let's do this.  I will

16   just issue a very -- probably a paperless order that reads,

17   "For the reasons discussed during today's hearing, the parties

18   shall brief in a pleading no greater than five pages letter

19   pleading, exclusive of exhibits, the propriety of certification

20   to the Maryland Court of Appeals."

21       And you know what, I will do this in a letter order

22   because I'll try to summarize what it is we're certifying,

23   which is the cause of action and the parties who are permitted

24   to bring it.  I'll put some window dressing on it just to give

25   you all, you know, at least something by which to summarize

1 | today.  So we'll do this by letter order.

2 | But that pleading each of you will submit by Monday,

3 | November 30th, because otherwise we're going to fall on

4 | Thanksgiving.  Am I getting that right?  Yeah.  And then the

5 | response will be three pages, exclusive of exhibits, one week

6 | later, which will be December 7th.  Okay?

7 | MR. YOUNG:  That sounds good to the defendants, Your

8 | Honor.

9 | THE COURT:  All right.

10 | MS. GRAVES:  That sounds good to the plaintiffs as

11 | well.

12 | THE COURT:  Okay, great.

13 | Well, I really look forward to your educating me further.

14 | And afterwards, we'll see whether -- you know, I may get you

15 | back on Zoom.  It's nice to see you all in this world of

16 | physical isolation.  So we may talk again or I might just rule.

17 | We'll see what you all tell me.  Okay?

18 | MS. GRAVES:  Great.  Thank you, Your Honor.

19 | MR. YOUNG:  Thank you, Your Honor.

20 | THE COURT:  All right.  Thank you all.  Take care.

21 | Be safe.

22 | THE CLERK:  This Honorable Court now stands

23 | adjourned.

24 | (The proceedings were adjourned at 11:27 A.M.)

25 |

1          I, Marlene Martin-Kerr, FCRR, RPR, CRR, RMR, certify that

2    the foregoing is a correct transcript of the stenographic

3    record of proceedings in the above-entitled matter.

4

5                       Dated this 13th day of November, 2020.

6

7    _____
                              /s/
                      Marlene Martin-Kerr
               Federal Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$75,000** [1] - 9:20

**/**

**/s** [1] - 35:6

**1**

**10** [4] - 15:16, 15:18, 15:25
**100** [1] - 1:16
**101** [1] - 1:19
**10:30** [1] - 1:12
**11:27** [1] - 34:24
**12** [1] - 1:12
**1200** [1] - 1:19
**13th** [1] - 35:5
**1998** [1] - 28:8

**2**

**200** [1] - 1:24
**2017)** [1] - 27:7
**2019** [2] - 21:8, 23:19
**2020** [2] - 1:12, 35:5
**206** [1] - 2:7
**20770** [1] - 1:24
**210-2263** [1] - 2:8
**21202** [1] - 1:17
**2154** [1] - 2:6
**221-1010** [1] - 1:20
**2440** [1] - 1:16

**3**

**301)344-3499** [1] - 1:25
**30th** [1] - 34:3
**323** [1] - 2:8
**33602** [1] - 1:19
**3d** [1] - 23:15

**4**

**406** [1] - 23:15
**410** [1] - 1:17
**420** [1] - 23:18
**499** [1] - 27:6

**5**

**50** [1] - 7:21

**6**

**644-5398** [1] - 2:7
**6500** [1] - 1:24

**661** [1] - 2:7

**7**

**7th** [1] - 34:6

**8**

**813** [1] - 1:20
**821B** [1] - 16:4
**858-8518** [1] - 2:7
**867** [1] - 27:6
**8:20-cv-1225-PX** [1] - 1:5

**9**

**90026** [1] - 2:6
**949-1148** [1] - 1:17

**A**

**a)** [1] - 16:4
**A.M** [2] - 1:12, 34:24
**Abelson** [1] - 3:12
**ABELSON** [2] - 1:16, 3:11
**able** [2] - 7:16, 30:7
**above-entitled** [1] - 35:3
**absolute** [1] - 29:24
**absolutely** [3] - 4:7, 4:12, 21:22
**abuse** [1] - 7:6
**accept** [2] - 29:15, 29:16
**access** [1] - 4:4
**acknowledge** [1] - 5:4
**acknowledged** [1] - 32:5
**Act** [9] - 8:1, 9:14, 13:17, 27:11, 27:20, 27:21, 27:23, 29:8
**act** [4] - 15:6, 15:13, 17:10, 17:23
**action** [32] - 3:6, 5:17, 6:2, 6:3, 6:24, 7:10, 7:16, 8:9, 9:1, 9:23, 10:3, 10:4, 10:5, 10:7, 10:11, 10:15, 13:14, 13:20, 15:14, 17:6, 19:15, 19:20, 20:2, 20:22, 21:16, 22:14, 24:3, 25:21, 26:4, 26:18, 28:4, 33:23
**actual** [1] - 5:24
**ADAM** [1] - 1:16
**Adam** [1] - 3:11

**Adams** [5] - 6:14, 13:3, 13:8, 14:3, 18:13
**add** [1] - 9:16
**addendum** [1] - 32:23
**addition** [1] - 15:18
**address** [10] - 8:1, 9:13, 10:20, 17:14, 17:15, 19:19, 19:21, 26:21, 28:16, 31:18
**addressed** [1] - 31:22
**adjoining** [2] - 5:9, 23:24
**adjourned** [2] - 34:23, 34:24
**administrative** [1] - 13:1
**ado** [1] - 30:7
**adopting** [1] - 29:22
**adultery** [1] - 15:19
**aesthetic** [8] - 20:11, 20:18, 21:4, 25:15, 26:9, 27:2, 28:1, 28:9
**afoul** [1] - 29:21
**afterwards** [1] - 34:14
**aggressive** [1] - 13:25
**agree** [4] - 5:2, 5:8, 10:12, 20:18
**ahead** [1] - 3:19
**Aided** [1] - 1:21
**aimed** [1] - 16:8
**air** [1] - 7:2
**al** [1] - 3:7
**alcohol** [1] - 15:20
**ALDF** [2] - 19:22, 20:18
**align** [1] - 14:14
**allegations** [1] - 28:13
**allege** [2] - 18:10, 26:7
**alleged** [6] - 13:2, 16:15, 18:3, 18:10, 19:6, 22:17
**alleging** [3] - 13:7, 20:2, 26:18
**alligator** [1] - 18:19
**alligators** [1] - 18:20
**allow** [1] - 6:24
**allowed** [1] - 7:11
**allows** [1] - 23:5
**almost** [1] - 7:3
**ALSO** [1] - 2:9
**ambiguity** [1] - 32:25
**analysis** [4] - 20:7, 20:13, 20:16, 26:2
**ANDREW** [1] - 2:5
**ANGELES** [1] - 2:6
**Animal** [5] - 13:16, 13:17, 20:1, 27:21,

28:7
**ANIMAL** [1] - 1:8
**animal** [9] - 15:7, 15:12, 15:13, 15:15, 16:5, 16:7, 16:8, 16:23
**animals** [4] - 7:5, 15:18, 20:3, 28:12
**Animals** [2] - 3:13, 17:18
**ANIMALS** [1] - 1:4
**answered** [1] - 31:4
**Appeals** [26] - 5:21, 5:22, 6:23, 7:12, 8:5, 8:8, 8:13, 8:25, 9:22, 10:3, 11:20, 12:5, 22:9, 24:18, 25:9, 27:1, 29:1, 29:4, 29:24, 30:7, 31:21, 32:12, 32:23, 33:7, 33:20
**appellate** [1] - 11:2
**application** [1] - 17:9
**apply** [1] - 4:7
**applying** [1] - 23:11
**appreciate** [1] - 14:12
**appropriate** [1] - 24:2
**area** [1] - 23:4
**arguendo** [1] - 30:9
**argument** [3] - 3:17, 6:23, 29:6
**arguments** [1] - 33:1
**arm** [1] - 5:15
**Article** [6] - 6:4, 9:24, 25:23, 26:3, 28:2, 29:11
**article** [1] - 10:20
**aspect** [1] - 21:24
**assembly** [1] - 31:22
**asserted** [1] - 10:16
**asserting** [1] - 22:15
**assume** [2] - 16:17, 30:8
**assuming** [2] - 16:12, 19:5
**at-large** [2] - 6:25, 7:1
**attachment** [1] - 32:22
**attorney** [1] - 5:14
**Attorney** [1] - 7:16
**attorneys** [1] - 4:23
**authorities** [1] - 19:11
**authority** [5] - 7:5, 12:11, 17:23, 19:14, 29:24
**authorized** [2] - 30:18, 30:25
**averments** [1] - 30:6
**averred** [2] - 28:25, 29:17
**avoid** [1] - 29:20

