IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
–Northern Division–

CONSTANCE COLLINS, *et al.*,

*Plaintiff*

–v–

TRI-STATE ZOOLOGICAL PARK OF WESTERN MARYLAND, INC., *et al.*,

*Defendants.*

Case No. 8:20-cv-01225

### OPPOSITION TO MOTION FOR SANCTIONS (ECF 59)

Now Come the Defendants and file this Opposition to the Plaintiffs' Motion for Sanctions and state:

**I.   Introduction and Summary of Responses**

    **A.   Suggestion to defer ruling upon this motion and consolidate with motions for summary judgment**

The Defendants continue to object to this Court's refusal to evaluate jurisdiction as related to the amount in controversy in this diversity action. Having raised the issue in good faith, the Defendants believe this Court has a duty to inquire further and to insist that the Plaintiffs show the basis for the conclusory allegations in the Complaint that more than $75,000 is in controversy. The Defendants also believe that Plaintiffs have made no progress in advancing any claim of a special injury as required by law, and as set forth by this Court in its Order denying the Motion to Dismiss in this matter.

Therefore the Defendants suggest that the Court take up the instant motion at the same time as the motions for summary judgment in this case. Plaintiffs do not believe the Defendants' claim can survive summary judgment, because there is no diversity jurisdiction and because they will be unable to proffer any sort of special injury that will satisfy Federal Rule of Civil Procedure 12(b)(6) as a matter of law. It would therefore be in the interests of judicial economy to consolidate the instant motion to be ruled upon at the same time as the Court rules upon the motions for summary judgment which will doubtless be filed in this case.

### B.   Discovery in this case as conducted by the Plaintiffs is no more than tangentially related to a public nuisance at best

PETA and Ms. Collins appear to have made no progress throughout discovery in showing that there has been any special injury to either Plaintiff, such as to give rise to a valid claim of injury. Instead, Plaintiffs focus upon trivial and arguably irrelevant alleged violations of the Animal Welfare Act. What Plaintiffs ignore, is the fact that a public nuisance requires something that is in public view, in other words, a sight, smell, sound, toxin, etc., emanating from a defendant's use of property, not something that is only discerned after going through someone's records with a fine-tooth comb. By way of analogy, if a plaintiff were to complain of a gambling house being run on the same street, it is not an examination of the back office ledgers, even if one assumes *arguendo* that such ledgers were falsified, that would give rise to a claim of public nuisance—it would instead be the plain and unavoidable offense the establishment gives to public morals in the surrounding area, through what is readily observable to the public.

Plaintiffs no doubt intend to argue at trial that the animals at the Zoo are mistreated. But their claims at this point depend not upon what can be seen publicly, but what they believe they have learned through discovery or failed to learn in discovery—through an investigation of the Zoo's records, depositions of the Zoo's owner, veterinarians, and volunteers, and inspection of the Zoo's animals by their own experts. Missing from Plaintiffs' formulation is any explanation of how claims arising from these investigations would give rise to a *public* nuisance that offends the standards of the Zoo's local community.

### C. The matters at hand in the pending motion have little relevance to whether there is a valid public nuisance claim in this case

The Defendants here remind the Court of the fundamental definition of public nuisance in the State of Maryland, as set forth in *Adams v. Commissioners of Trappe*, *Id*. at 834:

> It is a basic principle that courts of equity have jurisdiction over issues of property and the maintenance of civil rights, and ***do not interpose their aid in matters merely criminal which do not affect any rights of property***. That principle, however, does not preclude injunctive relief against the commission of criminal acts which, ***unless enjoined, would operate to cause an irreparable injury to property or rights of a pecuniary nature***. As we stated in *Clark v. Todd*, 192 Md. 487, 492, 64 A.2d 547, if criminal offenses are primarily and essentially an injury to property, preventive relief may be granted by the court of equity within the same limits as where the element of criminality is entirely absent. In such a case, the court does not intervene to prevent the commission of the crime, although that may incidentally result, but to ***protect individual property from destruction.*** **(Emphasis added).**

The Plaintiffs here complain, as though this were a case brought under the Endangered Species Act, that they do not believe they have gleaned every bit of information from the backroom drawers and file cabinets of the Zoo, and that the Zoo, in the ordinary course of its operations, moved animals around and updated records to more accurately reflect the status of the animals. How this relates to a public nuisance is anyone's guess, since even if there were a criminal act alleged, one must, under *Adams v. Commissioners of Trappe*, *Id*. at 834, tie that criminal act to an injury to Plaintiffs before it becomes relevant. In this case, the Plaintiffs ask the Court to far overstep the common law powers of the state courts to enjoin conduct. As set forth in *Adams*, the court does not intervene to prevent the commission of a crime, although that may incidentally result, but to *protect individual property from destruction.*

### D.    Summary of Responses

The Plaintiffs complain, in summary, of the following:

First, that Mr. Candy allegedly deleted some texts from his telephone. However, there is no showing that those texts were relevant to a public nuisance claim or that there was any prejudice to PETA by such deletion, since the texts were obtained on the other end from Dr. Gold, the Zoo's veterinarian, in response to a subpoena issued to Dr. Gold. (See Affidavit of Robert Candy, Exhibit A).

