IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
–Northern Division–

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC.,

*Plaintiff*

–v–

TRI-STATE ZOOLOGICAL PARK OF
WESTERN MARYLAND, INC., *et al.*,

*Defendants.*

Case No. 8:20-cv-01225

## EXHIBIT A, AFFIDAVIT OF ROBERT CANDY IN SUPPORT OF OPPOSITION TO MOTION FOR SANCTIONS

Now Comes the Affiant Robert L. Candy and testifies as follows:

1. My name is Robert L. Candy. I am a party to this case, am over the age of 18 and am competent to be a witness.

2. I am the principal of Tri State Zoological Park of Western Maryland, Inc., and Animal Park Care & Rescue, Inc.

3. The Plaintiffs in their pending Motion complain that I deleted some texts from my telephone. However, I never knowingly deleted anything that I believed had relevance to the instant matter. I had tried to minimize my use of text messages due to the invasive nature of PETA's requests in the last litigation. There were a few texts from me to Dr. Gold that were not produced, but I do not believe that those texts were relevant to any of the issues in this case. I also have refrained from taking photographs due to the invasive

nature of PETA's discovery requests. Volunteers sometimes take photos and post them on Facebook, but I do not control the Facebook page for the Zoo nor do I control the photographs, which are freely available to anyone who looks at the Zoo's Facebook page. I do not have the power to compel volunteers at the Zoo to divulge any of their personal documents or records.

    4.       The Plaintiffs complain that I transferred or moved Rico (a parrot), Sir Vivor (a Virginia Opossum), Mudd (a kinkajou), Casper (a skunk), and a carpet python, as well as other animals such as an anaconda. With the sole exception of Casper the skunk, all of these animals were moved in the ordinary course of business, and the moves were in those animals' best interests. For example, the anaconda had gotten too big for his enclosure, and the Zoo's veterinarian Dr. Gold recommended that he receive a larger enclosure or be moved to a different facility, so we chose to move him to a different facility. Rico the parrot was adopted out because we had found a more suitable home for him. Sir Vivor the Opossum was ready to move on and be released into the wild. They were all moved to better homes or because they had outgrown the Zoo's facilities. There was no pre-existing order that the animals were not to be moved and I do not believe it is humane to put all the Zoo animals' lives on hold pending the outcome of litigation.

    For instance, a Virginia Opossum only lives for two to three years on average. To not release an animal such as Sir Vivor into the wild due to litigation would mean that the animal would quite likely never experience release into the wild, which is the primary purpose of the Zoo's care for Virginia Opossums. It is difficult to imagine such an animal's

life being subjugated to litigation of which he knows nothing and for which he cares even less. Being held as a mere piece of evidence in PETA's present power play is not in the animal's best interest. Furthermore, if PETA does not believe the Zoo cares for the animals appropriately, PETA should be glad to see the animals no longer here, rather than insisting that they stay.

In the case of Casper the skunk, the owner of Casper hates PETA and decided to remove him from the Zoo rather than allow PETA's expert witnesses to view him. I do not own Casper and do not feel I can block an owner from seeing or retrieving their animal. My prior experience with PETA was that PETA would resist a proper disposition of an animal, just as PETA resisted the transfer of Alfredo to the Maryland Zoo as "spoliation", despite that transfer being in Alfredo's best interests.

5.     PETA falsely claims that acquisition records at the Zoo were altered to "falsely" change ownership of the animals from the Zoo to private individuals. That is merely conjecture and slander by PETA. Instead, I updated records that were previously erroneous, to show the true ownership of the animals, because I believed making the records more accurate was important due to the pending litigation. The record corrections were to make the records more accurate, rather than less accurate. I have never lied to PETA about ownership of the animals. Even back in November of 2019, when we were attempting a settlement in the prior litigation, PETA was informed that the animals were not all owned by the Zoo and PETA knew, for example, that Dodger the Capuchin was owned by someone else.

6. I have learned in recent weeks that PETA knows and has confirmed with various individuals the ownership of certain animals, including Kathy Moran's ownership of three of the pigs, and the ownership of Casper by Brian Rice. PETA also knows or should know from our various conversations that Ms. Chris Lynch owns Dodger the Capuchin and that Darcy Bowen has control over the porcupine Niles and took him into her care because he is old and no longer suited to the Zoo. Yet PETA's most recent motion ignores these facts and seems to pretend that PETA does not know any of those things, and seeks a declaration from the Court that the Zoo owns these animals. The Zoo does NOT own most of these animals. The Zoo does not steal animals from their owners, and does not buy or sell animals. Instead, we care for animals and transfer them to better homes if better homes become available. We release into the wild if appropriate and if permitted by the Maryland Department of Natural Resources. If an owner wants an animal that has been loaned to the Zoo back, we will give the animal back. This is the sole source of PETA's misplaced complaint here. PETA is asking the Court to declare that the Zoo owns animals it does not own, and has declined to disclose its knowledge of the actual ownership of the animals to this Court, which seems both unethical and illegal to me.

## OATH

I hereby swear and/or affirm under penalties of perjury that the above statements are true and correct to the best of my knowledge, information and belief.

10/20/21                                                                                   _____
Date                                                                                       Robert L. Candy, for all Defendants