IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CONSTANCE COLLINS, *et al*, *

Plaintiffs, *

v. * Civil Case No. 1:20-cv-01225-PX

TRI-STATE ZOOLOGICAL PARK
OF WESTERN MARYLAND, INC., *et al*., *

Defendants. *

* * * * * * *

**MEMORANDUM AND ORDER**

In accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District of Maryland, this case was referred to me on November 8, 2021, by Judge Xinis to address ECF No. 59, Plaintiffs' Motion for Sanctions for Spoliation. (ECF No. 63). The Court has reviewed Plaintiffs' Motion, along with Defendants' Opposition (ECF No. 60) and Plaintiffs' Reply (ECF No. 61). The Court has additionally reviewed Defendants' subsequently filed Motion for Leave to File Surreply and its corresponding attachment. (ECF No. 65). The Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons set forth below, the Court GRANTS in part and DENIES in part Plaintiffs' Motion for Sanctions. Further, the Court GRANTS Defendants' Motion for Leave to File Surreply and has considered the surreply in its decision below.

At its core, Plaintiffs' Complaint (served on Defendants on or about May 19, 2020) alleges that Defendants maintained a public nuisance through the neglect and continued mistreatment of animals residing at Defendants' Tri-State Zoological Park of Western Maryland ("Tri-State"), in violation of the Animal Welfare Act, 7 U.S.C. Sections 2131-2159, and Md. Code, Crim. Law Section 10-604. Plaintiffs claim that Defendants' violation of those statutes has interfered with

public morals so as to cause injury to the public at large, thereby creating a public nuisance. (ECF No. 1 at 26-27). Therefore, Plaintiffs seek relief under the state law claim of public nuisance. *Id*. Importantly, Judge Xinis has already ruled that, as alleged, Plaintiffs make out a viable claim for public nuisance:

> Accordingly, Defendants' lack of care and mistreatment of the animals, as pleaded, violate both the AWA and Maryland's animal abuse and neglect statute, and as such, have interfered with public morals as evidenced by the existence of such protectionist statutes in the first place. ECF No. 1 ¶¶ 19−22, 29−34. *See Knox v. Mass. Soc. for Prevention of Cruelty to Animals*, 425 N.E.2d 393, 396 (Mass. App. Ct. 1981) (citing *Commonwealth v. Higgins*, 277 Mass. 191, 194 (1931)) (Animal welfare laws are "directed against acts which may be thought to have a tendency to dull humanitarian feelings and to corrupt the morals of those who observe or have knowledge of those acts."); *Pa. Soc. for Prevention of Cruelty to Animals v. Bravo Enterprises, Inc.*, 237 A.2d 342, 348 (Pa. 1968) ("A legislative proscription, such as that found in the cruelty to animals statute, is declarative of public policy and is tantamount to calling the proscribed matter prejudicial to the interests of the public . . . the essence of a public nuisance."). The Complaint sufficiently states a public nuisance claim.

(Memorandum Opinion Denying Defendants' Motion to Dismiss, ECF No. 29 at 10).

During discovery, Plaintiffs sought to gather evidence about the animals at Tri-State supporting their allegations, including information about the animals' health, information about their care and treatment, and information about their conditions of confinement. (ECF No. 59, Ex. 1 at 3). Given the allegations of the Complaint, this information would certainly be within the scope of relevant discovery as required by Rule 26(b). Plaintiffs allege however, that Defendants not only failed to issue a "litigation hold" once litigation was reasonably anticipated, but also actively destroyed or altered evidence once the lawsuit commenced such that sanctions are appropriate. Each area of alleged spoliation is discussed below.

**1. Spoliation of Relevant Photographs, Text Messages, and E-Mails after Litigation Commenced**

Plaintiffs first allege that Defendants spoliated electronic evidence in the form of digital photographs, text messages, and emails after litigation was underway. (ECF No. 59, Ex. 1 at 3-8).

Defendants' principal, Robert Candy (who is individually named), confirmed at his June 24, 2021, deposition that he took no steps to preserve electronic data, nor did he advise any employees or volunteers to do so. (ECF No. 59, Ex. 7 at 4-5). He testified that he did look through "paperwork" for responsive documents and believes that he searched his email, but that he doesn't "keep any documents." *Id.* at 5. He testified that he sometimes deletes email as it is received because he has limited data on his phone, and that he has not been preserving email, text messages, or other electronic data during the pendency of the case. *Id.* He also did not provide *any* responsive emails or text messages to counsel because he "either deleted them or never had them." *Id*. at 6. While Defendant Candy contends that none of the electronically stored information he deleted during the pendency of this matter was relevant, he nonetheless confirmed that he had texted and emailed with an outside veterinarian, Dr. Goldman, during the pendency of the case, yet did not produce those texts either because he deleted them or because he got a new phone. *Id.* at 7-9. Similarly, he confirmed exchanging texts with the USDA during the pendency of the case, but did not produce any of those texts because he believes he deleted them. *Id*. at 11-12.

