# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CONSTANCE COLLINS, *et al.*,<br><br>Plaintiffs,<br><br>–v–<br><br>TRI-STATE ZOOLOGICAL PARK OF WESTERN MARYLAND, INC., *et al.*,<br><br>Defendants. | Civil Action No. 1:20-cv-01225-PX |

**JOHN M. PIERCE'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE**

John M. Pierce hereby files this Response to the Court's Order To Show Cause dated February 16, 2022, and, for the reasons stated herein, respectfully requests that the Court not strike his *pro hac vice* admission.

1. I apologize to the Court for my errors of omission. It was not my intention to exclude information regarding my bar memberships. My local counsel, Nevin L. Young (who has recently moved to withdraw as local counsel), and I have experienced miscommunication and relationship problems that likely contributed to my oversight, but I should have insisted on carefully reviewing the *pro hac vice* motion to ensure that this information was included. I failed to do so. My credentials as a college graduate from the University of Notre Dame *summa cum laude*, an Eagle Scout, a combat arms Army officer with Airborne qualification, a graduate from Harvard Law School, and an editor of the *Harvard Law Review* exemplify the level of care and attention to detail that I typically demonstrate, and I apologize for falling below this standard in filing the *pro hac vice* motion with this Court. I have the greatest respect for the Court, and to my recollection I have never been disciplined or sanctioned by any bar or any court in my twenty-one

years of practice (I was recently notified that I was tardy in paying a *pro hac vice* fee to the State of Illinois, but I immediately rectified that situation by paying the fee), in which I have been a partner at Quinn Emanuel Urquhart & Sullivan, LLP, a partner at Latham & Watkins LLP, and a co-Global Practice Area Leader for Litigation and Dispute Resolution at K&L Gates LLP, and I have represented clients from Democratic Presidential candidate Tulsi Gabbard, to Mayor Rudy Giuliani, to Dr. Carter Page, to more than two dozen January 6th defendants and many multi-national corporations around the globe. I will demonstrate my respect for this Court by carefully reviewing all future court filings.

2. It is no exaggeration to say that in the past 18 months, I have endured one of the most challenging periods imaginable for an American litigator. On August 27, 2020, two days after the shootings in Kenosha, Wisconsin, that gripped the nation, I was engaged by Kyle Rittenhouse and his family. That day, I flew to the Kenosha area to begin coordinating the defense of Rittenhouse. For the chaotic following five months, I, among other things, (i) cared for the Rittenhouse family virtually single-handedly, (ii) assisted in raising $2 million in cash bail in less than three months so that Rittenhouse could be released pre-trial to assist in preparing his defense, (iii) personally coordinated the extraction of Rittenhouse from pre-trial detention from a downtown Kenosha police facility that was still boarded up due to ongoing safety threats, (iv) effectively flipped the public perception of Rittenhouse from a white supremacist mass murderer (false) to an innocent child who acted in self-defense (true), and (v) personally recruited the Wisconsin local criminal defense team that successfully tried the case.

3. During this period, I personally received innumerable death threats, and I was persistently subjected to vicious personal and professional attacks by mainstream and other media attempting to vilify me as a right-wing extremist who was in the habit of defending murderers.

4.      I was and will forever be honored to have represented Rittenhouse, who ultimately and rightfully was fully acquitted by a jury of his peers in one of the most closely-followed and dramatic trials in American history in November 2021. Earlier that year, in January 2021, my representation was terminated by Rittenhouse, as was obviously Rittenhouse's absolute right to do. In the wake of this termination, I have been subjected to even more vicious and false attacks than during the representation itself.

5.      Upon my termination from the Rittenhouse case, I was physically exhausted from five months of working nearly around the clock. In a sense, the termination was a relief since I anticipated at lease a short period of time to recover from the effort. However, shortly before the termination, the events *now* gripping the nation occurred at the United States Capitol on January 6, 2021.

6.      Once again, my sense of duty to the Constitution and to those finding themselves in the most severe crisis of their lives kicked in. Very few non-CJA panel private American lawyers were willing to represent defendants who, once again, faced the wrath of horrendous press attacks – this time with a prosecutorial adversary with literally unlimited resources (the United States government). So, I stepped again into the breach to represent those in need. The number of defendants I represented grew quickly to the point where I now represent 25 January 6th defendants, which I believe is more than any lawyer in the nation by orders of magnitude.

7.      Of course, this caused the attacks on me to increase exponentially compared to those I faced in the Rittenhouse case. I was now the "insurrection" lawyer who, along with my clients, was cast as some sort of existential threat to American democracy. From January 6, 2021, to the present day, to say my personal and professional existence has been challenging would be an understatement. I have faced non-stop vilification by the media and radical left activists. Again,

I am honored to have these representations and will *never* stop fighting for those clients until they are ultimately vindicated in court and by history, as Rittenhouse has been. However, the personal and professional toll this has taken on me has been immense.

8. By late August 2021, I was at the brink of total exhaustion due to the pace I had been working for a year between the Rittenhouse and January 6th cases. I believe that this physical toll is what made me susceptible to a life-threatening emergency medical condition that required a 12-day stay in a Los Angeles area hospital to recover.

9. During this period, I have also successfully fought off multiple frivolous bar complaints that appear from their contents to have been engineered by those politically or personally motivated to attempt to destroy my career (I have the greatest respect for the State Bar of California, which has performed its duties in addressing these complaints in nothing short of exemplary fashion).

10. I have also worked as hard as possible to address (without taking advantage of any federal or state insolvency-related legal protections) innumerable creditors and lawsuits I face due to the very public collapse of my previous fast-growing firm.

11. I also continue to work hard to rebuild personal and family relationships that have suffered greatly because of (in part) the extraordinarily controversial nature of my work and the pace it has required.

12. In the wake of my August-September 2021 hospital stay, Ryan Marshall contacted chambers regarding my hospitalization before filling in for me in status conferences and counsel meetings. Because we did not have a licensed attorney at that point who could make the appearance, Marshall was directed by the court to make the appearance despite the court being made aware that Marshall did not hold a license. In those status conferences and counsel meetings,

Marshall simply relayed the mixed information about my illness that was being provided to him (the morning I was picked up by an ambulance in Los Angeles – at which point I was immediately out of communication with him and anyone else – was chaotic and Mr. Marshall who was in Pittsburgh was apparently receiving various inaccurate information about my condition). By November 2021, he obtained a provisional license to practice in California. He contacted chambers at the United States District Court for the District of Oregon, which directed him to appear *pro hac vice*. Nonetheless, while Marshall is still connected to my firm by working directly with myself and Bill Shipley on the 25 January 6th cases, he is not involved in the case at hand.

13. Based on the foregoing, John M. Pierce respectfully requests that the Court not strike his *pro hac vice* admission.

Dated: February 23, 2022

Respectfully submitted,

**JOHN PIERCE LAW**

*/s/ John M. Pierce*
John M. Pierce
21550 Oxnard Street
3rd Floor PMB #172
Woodland Hills, CA 91367
P: (213) 349-0054
jpierce@johnpiercelaw.com