**aware** [1] - 21:23

**B**

**b)(1** [1] - 10:9
**b)(6** [1] - 10:10
**ball** [1] - 31:16
**Baltimore** [1] - 6:16
**BALTIMORE** [1] - 1:17
**based** [2] - 9:7, 30:6
**Bear** [1] - 27:9
**bears** [4] - 27:10, 27:12, 27:15, 27:18
**become** [2] - 10:1, 25:13
**BEFORE** [1] - 1:11
**behalf** [5] - 3:12, 3:14, 3:17, 3:21, 20:2
**believes** [2] - 24:17, 24:23
**best** [2] - 25:9, 29:5
**between** [2] - 9:23, 24:22
**beyond** [2] - 15:8, 22:23
**big** [1] - 8:23
**bigamy** [1] - 15:19
**bit** [5] - 8:22, 10:13, 25:14, 29:9
**BLVD** [1] - 1:19, 2:6
**body** [5] - 7:18, 14:25, 16:16, 21:25, 23:4
**bound** [1] - 9:8
**boy** [1] - 17:8
**Bravo** [6] - 6:13, 17:17, 17:19, 19:4, 19:7
**Brief** [2] - 4:2, 31:8
**brief** [8] - 5:21, 8:20, 9:5, 9:23, 11:1, 28:24, 33:1, 33:18
**briefed** [2] - 8:18, 11:7, 32:24
**briefing** [1] - 26:22
**bring** [10] - 7:16, 20:22, 21:17, 23:23, 25:4, 25:20, 30:18, 31:1, 31:2, 33:24
**bringing** [3] - 7:19, 17:6, 19:15
**broadly** [1] - 12:22
**brought** [13] - 5:5, 9:17, 10:22, 14:8, 14:11, 14:17, 19:13, 19:23, 20:1, 22:1, 22:13, 22:14, 30:20
**bullfight** [2] - 16:16, 17:22
**bullfighting** [2] - 7:15, 17:19

**bullfights** [2] - 15:2, 16:3
**business** [2] - 13:4, 13:5
**busy** [1] - 12:5
**butyl** [1] - 22:18
**BY** [3] - 1:16, 1:18, 2:4

**C**

**Caitlin** [1] - 3:16
**CAITLIN** [1] - 2:4
**CALIFORNIA** [1] - 2:6
**CANDY** [1] - 1:8
**canvass** [1] - 7:21
**captivity** [1] - 20:3
**care** [1] - 34:20
**CARE** [1] - 1:8
**case** [55] - 4:17, 6:12, 6:13, 7:15, 7:18, 8:10, 9:16, 10:8, 10:14, 10:21, 10:22, 11:10, 12:4, 12:12, 13:4, 13:9, 13:11, 14:10, 14:11, 14:13, 14:14, 15:1, 16:24, 17:1, 17:17, 17:19, 18:7, 19:22, 19:25, 20:5, 20:20, 21:6, 22:3, 22:12, 22:21, 23:3, 23:10, 23:11, 23:18, 23:22, 24:4, 24:11, 24:15, 25:1, 27:7, 27:11, 27:21, 28:7, 28:10, 29:8, 29:9, 29:14, 32:24
**Case** [1] - 1:5
**cases** [18] - 5:16, 6:12, 6:15, 6:17, 7:9, 7:24, 12:7, 13:22, 14:2, 14:15, 15:4, 15:6, 15:8, 16:7, 16:20, 17:2, 17:4, 18:19
**categories** [1] - 14:20
**certainly** [8] - 7:17, 9:8, 12:5, 17:5, 20:14, 20:15, 25:3, 29:15
**certification** [19] - 5:21, 8:11, 8:21, 11:6, 11:10, 11:19, 11:21, 21:13, 23:7, 24:7, 24:9, 24:12, 25:7, 28:24, 32:8, 32:14, 33:5, 33:19
**Certification** [2] - 7:25, 9:13
**certify** [10] - 8:24, 9:11, 11:25, 12:9, 23:9, 25:6, 26:25,

29:4, 32:9, 35:1
**certifying** [2] - 12:4, 33:22
**challenge** [1] - 28:9
**chat** [1] - 4:20
**Cherokee** [1] - 27:9
**CHERRYWOOD** [1] - 1:24
**chestnut** [1] - 21:6
**chose** [1] - 17:24
**Circuit** [4] - 25:14, 27:3, 27:7, 27:13
**circuit** [2] - 25:17, 27:4
**circumstances** [1] - 12:24
**cite** [3] - 13:22, 22:4, 23:18
**cited** [6] - 5:16, 12:7, 13:16, 16:7, 16:21, 22:5
**citizen** [2] - 17:3, 17:6
**City** [1] - 6:16
**civil** [4] - 3:6, 5:14, 13:13, 19:13
**claim** [13] - 5:5, 5:11, 5:25, 13:2, 22:22, 22:24, 22:25, 29:14, 30:8, 30:17, 30:20, 31:1
**claimed** [1] - 27:8
**claiming** [1] - 26:5
**claims** [3] - 22:1, 22:15, 23:23
**clarification** [1] - 11:19
**clarify** [1] - 25:19
**clean** [1] - 5:18
**clear** [8] - 11:23, 14:15, 16:6, 16:8, 18:14, 21:1, 21:3, 24:12
**clearly** [1] - 16:6
**CLERK** [1] - 34:22
**close** [1] - 26:6
**closer** [1] - 14:5
**Coggins** [2] - 27:3, 29:8
**cognizable** [1] - 31:1
**colleague** [2] - 10:13, 24:5
**collective** [1] - 7:21
**Collins** [8] - 2:9, 3:7, 3:13, 3:14, 4:24, 11:13, 12:18, 18:9
**COLLINS** [1] - 1:3
**Collins'** [1] - 28:13
**comfort** [1] - 14:22
**comfortable** [1] - 5:19
**coming** [1] - 21:10

**Comment** [2] - 15:3, 16:4
**Commissioner** [1] - 18:13
**Commissioners** [2] - 6:13, 6:14
**commissioners** [1] - 13:3
**common** [8] - 5:5, 5:12, 12:23, 14:21, 17:5, 18:25, 21:2, 21:6
**community** [2] - 6:25, 7:1
**compatible** [1] - 27:10
**complained** [1] - 27:16
**complaint** [8] - 5:1, 5:23, 9:2, 28:25, 29:17, 30:6, 30:9, 31:14
**complex** [1] - 9:22
**Computer** [1] - 1:21
**Computer-Aided** [1] - 1:21
**concept** [1] - 32:19
**concern** [2] - 23:13, 24:6
**concerned** [2] - 5:11, 23:21
**concerns** [2] - 4:22, 33:11
**concrete** [3] - 26:7, 26:17, 27:12
**conditions** [1] - 20:2
**conduct** [4] - 12:17, 12:25, 15:22, 16:14
**Conduct** [1] - 15:17
**conflict** [1] - 29:19
**confusing** [1] - 10:1
**Connie** [1] - 3:13
**conserving** [1] - 16:9
**considering** [3] - 5:20, 24:16, 32:6
**CONSTANCE** [1] - 1:3
**Constance** [2] - 2:9, 3:7
**constituted** [1] - 23:1
**constitutes** [2] - 12:17, 13:6
**constitutional** [1] - 11:2
**contact** [1] - 18:15
**contamination** [2] - 22:17, 24:1
**context** [3] - 5:18, 6:18, 28:3
**continued** [1] - 2:1
**controlling** [1] - 11:2
**convenience** [1] -