Second, that the Defendants transferred or moved Rico (a parrot), Sir Vivor (a Virginia Opossum)[1], Mudd (a kinkajou), Casper (a skunk), and a carpet python. The Defendants also moved several other animals, such as an anaconda. With the sole exception of Casper the skunk, all of these animals were moved in the ordinary course of business, and the moves were in those animals' best interests. There was no pre-existing order that the animals were not to be moved. For Mr. Candy, doing what is best for the animals remains important. These animals are not simply "evidence" but are also living creatures.[2] In the case of Casper, the owner of Casper hates PETA and decided to remove him from the Zoo rather than allow PETA's expert witnesses to view him. Mr. Candy does not own Casper and had to respect that owner's wishes. (See Affidavit of Robert Candy, Exhibit A, and Affidavit of Brian Rice, Exhibit D).

Third, PETA falsely claims that acquisition records were altered to "falsely" change ownership of the animals. That is merely conjecture and slander by PETA. Instead, Mr. Candy updated records that were previously erroneous, to show the true ownership of the animals. Under PETA's theory, nobody can ever correct a record without committing a

---

[1] PETA's motion refers to Sir Vivor as a "possum." He is a Virginia Opossum. There is a technical distinction between a Virginia Opossum and a "Possum", as there is also an Australian animal known as a "Possum."

[2] During the prior ESA case between PETA and these Defendants, PETA vehemently protested the transfer of Alfredo to the Maryland Zoo, claiming "spoliation of evidence" despite knowing that Alfredo would be alone at the Zoo in violation of the Endangered Species Act. It was only when the Zoo stated an intention to bring the matter to the Court's attention that PETA agreed to the transfer of Alfredo to the Maryland Zoo. Alfredo was not treated as an animal but as a piece of evidence by PETA in the prior case. PETA's ludicrous hypocrisy continues in this case, wherein PETA claims the Zoo mistreats the animals, but insists that the animals stay at the Zoo. One must certainly be brought to question what PETA's actual purpose is in this case.

fraud. That is simply an untrue assertion, since the record corrections were to make the records more accurate, rather than less accurate.

      **E.**     **PETA's recent telephone inquiries have made clear to PETA who the owners of certain animals are, and the failure of PETA to disclose that information to the Court is a sanctionable breach of the duty of candor before the tribunal**

Upon information and belief, PETA has been involved in an extensive telephone campaign in the last several weeks through counsel, calling the owners of various animals and discussing whether those owners would be willing to relinquish ownership of the animals to PETA or otherwise remove their animals from the Zoo. To the best of Defendants' knowledge, none of the animal owners have agreed to PETA's request. However, given that PETA is believed to have recently received information directly from the owners of certain animals as to the ownership of those animals, it is strange that PETA would ask this Court to declare that those persons do not actually own the animals, without making those owners party to this case so that they can speak for themselves as to what they want for the animals they own. (See Affidavit of Robert Candy, Exhibit A, Affidavit of Darcy Bowen, Exhibit B, Affidavit of Kathy Moran, Exhibit C, Affidavit of Todd Leasure, Exhibit D). For instance, three of the pigs, Isabelle, Emmy, and Sophie, are owned by Kathy Moran. PETA, through counsel, spoke with Kathy Moran and confirmed her ownership of the pigs. (See Affidavit of Kathy Moran, Exhibit C). PETA also left a voice message, through counsel Marcos Hasbun, for Brian Rice, who owns Casper, the skunk presently placed at the Zoo. Brian Rice's husband, Todd Leasure, called Marcos Hasbun back and stated that they were not interested in PETA's proposal to move any animals

owned by them to another facility. (Affidavit of Todd Leasure, Exhibit D). During that conversation with Marcos Hasbun, Mr. Hasbun stated to Mr. Leasure that the purpose of his inquiry as to who owned which animal was to "let the Court know" about the ownership of the animals. Apparently, there was no such intention to "let the Court know", because PETA filed this motion without letting the Court know, in derogation of its duty of candor, and PETA is now attempting to disenfranchise certain animal owners without notice to them, despite clear knowledge of their claims of ownership.

PETA seeks a declaration that the Zoo has violated its duties, because Brian Rice and Todd Leasure, who own the skunk Casper, chose to remove him from the Zoo rather than let PETA's experts examine him. PETA further seeks a declaration that the Zoo owns the pigs Emmy, Sophie, and Isabelle, despite having spoken to Kathy Moran and despite knowing that Kathy Moran claims ownership of the animals. PETA's neglect to inform the Court of material facts related to the ownership of these animals is in derogation not only of due process but of basic decency and is also a breach of PETA's duty of candor before the Court. PETA knows and has known for at least the past several weeks that various third parties claim ownership of some of the animals in question, but has chosen not to disclose material facts to this Court.

There also remains an open question of the relevance of ownership of these animals. The Defendants maintain that contrary to PETA's position, this Court cannot, in a public nuisance action, take or award ownership of these animals from the Zoo. This is not an Endangered Species Act case. It is a public nuisance case, and this Court cannot do more

than order any nuisance to be abated by the least invasive means necessary for such abatement. This might mean closing the Zoo, but would give neither the Court nor PETA claim or jurisdiction over any chattel property of the Zoo or the chattel property of third parties.