Further calling Defendants' lack of production of *any* electronic evidence into question,[1] Plaintiffs obtained, by way of third-party discovery and Freedom of Information Act (FOIA) requests, emails between Defendant Candy and the USDA discussing inspections of the facility, as well as emails and texts between Defendant Candy and veterinarian Keith Gold with photos of facility animals, notably during the pendency of this litigation. (ECF No. 59, Ex. 1 at 7-8). Such emails, texts, and photos would similarly be expected to be in the possession of the sender, Defendant Candy, who asserts that he either "never had them" or that he "probably deleted" them

[1] Defendants did produce a limited number of emails and text messages in earlier litigation that the parties have agreed are "deemed" produced in this action. (ECF No. 59-1 at n. 3-5).

from his phone. *Id*. at 9-10. This all occurred despite Defendants' responsiveness to Plaintiffs' discovery requests, the scope of which was never objected to. *Id*. at 6-7.

Defendants concede that Mr. Candy "may have deleted some small number of text messages," but argue that there has been no showing that such texts were relevant or that Plaintiffs were prejudiced given that Plaintiffs have recovered those messages via third-party discovery. (ECF No. 60 at 4, 8; Ex. 1 at 1). By way of affidavit, Defendant Candy indicates that he changed his data habits to limit his texting and photographs given "the invasive nature of PETA's requests in the last litigation," suggesting that the emails, texts, and digital photos Plaintiffs obtained through third-party discovery constitute the universe of relevant ESI such that there has been no prejudice. (ECF No. 60, Ex. 1 at 1-2). Defendants also reiterate arguments from their previously-denied motion to dismiss whereby they contend that, because Plaintiffs do not state a valid claim for public nuisance, the discovery sought is not relevant or beyond the scope of relevance. *Id*. at 2-4, 8.[2] As indicated above, the Court disagrees and finds the discovery sought to be within the scope of the appropriate discovery for the claim outlined in Judge Xinis' opinion. Additionally, even were that not the case, given Defendants' lack of objection to the discovery requests themselves, any scope objections are deemed waived at this late stage. *See Wash. D.C. Cement Masons Welfare Fund v. Rapid Response Constr., Inc.*, 2009 U.S. Dist. LEXIS 72761, at *7 (D. Md. Aug. 18, 2009) (because they were not timely asserted, "the Court finds that Defendants have waived any objections to Plaintiffs' Interrogatories and Discovery Request."); *Quan v. Tab Gha F & B*, 2020 U.S. Dist. LEXIS 253451, at *2 (D. Md. Nov. 25, 2020) (deeming untimely objections to interrogatories and requests for production as waived and holding that "[u]nder Rules 33 and

[2] Defendants first urge that Judge Xinis dismiss the case for lack of subject matter jurisdiction given the alleged failure of Plaintiffs to satisfy the "amount in controversy" requirement for diversity cases, and/or that the resolution of Plaintiffs' motion should await consideration of an upcoming Motion for Summary Judgment. Those issues are, of course, beyond the scope of Judge Xinis' referral to me.

34, a failure to timely raise objections amounts to a waiver of those objections 'unless the court, for good cause, excuses the failure'") (internal citations omitted).

In the absence of any effort to preserve or gather responsive electronic information, as well as affirmative evidence that at least some relevant electronic evidence was affirmatively destroyed during the pendency of this case, some sanction is appropriate. Moreover, although some electronic evidence was recovered through Plaintiffs' third-party discovery, FOIA efforts, and through production in previous litigation between the parties, such circumstances strongly suggest the likelihood that Plaintiffs have been deprived of at least some relevant electronic evidence, particularly in the form of pictures and electronic communications between Defendant Candy and third parties regarding the health and living conditions of the animals.

Rule 37 of the Federal Rules of Civil Procedure guides the Court in fashioning a remedy for spoliation of electronic evidence. Specifically, Rule 37(e) provides that when a party fails to take reasonable steps to preserve evidence that cannot be restored or replaced, and it causes prejudice to the opposing party, the court may order sanctions no greater than necessary to cure the prejudice. *Id*. The Court has no difficulty concluding that Defendants failed to take such reasonable steps on the record before it and were grossly negligent in their preservation efforts. Conversely, it is difficult to assess prejudice and fashion a proportional cure without knowing the nature and extent of the evidence likely lost in this matter beyond what has been retrieved from third parties. Nor can the Court, as requested by Plaintiffs, conclude that a presumption or inference of the missing evidence is appropriate without an additional finding of Defendants' "intent to deprive" Plaintiffs' use of evidence at trial, which requires something more than gross negligence. *See* 2015 Advisory Committee Notes to Fed. R. Civ. P. 37(e)(2) ("Negligent or even grossly negligent behavior does not logically support that [adverse] inference").