14:22
**convince** [1] - 23:9
**convinced** [1] - 6:4
**core** [1] - 21:13
**corollary** [1] - 26:6
**Corp** [1] - 22:4
**correct** [5] - 14:10, 28:2, 28:3, 28:5, 35:2
**counsel** [1] - 3:10
**counsels** [1] - 21:13
**county** [6] - 5:15, 7:15, 7:18, 14:8, 14:11, 30:21
**couple** [3] - 15:21, 16:22, 17:14
**course** [5] - 8:9, 8:12, 9:19, 11:10, 32:12
**court** [28] - 3:23, 4:5, 4:6, 4:13, 5:12, 8:2, 9:4, 10:18, 13:22, 14:1, 17:20, 17:21, 18:3, 19:7, 19:24, 20:18, 21:7, 22:3, 22:21, 23:4, 23:7, 24:16, 25:17, 30:16, 30:24, 31:10, 31:15, 32:9
**COURT** [55] - 1:1, 1:23, 3:19, 3:22, 3:25, 4:1, 4:3, 4:18, 4:19, 6:19, 7:13, 8:15, 10:6, 10:12, 11:11, 11:16, 12:2, 13:8, 16:10, 17:16, 18:1, 19:4, 20:5, 20:21, 20:23, 22:6, 22:8, 22:11, 22:19, 23:8, 23:16, 23:20, 24:19, 24:21, 25:22, 25:24, 26:1, 27:5, 27:20, 27:24, 28:4, 28:14, 28:19, 28:21, 28:23, 29:10, 30:14, 31:9, 31:24, 33:3, 33:10, 33:15, 34:9, 34:12, 34:20
**Court** [44] - 3:2, 3:4, 3:6, 3:9, 5:21, 5:22, 6:9, 6:11, 6:23, 7:11, 8:5, 8:7, 8:8, 8:13, 8:25, 9:6, 9:21, 10:2, 10:3, 11:19, 11:24, 11:25, 12:5, 12:9, 24:12, 24:18, 25:9, 26:24, 26:25, 27:25, 28:6, 28:18, 29:1, 29:4, 29:23, 30:7, 31:21, 32:12, 32:23, 33:6, 33:20, 34:22,

35:7
**court's** [3] - 27:8, 27:13, 28:10
**COURTROOM** [1] - 3:3
**courts** [10] - 5:2, 7:4, 9:7, 9:17, 15:11, 17:24, 24:22, 29:22, 29:23, 30:19
**covers** [1] - 16:13
**creature** [1] - 5:13
**Crimes** [1] - 15:17
**crimes** [7] - 15:18, 15:19, 15:21, 15:22, 15:25
**criminal** [6] - 5:13, 13:13, 13:17, 13:18, 13:24, 14:6
**Criminal** [1] - 15:16
**CRR** [2] - 1:23, 35:1
**cruelty** [2] - 15:12, 17:21
**Cruelty** [1] - 17:18
**cuff** [1] - 26:20
**customarily** [1] - 30:20

**D**

**damage** [1] - 9:19
**Dated** [1] - 35:5
**dealt** [2] - 24:5, 25:3
**December** [1] - 34:6
**decide** [9] - 5:12, 8:24, 9:3, 9:6, 11:3, 17:12, 21:15, 25:10, 29:5
**decided** [1] - 9:18
**decidedly** [1] - 21:9
**decides** [1] - 12:13
**deciding** [2] - 9:10, 19:7
**decision** [5] - 11:2, 13:21, 13:22, 20:15, 27:3
**decisions** [1] - 29:19
**declined** [2] - 22:23, 24:15
**deep** [1] - 25:2
**defendant's** [1] - 22:25
**DEFENDANTS** [1] - 2:3
**Defendants** [1] - 1:9
**defendants** [4] - 3:21, 9:18, 33:8, 34:7
**defendants'** [2] - 6:22, 29:1
**Defendants'** [1] - 12:17
**Defenders** [1] - 28:7

**Defense** [2] - 20:1, 28:8
**define** [1] - 10:18
**defines** [3] - 10:16, 12:22
**definitely** [1] - 7:24
**definition** [1] - 12:21
**delayed** [1] - 25:7
**demonstrates** [1] - 16:6
**denied** [1] - 19:25
**depriving** [1] - 27:9
**DEPUTY** [1] - 3:3
**describes** [1] - 14:19
**designed** [1] - 26:5
**desire** [1] - 29:20
**development** [1] - 26:12
**devices** [1] - 4:10
**dicey** [1] - 25:14
**difference** [1] - 20:12
**different** [6] - 16:10, 16:16, 18:11, 18:18, 19:2, 26:2
**differently** [1] - 8:4
**difficult** [1] - 25:14
**directing** [1] - 27:17
**direction** [5] - 7:22, 7:25, 11:4, 21:16, 31:13
**directly** [3] - 6:17, 17:24, 32:6
**discovery** [8] - 15:10, 25:7, 25:18, 26:15, 26:23, 29:3, 30:3, 30:4
**discretion** [2] - 11:24, 24:13
**discuss** [1] - 24:12
**discussed** [2] - 29:7, 33:17
**dismiss** [8] - 4:21, 15:8, 19:24, 22:23, 22:24, 24:15, 29:16, 30:3
**dismissed** [1] - 20:9
**Disney** [2] - 18:16, 18:17
**disorderly** [1] - 15:22
**distinction** [1] - 7:3
**distributors** [1] - 22:15
**District** [8] - 3:3, 3:4, 15:11, 19:23, 22:10, 23:12, 23:14, 23:19
**district** [2] - 27:7, 27:13
**DISTRICT** [3] - 1:1, 1:1, 1:11
**districts** [1] - 12:8

**disturbing** [1] - 15:21
**divine** [1] - 7:23
**diving** [1] - 25:2
**DIVISION** [1] - 1:2
**down** [4] - 4:16, 13:19, 20:24, 31:16
**drafted** [3] - 5:22, 31:14, 31:15
**dressing** [1] - 33:24
**driven** [1] - 32:1
**driving** [1] - 16:19
**during** [1] - 33:17

## E

**easily** [1] - 31:3
**EAST** [1] - 1:16
**easy** [1] - 16:14
**educate** [1] - 21:12
**educating** [1] - 34:13
**either** [5] - 4:16, 8:17, 11:5, 30:10, 32:22
**elements** [1] - 5:24
**emphasis** [1] - 31:20
**encapsulate** [1] - 33:1
**end** [3] - 8:20, 10:7, 23:9
**Endangered** [5] - 27:11, 27:20, 27:23, 29:8
**endorsing** [2] - 17:9, 17:10
**ends** [1] - 10:10
**enforce** [4] - 17:7, 17:21, 17:24, 18:8
**English** [1] - 21:21
**enjoin** [1] - 17:22
**Enterprises** [2] - 6:13, 17:17
**entire** [2] - 32:24, 33:5
**entitled** [1] - 35:3
**environmental** [1] - 22:1
**equitable** [1] - 13:23
**equity** [3] - 17:7, 17:20, 17:25
**Erie** [1] - 29:21
**Erselius** [1] - 3:16
**ERSELIUS** [1] - 2:5
**ESQUIRE** [5] - 1:16, 1:18, 2:4, 2:5, 2:5
**essentially** [4] - 18:4, 18:8, 24:14, 27:12
**establish** [1] - 12:24
**established** [2] - 19:9, 21:2
**establishments** [2] - 15:1, 16:3
**et** [1] - 3:7