PETA's knowledge of the actual ownership of some of these animals, as PETA learned during its telephone conversations, is highly relevant and material to the issues in this case and should have been disclosed to the Court prior to asking for a declaration regarding ownership.

## II. The alleged failures to produce texts or emails are irrelevant to the issues in this case

A perusal of the litany of complaints that PETA raises about Mr. Candy's text messages shows that Mr. Candy may have deleted some small number of text messages but that PETA received those text messages through subpoenas to the recipient, in this case, Dr. Gold, and therefore, there was no prejudice to PETA from any lapse by Mr. Candy. PETA has further failed to show that there is any nexus between the texts in question and the gravamen of PETA's complaint, that is, the claim of public nuisance. Instead, the subject matter of the texts is such that no member of the general public would ever have access to or knowledge of those texts, and therefore, those texts are only marginally relevant at best.

### III. The Zoo transferred animals as part of its ordinary business, and PETA knows many of those animals are owned by people other than the parties to this case

PETA seeks to make the ordinary business of the Zoo a matter of dispute. Yet the transfer of animals is a matter of course for any Zoo. (See Affidavit of Robert Candy, Exhibit A). PETA knew when it filed its motion, yet chose to conceal from this Court, that various parties claim ownership of some of the animals in dispute. PETA knew at the time of filing its motion that Brian Rice and Todd Leasure, a married couple, claimed ownership of Casper the skunk, yet chose not to inform the Court of this fact. PETA knew from its conversation with Kathy Moran that Kathy Moran claims ownership of three of the pigs at the Zoo, but PETA chose not to inform the Court of this claim of ownership prior to asking the Court to declare that the Zoo owns those animals. Where there is a bona fide claim of ownership of property by a non-party to a litigation, it is grossly irresponsible and perhaps unethical for a party to the litigation to ask the Court to declare ownership, without first informing the Court of the claims of ownership of others. PETA and PETA's counsel have breached the bare minimum required as a matter of ethics and have omitted vital and material facts from their motion. It is in fact PETA that should face sanctions rather than these Defendants, because any failings of the Defendants are due to mere negligence, while PETA's failings appear to be due to deliberate dishonesty and a lack of candor before the tribunal.

As discussed above, PETA knows and knew at the time of filing the instant motion that Emmy, Sophie and Isabelle were owned by Kathy Moran. PETA also knew that Casper

the skunk was owned by a third party, Brian Rice. PETA had also left a voicemail for Darcy Bowen seeking further information about the ownership of Dodger, and has known that Dodger is not owned by the Zoo since at least November 2019, when settlement negotiations were undertaken in the prior case, No. 17-2148. PETA knows that Dodger is owned by a woman named Chris Lynch and has been repeatedly informed of that fact (Affidavit of Robert Candy, Exhibit A, Affidavit of Darcy Bowen, Exhibit B). Yet they seek a declaration from this Court in derogation of the rights of all of the above-named persons and have never sought to make any of those persons parties to this case. Furthermore, PETA has never demonstrated that the ownership of the animals is directly relevant to the public nuisance claimed in this case. Even if a public nuisance were found to exist, the Court would have no power to seize these animals or declare that they are owned by the Zoo. The Court would only have power to enjoin any further nuisance emanating from the Defendants' property.

## IV.     Conclusion

The Plaintiffs have engaged in an egregious violation of ethics by contacting several of the animal owners in this case, promising to inform the Court of the animal owners' interest in the animals, and then failing to do so. The Plaintiffs complain of trivial discovery violations, show no relevance to those alleged violations, and yet pretend that the Court should be shocked into punishing the Defendants for not being perfect. Instead, this Court should demand that the Plaintiffs explain how it is that they spoke to several animal owners who had placed animals at the Zoo, told those owners that the ownership interest would be

explained to the Court, and then failed in that duty as though those conversations had never happened. The Plaintiffs' actions in this case are shockingly disingenuous and cannot be countenanced. It is the Plaintiffs who should face sanctions in the form of attorneys' fees and costs.

                                        Respectfully Submitted,

                                        ____s/Nevin L. Young_____
                                        Nevin L. Young
                                        Fed Bar. ID No. 28604
                                        170 West Street
                                        Annapolis Maryland 21401
                                        410-353-9210
                                        nyoung@burlingtonyounglaw.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of October, 2021, I served the foregoing upon the counsel and/or parties set forth below via the ECF filing system:

Adam Abelson, Esquire
Zuckerman Spaeder, LLP
100 East Pratt Street, 24th Floor
Baltimore MD 21202

Marcos Hasbun, Esquire
101 East Kennedy Blvd.
Tampa Florida 33602

James Ersellius, Esquire
Zeynep Graves, Esquire
Caitlin Hawks, Esquire
PETA Legal Foundation
2154 West Sunset Blvd.
Los Angeles, California 90026

                                        ____s/Nevin L. Young_____
                                        Nevin L. Young