Because Plaintiffs have likely been deprived of relevant electronic communications that took place during the pendency of this litigation between Defendants and third parties about the health and living conditions of animals, and in considering Rule 37, the most tailored remedy is to bar Defendants from relying on certain evidence or testimony. Accordingly, Defendants may not offer evidence or testimony regarding electronic communications with third parties about the health or living conditions of the animals at Tri-State that took place during the pendency of this litigation beyond what has been produced (including by third parties), including any photographs taken during this time that have not otherwise been produced.

**2. Defendants' Removal of Several Animals from Tri-State Prior to a Scheduled Site Inspection**

During the course of discovery, Plaintiffs filed a notice for a site inspection on May 28, 2021, to be conducted at Tri-State on July 19, 2021, to document the animals residing at the facility and the animals' conditions. (ECF No. 59, Ex. 1 at 11). Notwithstanding that notice and planned inspection, Defendants removed several animals from Tri-State in June and July, 2021, just prior to the inspection, including a parrot (Rico), a possum (Sir Vivor), a kinkajou (Mudd) and a skunk (Casper).[3] *Id.* For their part, Defendants also advise that a carpet python, an anaconda, and "several other animals" were also removed from Tri-State at some point. (ECF No. 60 at 5). Defendants further state that, with the exception of Casper who was removed by its owners (who reportedly "hate [Defendant] PETA"), "all of the other animals were moved in the ordinary course of business and the moves were in those animals' best interests." *Id.*

Without the planned inspection notice, the Court might accept Defendants' argument to the extent that such removals were done for the health and well-being of the animals. Animals are

[3] Plaintiffs assert that other animals have been removed during the course of the litigation, but only seek a remedy as to those four. (ECF No. 59, Ex. 1 at 24 n. 14, 23).

living creatures and their health and well-being are certainly valid considerations. However, where Defendants were on notice of a site inspection whose purpose included documenting the health and living conditions of the animals at Tri-State, Defendants were not free to remove animals "in the ordinary course of business." In some ways, this situation is analogous to a planned inspection of a fire scene or accident scene where any changes to the scene have to be reasonably suspended to allow for the collection of evidence or, alternatively, at least coordinated with interested parties before taking place. Similarly, Defendants could have taken steps, in coordination with Plaintiffs (or, if necessary, the Court), to remove some animals for health reasons or based on explicit instructions from their owners, but in such circumstances, some advance communication between the parties was warranted. Communication would have allowed for several options, including documenting those animals and their living conditions with photographs or videos prior to their departure, moving up the inspections, coordinating with the receiving facility for the animals to be evaluated there, etc. The failure to undertake such notification and coordination deprived Plaintiffs of the ability to do any of that and, therefore, deprived them of relevant evidence at least as to those animals.[4]

The Court has inherent authority to impose sanctions beyond those available under Rule 37 for electronic evidence. *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). "The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct which abuses the judicial process." *Id.* at 590 (internal citations omitted). In order to prove spoliation that warrants a sanction, a party must show:

[4] To the extent Casper was removed at the request of his owner, the Court does not suggest that Casper's owners' wishes should have been ignored. Nonetheless, Defendants should have at least communicated the owner's intent to Plaintiffs prior to removal.

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Callahan v. Toys "R" US-Delaware, Inc.*, 2017 WL 2191578, at *4 (D. Md. May 18, 2017) (citing *Charter Oak Fire Ins. Co. v. Marlow Liquors*, LLC, 908 F. Supp. 2d 673, 678 (D. Md. 2012) (internal citations, quotations, and brackets omitted); *see also Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008) ("This standard applies when a party is seeking any form of sanctions for spoliation, not just an adverse inference jury instruction"). "Any fault—be it bad faith, willfulness, gross negligence, or ordinary negligence—is a sufficiently culpable mindset." *Charter Oak Fire Ins. Co*., 908 F. Supp. 2d at 680.

"Upon a showing that spoliation has occurred, a court can impose sanctions molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Charter Oak Fire Ins. Co.*, 908 F. Supp. 2d at 678 (internal citations and quotations omitted). "The court has significant discretion to consider a wide range of sanctions both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." *Id.* (internal citations and quotations omitted).