**ether** [1] - 22:18
**ETHICAL** [1] - 1:3
**Ethical** [1] - 3:13
**exactly** [1] - 6:10, 29:20
**example** [9] - 7:14, 14:4, 14:18, 16:2, 18:16, 21:15, 23:3, 25:13, 27:2
**examples** [4] - 14:15, 14:23, 15:3, 16:1
**excess** [1] - 9:20
**exclusive** [2] - 33:19, 34:5
**exercises** [1] - 13:22
**exhibitions** [1] - 15:2
**exhibits** [2] - 33:19, 34:5
**exist** [1] - 14:15
**exists** [1] - 6:4
**expand** [3] - 7:1, 19:19, 30:25
**expansion** [1] - 16:18
**explained** [1] - 24:15
**extend** [4] - 5:17, 16:14, 21:3, 30:21
**extent** [3] - 7:1, 22:24, 25:8
**Exxon** [1] - 22:4

## F

**F.3d** [1] - 27:6
**F.Supp** [1] - 23:15
**facility** [3] - 18:17, 18:24, 20:3
**fact** [3] - 4:9, 12:16, 27:14
**facts** [5] - 5:23, 13:8, 13:11, 14:13, 25:6
**factual** [2] - 16:24, 26:12
**factually** [3] - 12:3, 13:10, 23:6
**fair** [3] - 8:17, 23:22, 25:11
**fairly** [1] - 27:15
**fall** [1] - 34:3
**falls** [1] - 29:25
**familiar** [2] - 22:6, 22:19
**fantastic** [1] - 25:2
**far** [6] - 6:12, 6:24, 24:1, 31:16, 32:24
**Farmers** [2] - 19:25, 20:3
**FCRR** [2] - 1:23, 35:1
**fear** [1] - 30:3
**federal** [17] - 5:12,

10:18, 10:22, 12:7, 14:1, 17:4, 21:7, 23:4, 23:7, 24:16, 24:22, 27:19, 27:21, 27:22, 29:19, 29:22, 32:1
**Federal** [1] - 35:7
**FEDERAL** [1] - 1:23
**feet** [1] - 32:3
**field** [1] - 31:16
**filed** [1] - 33:6
**fill** [1] - 13:24
**fine** [3] - 32:22, 33:8, 33:13
**firm** [1] - 32:3
**first** [14] - 4:23, 5:12, 9:6, 10:18, 16:20, 17:12, 17:14, 17:17, 19:21, 20:8, 20:12, 20:24, 21:1, 32:17
**five** [1] - 33:18
**FLORIDA** [1] - 1:19
**follow** [2] - 26:3
**follows** [2] - 11:23, 12:20
**FOR** [4] - 1:1, 1:3, 1:14, 2:3
**foreclose** [1] - 19:16
**foregoing** [1] - 35:2
**form** [1] - 15:13
**forward** [6] - 7:11, 10:2, 22:23, 23:6, 30:2, 34:13
**forwarded** [2] - 32:15
**Foundation** [1] - 3:16
**FOUNDATION** [1] - 2:4
**Fourth** [4] - 25:14, 27:3, 27:6, 27:13
**frame** [3] - 8:23, 8:24, 32:10
**framed** [1] - 32:9
**framing** [1] - 8:22
**frankly** [1] - 8:16
**free** [1] - 28:12
**front** [1] - 18:25
**fully** [1] - 11:7
**Fund** [2] - 20:1, 28:8

## G

**gaming** [3] - 15:1, 15:20, 16:3
**gap** [2] - 13:24
**gasoline** [3] - 13:8, 22:15, 23:11
**General** [1] - 7:16
**general** [7] - 5:14, 6:25, 12:23, 14:21, 18:11, 19:3, 31:22

**generic** [1] - 26:9
**given** [2] - 7:2, 26:17
**Glickman** [1] - 28:8
**governed** [1] - 5:6
**grant** [1] - 33:5
**granted** [2] - 32:14
**GRAVES** [33] - 2:5, 11:15, 11:17, 12:15, 14:10, 17:13, 17:17, 18:2, 19:21, 20:14, 20:22, 21:22, 22:7, 22:10, 22:12, 22:21, 23:15, 23:18, 24:11, 24:20, 25:19, 25:23, 25:25, 26:23, 27:6, 27:22, 28:2, 28:5, 28:17, 28:20, 33:13, 34:10, 34:18
**graves** [7] - 11:16, 12:2, 21:18, 25:4, 28:15, 29:7, 33:11
**Graves** [3] - 3:16, 3:17, 11:15
**Great** [1] - 34:18
**great** [2] - 11:11, 34:12
**greater** [1] - 33:18
**GREENBELT** [2] - 1:12, 1:24
**ground** [1] - 23:25
**guess** [2] - 9:16, 20:23
**guidance** [2] - 8:2, 31:15
**guided** [1] - 5:25
**guiding** [1] - 12:11

## H

**handled** [1] - 8:10
**handling** [1] - 3:17
**handy** [1] - 25:1
**hard** [1] - 33:1
**harm** [8] - 18:9, 18:18, 20:19, 20:20, 25:15, 26:5, 26:9, 26:11
**harmed** [1] - 26:10
**Hasbun** [1] - 3:15
**HASBUN** [1] - 1:18
**hate** [1] - 15:19
**Hawks** [1] - 3:16
**HAWKS** [1] - 2:4
**head** [3] - 10:15, 11:8, 21:20
**health** [3] - 14:22, 15:20, 29:25
**Health** [1] - 15:17
**hear** [3] - 6:6, 10:25, 11:13
**HEARING** [1] - 1:10
**hearing** [3] - 3:9, 8:20,

33:17
heartened [1] - 10:25
held [1] - 17:21
hello [1] - 31:9
help [2] - 26:25, 30:15
helpful [4] - 9:3, 23:20, 24:25, 28:14
helps [1] - 26:24
hesitancy [1] - 31:5
hesitant [1] - 32:2
hesitation [1] - 8:4
hi [1] - 11:16
Hi [1] - 11:17
Higdon [1] - 10:14
highest [1] - 24:18
Hill [2] - 27:3, 29:7
hit [1] - 10:14
hold [2] - 31:6
Hollander's [2] - 10:14, 25:1
Honor [17] - 3:11, 3:20, 6:8, 9:15, 11:9, 11:15, 14:10, 17:13, 20:17, 25:19, 28:22, 31:19, 32:21, 33:9, 34:8, 34:18, 34:19
HONORABLE [1] - 1:11
Honorable [2] - 3:5, 34:22
house [5] - 7:18, 14:5, 14:25, 16:16
houses [2] - 15:2, 16:3
human [1] - 15:22
humane [1] - 27:18
hunted [1] - 20:24

I

identify [1] - 3:10
Ill [6] - 6:4, 9:24, 25:23, 26:3, 28:2, 29:11
ill [1] - 14:6
illegal [2] - 15:1, 16:2
imagine [1] - 26:14
imminent [1] - 26:8
impact [1] - 29:13
important [4] - 6:12, 10:22, 12:2, 32:11
IN [1] - 1:1
inadequate [1] - 20:2
INC [3] - 1:4, 1:7, 1:8
inclined [4] - 10:2, 25:5, 26:25, 28:23
include [1] - 12:25
includes [2] - 14:25, 15:18