The Court's inherent authority should consider both the Defendants' intent and the corresponding Plaintiffs' prejudice in being deprived of the inspection opportunity as to those animals. The Court need not, however, make a finding of bad faith in order to justify a spoliation sanction. *Callahan*, 2017 WL 2191578 at *6. Here, knowing of an impending inspection to document the health and living conditions of, *inter alia*, the four animals at issue, Defendants nonetheless acted purposefully in removing those animals without advance communication or

coordination with Plaintiffs. The resulting prejudice to Plaintiffs, although limited to the four animals in question, cannot be otherwise completely remedied as those conditions cannot be recreated with any accuracy. Further, because this matter is set for a bench trial, a jury instruction on this issue is not available as a remedy. Accordingly, the Court instead recommends that Judge Xinis consider an inference that, had the above four animals been available for inspection, evidence from that inspection would have been favorable to Plaintiffs' case and unfavorable to Defendants' case concerning the health and living conditions of those four animals; such inference would be considered by her in combination with all other evidence in the case.

**3. Alteration of Ownership Documents**

Plaintiffs further charge that Defendants altered the acquisition information of six animals: a capuchin (Dodger), porcupine (Niles), and four pigs (Isabel, Snorkel, Sophie, and Emily). (ECF No. 59, Ex. 1 at 11-12). Plaintiffs allege that this was done to create the impression that these named animals were "on loan" as opposed to owned by Defendants so as to curtail this Court's ability to grant full relief should Plaintiffs prove their case. Plaintiffs present evidence that Defendants altered certain "New Animal Information Forms" for the above animals, illustrated by comparison of the 2021 Defendants' production of such forms and the 2018 original-state procured from veterinarian Gale Duncan via Plaintiffs' third-party subpoena. *Id*. at 13. Plaintiffs quote Defendant Candy's deposition to argue that he does not now deny altering the forms to reflect that the animals were on loan to Tri-State, notwithstanding testimony in a previous case that animals at Tri-State are owned by Tri-State. *Id*. at 14. Defendants agree that the Defendant Candy altered the forms, but only to update them to reflect current and/or more accurate information. (ECF No. 60 at 5). Defendants also attach certain third-party affidavits to demonstrate claims of ownership/control by third parties over some of these animals. *Id.* at 6-8, 9-10.

Amidst these conflicting claims of ownership, and Defendants' contention that they were merely "updating" forms for accuracy, the Court cannot conclude that sanctions are appropriate. The ownership of the animals and the Defendants' justification for alteration of the ownership forms (and the significance, if any, of the same) is best left as an issue for trial.

**4. Request for Injunctive Relief in the Form of a Prohibition on the Transfer of Animals from Tri-State**

Plaintiffs also seek an order from the Court that Defendants not remove any animals from Tri-State without at least five days' notice to Plaintiffs to allow Plaintiffs the opportunity to object, with any unresolved objections decided by the Court. (ECF No. 59, Ex. 1 at 26-27). In support, Plaintiffs attach a preservation order granting such a request from the United States District Court for the Eastern District of Wisconsin from the case of *Animal Legal Defense Fund v. Special Memories Zoo, et al.*, 20-216-WCG (E.D. Wis., May 19, 2020). (ECF No. 59, Ex. 15). However, a review of the docket in that matter discloses that the plaintiffs in the Wisconsin case sought such an order at the *beginning* of discovery in part so that their efforts to investigate their claim would not be thwarted. (20-216-WCG, ECF No. 16). By contrast, fact discovery in the present case is over per the most recent scheduling order (ECF No. 58), and the Court does not view such a broad request for relief as an appropriate spoliation sanction at this juncture. Nor is the Court particularly well-equipped to conduct evidentiary hearings on an expedited basis as to whether a particular animal's health concerns or legal title allows, justifies, or requires transfer from Tri-State. Such an order should have been sought, if at all, as preliminary injunctive relief or, as in the Wisconsin case, as part of a discovery preservation order at the initiation of the case. That said, Defendants are on notice that any actions undertaken, including the transfer or disposition of animals, that undermine this Court's ability to provide complete relief if otherwise appropriate, will be addressed harshly.

**5. Request for Attorneys' Fees and Costs**

Although Plaintiffs seek an award of fees and costs associated with filing this motion, they acknowledge that such sanctions "would likely have little impact on Defendants." Further, such fees and costs are more typically seen as an alternative sanction. *See, e.g., Victor Stanley, Inc. v. Creative Pipe, Inc.* 269 F.R.D. 497, 537 (D. Md. 2010) (fees and costs awarded as an alternative to a harsher sanction). Given the Court's decisions above, which it regards as harsher sanctions, and given that the Court did not grant all of the relief requested in Plaintiffs' motion, the Court will not award fees and costs at this point.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Sanctions is GRANTED in part and DENIED in part, and Defendants' Motion for Leave to File Surreply is GRANTED.

Dated: November 19, 2021

/s/
J. Mark Coulson
United States Magistrate Judge