including [4] - 14:21, 15:11, 15:20, 16:2
Incorporated [1] - 3:8
indecent [1] - 15:2
indeed [1] - 15:12
independent [1] - 4:12
individual [4] - 14:8, 17:3, 20:19, 25:15
individuals [4] - 17:11, 19:20, 26:5, 31:2
infer [1] - 21:14
inference [1] - 19:12
inhumane [1] - 28:12
injunction [2] - 19:10, 27:17
injunctive [1] - 17:7, 20:4
injuries [1] - 27:17
injury [25] - 7:7, 10:16, 10:18, 10:19, 12:19, 18:2, 18:6, 18:10, 18:11, 18:14, 18:23, 18:25, 19:2, 19:6, 20:11, 21:4, 25:20, 26:7, 26:17, 27:2, 27:14, 28:1, 28:9, 28:13
Inn [2] - 19:25, 20:4
input [1] - 32:13
instance [1] - 9:6
instructive [1] - 9:9
interactions [1] - 9:22
interest [8] - 17:11, 23:24, 26:16, 28:11, 29:2, 29:3, 30:22, 30:25
interested [2] - 8:17, 28:24
interesting [3] - 4:25, 15:24, 25:4
interfere [4] - 14:17, 14:20, 14:24, 16:1
interference [2] - 12:23, 12:24
interpret [1] - 24:17
interrupt [1] - 4:15
interrupted [1] - 31:10
interruptions [2] - 4:8, 4:11
intersection [1] - 24:22
intertwined [1] - 10:23, 31:4
intertwining [1] - 9:25
invade [1] - 32:2
involve [2] - 17:2, 17:6
involved [2] - 8:11, 14:5
involving [1] - 5:14

isolation [1] - 34:16
issue [12] - 8:18, 11:3, 11:18, 11:20, 12:8, 12:16, 17:23, 18:22, 24:16, 25:3, 31:12, 33:16
issues [2] - 18:19, 29:5

J

James [1] - 3:16
JAMES [1] - 2:5
joining [2] - 3:14, 4:3
judge [3] - 12:11, 20:25, 24:14
JUDGE [1] - 1:11
Judge [4] - 3:25, 10:13, 23:11, 25:1
judge's [1] - 24:10
jurisdiction [3] - 8:3, 13:23, 14:1
jurisdictions [1] - 15:7

K

keep [1] - 21:10
KENNEDY [1] - 1:19
Kerr [5] - 3:23, 4:14, 35:1, 35:7
KERR [1] - 1:23
kind [15] - 5:18, 15:5, 16:13, 18:5, 18:11, 19:2, 21:24, 21:25, 25:24, 26:5, 26:6, 28:1, 29:2, 30:20
knocking [1] - 21:19
knowing [2] - 11:7, 24:10
known [1] - 24:8

L

lack [2] - 14:13, 18:24
lacked [1] - 17:22
landing [1] - 14:3
LANE [1] - 1:24
large [2] - 6:25, 7:1
largely [1] - 25:16
last [3] - 29:24, 30:11, 31:25
law [32] - 5:5, 5:7, 5:13, 11:22, 12:4, 12:17, 12:20, 13:5, 13:16, 13:24, 14:13, 14:16, 15:5, 15:15, 16:5, 17:5, 17:24, 18:14, 19:1, 19:21, 21:2, 21:5, 21:6, 21:9, 21:24, 23:5,

23:11, 24:17, 27:19, 30:12, 31:20
Law [3] - 8:1, 9:14, 15:16
laws [4] - 7:8, 15:13, 16:8, 29:22
lawyers [1] - 4:9
leaning [1] - 31:13
least [8] - 5:10, 7:15, 11:8, 12:7, 13:18, 15:7, 19:12, 33:25
Legal [2] - 20:1, 28:7
legal [1] - 11:20
legally [1] - 23:6
less [1] - 23:23
letter [3] - 33:18, 33:21, 34:1
level [2] - 26:12, 26:14
lie [1] - 9:2
limited [2] - 8:2, 14:1
line [2] - 3:14, 4:4
liquor [2] - 15:1, 16:2
list [1] - 15:3
listened [1] - 29:6
litigation [2] - 21:25, 22:20
live [2] - 18:21, 27:10
living [1] - 27:12
LLP [1] - 1:15
look [5] - 16:20, 20:15, 23:21, 25:3, 34:13
looked [2] - 23:10, 24:4
looking [2] - 10:13, 23:10
LOS [1] - 2:6
Lucas [1] - 19:22
Lujan [1] - 28:7

M

maintain [1] - 27:18
maintained [1] - 27:15
manner [1] - 13:5
manufacture [1] - 22:25
manufacturers [1] - 22:14
Marcos [1] - 3:15
MARCOS [1] - 1:18
marketers [1] - 22:15
marketing [1] - 23:1
Marlene [2] - 35:1, 35:7
MARLENE [1] - 1:23
marriage [1] - 15:19
Martin [2] - 35:1, 35:7
MARTIN [1] - 1:23
Martin-Kerr [2] - 35:1,

35:7
MARTIN-KERR [1] - 1:23
MARYLAND [5] - 1:1, 1:7, 1:12, 1:17, 1:24
Maryland [57] - 3:4, 3:8, 5:2, 5:6, 5:18, 5:21, 5:22, 6:23, 7:3, 7:18, 7:23, 8:3, 8:5, 8:8, 9:4, 9:7, 9:17, 11:3, 11:19, 11:22, 12:5, 12:11, 12:12, 12:20, 13:3, 13:4, 13:16, 13:18, 14:2, 14:13, 14:17, 16:20, 17:5, 17:12, 18:25, 19:17, 19:18, 21:11, 21:14, 22:8, 22:9, 22:10, 22:13, 22:14, 23:5, 23:11, 23:19, 24:9, 26:2, 26:3, 29:23, 30:8, 30:12, 31:20, 31:21, 32:6, 33:20
Maryland's [3] - 15:4, 15:15, 16:5
matter [6] - 3:6, 3:9, 4:8, 13:11, 35:3
mean [8] - 7:2, 18:22, 19:4, 24:21, 29:7, 30:3, 31:24, 32:25
meaningless [1] - 7:3
Mechanical [1] - 1:21
mechanism [2] - 12:9, 12:10
members [2] - 20:2, 20:19
menthyl [1] - 22:17
middle [2] - 21:9, 31:11
might [6] - 4:10, 7:23, 8:8, 8:22, 26:21, 34:16
mind [1] - 14:2
mindful [1] - 12:6
mine [1] - 24:5
minimize [1] - 4:11
minute [1] - 17:4
Mobil [1] - 22:4
Monday [1] - 34:2
money [1] - 30:10
moot [1] - 10:10
moral [1] - 15:4
morals [8] - 14:17, 14:23, 14:24, 16:2, 16:9, 16:13, 16:17, 18:12
morning [4] - 3:11, 3:20, 3:25, 4:1
most [1] - 6:11

**motion** [8] - 4:21,
9:24, 10:10, 15:8,
19:24, 22:23, 29:16,
30:2
**motions** [1] - 3:9
**MOTIONS** [1] - 1:10
**move** [1] - 31:15
**MR** [16] - 3:11, 3:20,
6:8, 6:20, 8:7, 9:15,
10:7, 11:9, 28:22,
29:6, 29:11, 31:19,
32:21, 33:8, 34:7,
34:19
**MS** [32] - 11:15, 11:17,
12:15, 14:10, 17:13,
17:17, 18:2, 19:21,
20:14, 20:22, 21:22,
22:7, 22:10, 22:12,
22:21, 23:15, 23:18,
24:11, 24:20, 25:19,
25:23, 25:25, 26:23,
27:6, 27:22, 28:2,
28:5, 28:17, 28:20,
33:13, 34:10, 34:18
**MTBE** [4] - 22:18,
22:19, 23:1, 23:22
**mushier** [1] - 10:13
**must** [1] - 19:10
**mute** [1] - 4:11
**myriad** [1] - 18:18

## N

**nail** [1] - 10:14
**national** [1] - 20:1
**nature** [2] - 6:2, 6:3
**necessarily** [4] - 5:8,
7:13, 18:23, 23:6
**necessary** [2] - 11:21,
20:20
**need** [4] - 4:15, 6:2,
16:19, 23:9
**needs** [1] - 30:16
**never** [2] - 6:23, 8:10
**Nevin** [2] - 3:20, 32:21
**new** [1] - 21:7
**New** [3] - 23:12, 23:14,
24:6
**next** [4] - 18:21, 28:23,
31:16, 31:18
**nice** [1] - 34:15
**noise** [1] - 23:25
**none** [2] - 17:2, 17:5
**nonprofit** [1] - 20:1
**noteworthy** [1] - 5:1
**notice** [1] - 5:23
**noting** [1] - 28:10
**notion** [1] - 7:6
**novel** [6] - 21:24,
22:22, 22:25, 23:6,

23:23
**November** [2] - 34:3,
35:5
**NOVEMBER** [1] - 1:12
**noxious** [1] - 23:24
**nuisance** [36] - 5:5,
5:9, 5:17, 5:25, 6:24,
7:8, 7:10, 9:2, 11:22,
12:18, 12:21, 12:22,
13:2, 13:6, 14:16,
15:14, 16:1, 17:9,
18:14, 18:21, 19:10,
20:22, 21:24, 22:2,
22:16, 22:24, 23:2,
23:5, 23:23, 25:20,
29:9, 29:13, 29:25,
30:12, 30:19, 31:20
**nuisances** [1] - 14:24
**number** [2] - 3:7, 5:16
**Number** [1] - 1:5
**numerous** [1] - 20:3

## O

**observe** [1] - 27:10
**obviously** [2] - 7:12,
12:6
**occur** [1] - 25:8
**OF** [4] - 1:1, 1:3, 1:7,
1:10
**off-the-cuff** [1] - 26:20
**offense** [5] - 13:17,
13:18, 16:13, 16:14,
16:17
**offensive** [1] - 23:24
**officer** [1] - 18:5
**OFFICIAL** [1] - 1:23
**official** [1] - 4:13
**Official** [1] - 35:7
**often** [1] - 5:5
**old** [1] - 21:6
**one** [27] - 3:24, 4:13,
4:14, 4:16, 5:2, 5:20,
7:22, 7:24, 9:1,
16:21, 21:5, 21:16,
22:11, 23:16, 23:21,
23:22, 24:6, 26:12,
30:14, 31:6, 31:25,
32:1, 32:4, 32:17,
32:18, 33:5, 34:5
**ongoing** [1] - 15:9
**open** [2] - 25:8, 26:23
**operating** [1] - 13:4
**opinion** [3] - 20:8,
20:12, 20:24
**opioid** [1] - 21:25
**opportunity** [3] - 8:19,
9:12, 9:13
**option** [1] - 9:19
**order** [4] - 26:20,

33:16, 33:21, 34:1
**Order** [1] - 3:2
**organization** [4] -
14:9, 16:23, 26:15,
31:3
**organizations** [3] -
17:11, 19:20, 25:13
**otherwise** [2] - 8:20,
34:3
**outside** [1] - 6:25
**overlap** [1] - 15:25
**owners** [1] - 5:9

## P

**pages** [2] - 33:18, 34:5
**paperless** [1] - 33:16
**parallel** [1] - 28:13
**paraphrasing** [1] -
18:4
**Park** [1] - 3:8
**PARK** [2] - 1:7, 1:8
**part** [4] - 5:3, 8:23,
13:25, 19:8
**particular** [2] - 5:3,
17:10
**particularized** [3] -
7:7, 26:7, 26:17
**parties** [5] - 30:10,
30:18, 31:1, 33:17,
33:23
**partner** [1] - 3:15
**party** [2] - 8:17, 21:17
**PAULA** [1] - 1:11
**Paula** [1] - 3:5
**pause** [2] - 4:2, 31:8
**peace** [2] - 14:22,
15:22
**pending** [2] - 3:6, 4:21
**Pennsylvania** [14] -
6:12, 7:4, 17:18,
19:9, 19:13, 19:15,
19:22, 19:23, 21:1,
21:5, 21:6, 21:9,
29:18
**people** [1] - 28:11
**People** [1] - 3:12
**PEOPLE** [1] - 1:3
**per** [1] - 13:6
**perhaps** [3] - 5:11,
6:15, 8:12
**permitted** [2] - 4:15,
33:23
**personally** [1] - 27:9
**persons** [1] - 18:15
**persuaded** [1] - 8:19
**persuasive** [3] - 6:16,
6:21, 7:9
**PETA** [9] - 2:4, 3:15,
4:24, 5:16, 6:7, 6:12,

11:14, 12:18, 18:9
**physical** [2] - 4:6,
34:16
**pit** [1] - 27:12
**pitfalls** [1] - 31:10
**Plaintiff** [1] - 2:9
**plaintiff** [7] - 7:7,
10:17, 13:12, 21:4,
26:6, 27:8
**plaintiff's** [1] - 28:9
**plaintiffs** [4] - 9:7,
9:18, 22:5, 34:10
**Plaintiffs** [13] - 1:5,
3:12, 3:15, 3:18,
11:18, 11:21, 13:1,
13:7, 21:23, 22:4,
26:23, 27:16, 33:14
**PLAINTIFFS** [1] - 1:14
**Plaintiffs'** [1] - 27:16
**pleaded** [3] - 20:11,
25:6, 25:12
**pleading** [4] - 5:23,
33:18, 33:19, 34:2
**pleadings** [6] - 5:4,
6:9, 8:12, 32:5, 32:7,
32:23
**pleads** [1] - 21:4
**pled** [3] - 20:10, 26:8,
26:9
**point** [13] - 4:15, 5:2,
6:1, 6:17, 7:24, 11:4,
12:4, 15:9, 16:25,
20:23, 24:23, 25:4,
29:7
**pointed** [1] - 21:16
**points** [3] - 7:22, 9:24,
16:22
**policy** [2] - 13:21, 16:6
**pollution** [1] - 23:25
**power** [1] - 13:13
**PRATT** [1] - 1:16
**precedent** [2] - 12:13,
24:23, 28:10
**precisely** [1] - 13:6
**predicate** [3] - 15:6,
15:13, 16:24
**premised** [1] - 22:25
**PRESENT** [1] - 2:9
**presented** [2] - 32:24,
33:2
**presiding** [1] - 3:5
**pretty** [3] - 13:25,
31:14, 32:3
**Prevention** [1] - 17:18
**previously** [1] - 20:9
**primary** [1] - 25:11
**primate** [1] - 28:9
**private** [13] - 13:19,
14:8, 14:9, 17:3,
17:6, 17:10, 19:20,

20:19, 21:3, 21:17,
31:2
**problem** [2] - 8:1,
14:7, 20:6
**problematic** [1] - 19:5
**proceeded** [1] - 15:8
**proceeding** [2] - 4:6,
4:13
**Proceedings** [1] -
1:21
**proceedings** [2] -
34:24, 35:3
**PROCEEDINGS** [1] -
1:10
**process** [1] - 33:4
**Produced** [1] - 1:21
**prompt** [1] - 26:20
**prong** [1] - 13:14
**prongs** [1] - 10:19
**proper** [4] - 8:9, 8:12,
11:10, 19:11
**property** [2] - 5:9,
23:24
**proposition** [1] -
27:25
**propriety** [3] - 32:8,
32:14, 33:19
**proscribed** [1] - 12:25
**prosecution** [2] -
5:13, 32:1
**prosecutorial** [1] -
5:15
**prostitution** [1] -
14:25
**protection** [5] - 15:5,
15:15, 16:5, 16:7,
16:8
**province** [1] - 31:21
**provision** [1] - 11:2
**proximity** [1] - 18:24
**prudentially** [1] -
10:20
**public** [55] - 4:4, 5:5,
5:9, 5:17, 6:24, 7:7,
7:10, 9:2, 12:18,
12:21, 12:22, 12:23,
12:25, 13:2, 14:16,
14:17, 14:20, 14:21,
14:22, 14:24, 15:4,
15:14, 15:20, 16:1,
16:2, 16:6, 16:9,
16:13, 16:17, 17:9,
18:11, 18:12, 18:14,
18:15, 19:3, 19:10,
19:11, 19:14, 20:22,
21:24, 22:1, 22:16,
22:24, 23:1, 23:5,
29:9, 29:13, 29:25,
30:12, 30:19, 31:20
**Public** [1] - 15:17

**pull** [1] - 6:4
**pulled** [2] - 24:6, 25:1
**pump** [1] - 13:9
**put** [2] - 4:10, 33:24
**PX-20-1225** [1] - 3:7

## Q

**questions** [5] - 6:10,
11:20, 28:18, 32:9,
32:15
**Questions** [2] - 8:1,
9:14
**quite** [3] - 9:1, 9:24,
29:9
**quote** [1] - 19:9

## R

**radar** [1] - 24:10
**raise** [1] - 6:20
**raised** [3] - 6:13, 6:15,
6:18
**raising** [1] - 32:4
**rationale** [1] - 19:8
**re** [1] - 20:10
**re-pled** [1] - 20:10
**reach** [2] - 5:12, 26:5
**reached** [1] - 5:3
**read** [2] - 6:9, 12:4
**reads** [1] - 33:16
**real** [1] - 16:18
**really** [16] - 5:2, 6:22,
7:1, 8:25, 10:10,
11:4, 11:25, 12:16,
13:10, 13:12, 14:3,
16:24, 24:7, 29:12,
31:22, 34:13
**realm** [1] - 13:23
**reason** [2] - 19:18,
20:25
**reasons** [1] - 33:17
**recent** [1] - 22:3
**recognize** [2] - 9:4,
10:23
**recognized** [3] -
22:22, 28:1, 28:11
**record** [5] - 3:10, 25:9,
29:5, 33:6, 35:3
**Recorded** [1] - 1:21
**recordings** [1] - 4:12
**redress** [1] - 22:16
**redressed** [1] - 27:17
**reframe** [1] - 32:13
**regulates** [1] - 13:5
**regulation** [1] - 13:1
**regulations** [1] - 28:10
**rehash** [1] - 6:10
**rejected** [2] - 7:4, 7:6

**relating** [1] - 15:22
**relevant** [2] - 6:16,
26:4
**relied** [1] - 15:5
**relief** [2] - 17:7, 20:4
**relying** [1] - 13:15
**remains** [1] - 15:23
**remarkable** [1] - 16:21
**remedy** [2] - 10:17,
19:13
**remove** [1] - 9:19
**reported** [1] - 20:15
**REPORTER** [3] - 1:23,
3:25, 4:18
**reporter** [1] - 3:23
**Reporter** [1] - 35:7
**repute** [1] - 14:6
**request** [1] - 32:9
**require** [1] - 19:1
**required** [1] - 25:20
**RESCUE** [1] - 1:8
**resolve** [1] - 29:12
**respect** [2] - 13:18,
31:5
**respective** [1] - 32:20
**respond** [2] - 4:22,
32:16, 32:18
**response** [2] - 11:6,
34:5
**rest** [1] - 11:23
**Restatement** [10] -
5:6, 5:10, 11:23,
12:21, 12:22, 13:14,
14:19, 15:3, 16:4,
16:12
**Restatement's** [1] -
16:1
**review** [1] - 8:14
**richer** [1] - 24:2
**riding** [1] - 5:18
**rights** [2] - 14:20,
14:21
**RMR** [2] - 1:23, 35:1
**road** [1] - 13:19
**roadside** [1] - 19:25
**ROBERT** [1] - 1:8
**robust** [1] - 31:14
**role** [1] - 24:16
**roll** [1] - 8:3
**room** [1] - 5:11
**RPR** [2] - 1:23, 35:1
**rule** [2] - 24:18, 34:16
**rules** [1] - 4:7
**run** [1] - 16:15
**running** [2] - 16:15,
16:16
**runs** [1] - 29:21

## S

**safe** [1] - 34:21
**safety** [3] - 14:22,
15:20, 29:25
**save** [2] - 6:10, 30:10
**saw** [3] - 20:9, 26:11,
31:25
**Scheindlin's** [1] -
23:11
**se** [1] - 13:6
**second** [5] - 3:24,
20:9, 21:8, 30:24,
31:6
**Section** [1] - 16:4
**see** [12] - 3:23, 11:1,
13:25, 14:3, 20:16,
23:4, 24:5, 30:19,
34:14, 34:15, 34:17
**seeing** [1] - 7:9
**seek** [1] - 10:17
**seeking** [2] - 11:18,
22:16
**seeks** [1] - 6:25
**seem** [1] - 12:8
**seeming** [1] - 29:19
**seize** [1] - 7:5
**send** [2] - 12:6, 32:11
**sense** [3] - 21:18,
21:22, 32:19
**Sensibilities** [1] -
15:17
**separate** [1] - 29:8
**session** [1] - 3:4
**setting** [4] - 27:10,
27:16, 27:18, 32:7
**several** [2] - 15:24,
16:7
**shall** [1] - 33:18
**sides** [1] - 33:20
**simply** [2] - 9:1, 29:11
**sincerity** [1] - 8:10
**situation** [1] - 29:21
**slate** [1] - 5:18
**slow** [1] - 4:16
**Society** [1] - 17:18
**soil** [1] - 32:3
**sole** [1] - 31:21
**someone** [2] - 6:24,
18:16
**sometimes** [1] - 25:6
**sorry** [3] - 19:2, 31:9
**sort** [9] - 7:10, 9:25,
21:23, 24:21, 24:24,
25:8, 26:20, 31:12,
32:5
**sought** [2] - 19:10,
20:4
**sound** [2] - 11:24,

24:13
**sounds** [4] - 32:21,
33:8, 34:7, 34:10
**SOUTHERN** [1] - 1:2
**Southern** [2] - 23:12,
23:14
**Spaeder** [1] - 3:12
**SPAEDER** [1] - 1:15
**SPCA** [6] - 7:5, 17:19,
17:20, 17:22, 17:23,
18:7
**speaking** [2] - 4:9,
21:20
**special** [9] - 12:19,
18:2, 18:6, 18:9,
18:10, 18:25, 19:6,
20:20, 25:20
**Species** [5] - 27:11,
27:20, 27:23, 29:8
**specific** [1] - 15:25
**specifically** [2] -
12:17, 28:11
**split** [2] - 21:15, 21:23
**spoken** [1] - 32:6
**stage** [3] - 15:8, 15:10,
22:23
**stand** [1] - 27:24
**standing** [26] - 5:24,
6:1, 6:4, 9:3, 9:7,
9:23, 9:25, 10:5,
10:20, 16:23, 16:25,
17:20, 17:22, 19:8,
25:12, 25:13, 25:15,
25:18, 25:23, 26:2,
26:16, 26:24, 27:25,
29:11
**stands** [1] - 34:22
**started** [1] - 32:10
**state** [17] - 7:10, 7:16,
9:17, 10:15, 18:17,
18:20, 19:19, 21:15,
22:13, 24:2, 24:16,
24:24, 29:19, 29:23,
30:8, 30:21
**State** [4] - 3:8, 22:4,
22:13, 22:14
**STATE** [1] - 1:7
**state's** [3] - 22:17,
22:24, 24:17
**states** [3] - 7:22, 11:4,
21:14
**States** [1] - 3:3
**STATES** [2] - 1:1, 1:11
**statute** [13] - 8:21,
10:22, 11:3, 12:25,
13:13, 14:6, 16:6,
17:21, 18:8, 24:9,
27:21, 27:22, 32:1
**statutes** [1] - 15:12
**statutory** [2] - 7:5,

17:23
**STE** [1] - 1:24
**stenographic** [1] -
35:2
**Stenography** [1] -
1:21
**step** [2] - 13:23, 28:23
**steps** [1] - 31:18
**sticking** [1] - 14:3
**still** [9] - 9:2, 10:9,
14:15, 14:17, 15:9,
22:22, 25:8, 26:3,
32:22
**stop** [1] - 4:16
**STREET** [1] - 1:16
**street** [1] - 18:5
**strictly** [1] - 14:14
**strong** [1] - 12:12
**struggle** [7] - 7:20,
13:10, 14:12, 16:11,
24:24, 25:11, 25:12
**struggling** [1] - 17:8
**stuff** [1] - 21:19
**subject** [1] - 7:6
**submit** [1] - 34:2
**submitted** [1] - 8:13
**substance** [1] - 33:13
**substantive** [2] - 6:2,
6:3
**suffer** [5] - 18:5, 18:9,
18:18, 19:1, 26:11
**suffered** [6] - 7:7,
12:18, 18:22, 18:23,
20:20, 27:14
**sufficiently** [3] - 21:2,
26:7, 26:17
**suggest** [3] - 8:11,
14:4, 32:22
**suggests** [1] - 21:7
**suing** [1] - 16:18
**SUITE** [2] - 1:16, 1:19
**summarize** [2] -
33:22, 33:25
**summary** [1] - 6:11
**SUNSET** [1] - 2:6
**supplemental** [1] -
26:21
**supply** [1] - 23:1
**support** [1] - 28:6
**Supreme** [1] - 28:6

## T

**Tadjer** [1] - 14:19
**TAMPA** [1] - 1:19
**targeted** [2] - 25:18,
29:3
**tentative** [1] - 4:22
**terms** [2] - 10:15, 25:2

**territory** [1] - 32:2
**tertiary** [1] - 22:18
**Thanksgiving** [1] - 34:4
**THE** [61] - 1:1, 1:1, 1:3, 1:11, 1:14, 2:3, 3:3, 3:19, 3:22, 3:25, 4:1, 4:3, 4:18, 4:19, 6:19, 7:13, 8:15, 10:6, 10:12, 11:11, 11:16, 12:2, 13:8, 16:10, 17:16, 18:1, 19:4, 20:5, 20:21, 20:23, 22:6, 22:8, 22:11, 22:19, 23:8, 23:16, 23:20, 24:19, 24:21, 25:22, 25:24, 26:1, 27:5, 27:20, 27:24, 28:4, 28:14, 28:19, 28:21, 28:23, 29:10, 30:14, 31:9, 31:24, 33:3, 33:10, 33:15, 34:9, 34:12, 34:20, 34:22
**theory** [2] - 22:2, 28:4
**thinking** [2] - 22:11, 31:12
**thoughts** [1] - 28:25
**three** [3] - 10:19, 13:15, 34:5
**thrust** [1] - 6:22
**THURSDAY** [1] - 1:12
**timing** [2] - 32:19, 33:13
**Title** [4] - 15:16, 15:18, 15:25
**titled** [1] - 15:16
**today** [5] - 8:12, 8:22, 9:11, 32:7, 34:1
**today's** [1] - 33:17
**together** [1] - 11:7
**tome** [1] - 9:12
**Tompkins** [1] - 29:21
**tort** [3] - 5:14, 9:4, 13:12
**tough** [1] - 10:24
**toxins** [1] - 23:25
**traceable** [1] - 27:15
**tradition** [1] - 24:2
**traditionally** [1] - 30:20
**transcript** [2] - 4:13, 35:2
**TRANSCRIPT** [1] - 1:10
**Transcript** [1] - 1:21
**Transcription** [1] - 1:21
**transfer** [1] - 13:13
**transform** [1] - 13:12

**transformed** [1] - 5:13
**transforming** [1] - 13:19
**Trappe** [3] - 6:14, 13:4
**travel** [1] - 7:2
**travels** [1] - 18:17
**Treatment** [1] - 3:13
**treatment** [3] - 24:7, 25:17, 28:12
**TREATMENT** [1] - 1:3
**Tri** [1] - 3:8
**TRI** [1] - 1:7
**Tri-State** [1] - 3:8
**TRI-STATE** [1] - 1:7
**trial** [1] - 29:8
**trigger** [1] - 6:5
**true** [4] - 16:12, 19:6, 29:17, 30:9
**try** [1] - 33:22
**trying** [4] - 10:17, 12:6, 17:21, 18:8
**turn** [2] - 4:22, 6:7
**two** [7] - 6:11, 9:7, 12:7, 17:3, 32:7, 32:16, 32:19
**types** [1] - 23:5

### U

**ultimately** [1] - 9:21
**uncertain** [1] - 8:7
**under** [5] - 7:7, 9:2, 10:22, 30:1, 32:3
**underlie** [1] - 13:2
**underlying** [1] - 5:25
**Uniform** [2] - 7:25, 9:13
**United** [1] - 3:3
**UNITED** [2] - 1:1, 1:11
**unlawful** [1] - 17:22
**unless** [2] - 8:19, 28:17
**unlike** [2] - 18:7, 31:25
**unreasonable** [2] - 12:22, 12:24
**up** [8] - 10:1, 10:2, 10:10, 12:10, 20:5, 24:8, 25:1, 25:4
**upheld** [2] - 27:7, 27:13
**upset** [1] - 26:10
**upshot** [1] - 13:11
**urge** [1] - 11:9
**USDA's** [1] - 28:9

### V

**various** [1] - 14:20
**versus** [1] - 3:7

**view** [3] - 14:2, 29:2, 31:4
**viewing** [1] - 28:11
**views** [2] - 6:6, 9:14
**violate** [2] - 14:16, 27:18
**violated** [1] - 14:6
**violates** [1] - 13:5
**violation** [1] - 13:16
**violations** [1] - 15:12
**virtual** [1] - 31:10
**vs** [3] - 1:6, 6:14, 29:7

### W

**Washington** [1] - 15:12
**water** [2] - 22:17, 24:1
**ways** [3] - 4:25, 8:16, 18:18
**week** [2] - 32:17, 34:5
**weeks** [2] - 32:7, 32:16
**welcome** [1] - 4:7
**welcomed** [1] - 4:5
**welfare** [3] - 15:13, 16:23, 29:25
**Welfare** [3] - 13:17, 27:21
**well-drafted** [1] - 5:22
**WEST** [1] - 2:6
**WESTERN** [1] - 1:7
**Western** [3] - 3:8, 15:11, 19:23
**Whitaker** [4] - 14:5, 14:11, 14:18, 15:1
**whole** [3] - 5:7, 20:7, 25:16
**wholly** [1] - 5:19
**Wildlife** [1] - 28:7
**willing** [2] - 23:4, 29:15
**window** [1] - 33:24
**wish** [1] - 28:15
**wondering** [1] - 20:24
**wonky** [1] - 29:3
**word** [4] - 26:9, 29:24, 30:12, 30:22
**words** [1] - 13:25
**workable** [1] - 32:19
**World** [2] - 18:16, 18:17
**world** [1] - 34:15
**wrestled** [1] - 12:8
**writing** [1] - 9:14

### X

**XINIS** [1] - 1:11

**Xinis** [1] - 3:5

### Y

**York** [3] - 23:12, 23:14, 24:7
**Young** [12] - 3:19, 3:20, 5:8, 6:1, 6:6, 11:5, 16:21, 28:21, 31:11, 31:17, 32:21, 33:4
**YOUNG** [15] - 3:20, 6:8, 6:20, 8:7, 9:15, 10:7, 11:9, 28:22, 29:6, 29:11, 31:19, 32:21, 33:8, 34:7, 34:19
**young** [4] - 4:23, 8:16, 11:12, 25:5
**yourselves** [1] - 3:10

### Z

**Zeynep** [2] - 3:16, 11:15
**ZEYNEP** [1] - 2:5
**zone** [4] - 17:11, 26:16, 30:21, 30:25
**zoning** [2] - 6:16, 6:18
**Zoo** [1] - 27:9
**zoo** [6] - 16:15, 19:25, 26:10, 26:12, 27:15, 27:17
**Zoological** [1] - 3:8
**ZOOLOGICAL** [1] - 1:7
**Zoom** [1] - 34:15
**ZUCKERMAN** [1] - 1:15
**Zuckerman** [1] - 3:12